# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | |
| v. | Civil Action No.1:19-cv-65 |
| FAIRFAX COUNTY SCHOOL BOARD, | |
| Defendant. | |

## Plaintiff's Memorandum in Support
## of Temporary Restraining Order
## and Preliminary Injunction

John Doe is a high school senior whose academic career has been thrown into immediate peril because of a disciplinary action taken against him by the Fairfax County Public Schools. He was accused of sexual harassment and maintains his innocence. The investigation and hearing was peppered with procedural errors, such as the lack of a burden of proof or even a presumption of innocence, no ability for Doe to cross-examine adverse witnesses (directly or indirectly), and the failure of school officials to tell Doe exactly what he was accused of and by whom. Moreover, the harassment policy used by the School Board violates the First Amendment on its face and the procedures used violated Doe's Title IX rights.

This matter is urgent Doe has recently learned that the University at which he has been accepted may rescind his offer of admission and his scholarship because of this matter. Consequently, Doe is seeking immediate relief from this Court so that

he does not suffer irreparable harm that cannot fully be redressed even if he wins his case in the end. He asks the Court to enter a temporary restraining order or schedule a hearing as soon as practicable.

Counsel for Doe has consulted for counsel for the Board, who has been sent the Complaint and notified that this motion was forthcoming. This motion and brief will be sent to counsel promptly upon filing.

<u>Background</u>

Plaintiff John Doe ("Doe") is a high school senior who is to graduate this year with good grades and athletic achievements. Until recently, he studied at Robinson Secondary School ("Robinson"), in Fairfax, Virginia. He is active on his school's wrestling team, a Freestyle State Champion and All American. Through his academic and wrestling achievements, he won admission and a scholarship at a prestigious university. He is set to matriculate in the autumn of 2019. Decl. ¶ 1.

At the beginning of the current school year, Doe befriended Student A, a female student new to Robinson. Doe and Student A had classes together and would see each other at school outside of class. As is common among teenagers, the friendship turned flirtatious. Doe and Student A engaged each other with friendly conversations. Doe would occasionally put his arm around Student A and playfully poke her in class. Student A did not reject these overtures. In fact, she would often seek Doe's company. Decl. ¶¶ 2-3.

On December 6, 2018, another male student ("Student B") slapped Student A on her buttocks. Doe was present when this occurred but video surveillance of the

incident conclusively shows that Doe did not slap Student B. Decl. ¶ 4.

After being assaulted by Student B, Student A filed a complaint with a school administrator. Not only did she accused Student B of assault, she also accused both Doe and Student B of sexual harassment. Decl. ¶ 5.

Travis Hess, an assistant principal at Robinson, initiated an investigation of the matter; he soon discovered that the facts were squarely in dispute. *Id.* When Hess approached Doe about the allegations, Doe denied harassing Student A and making the statements of which he was accused. Decl. ¶ 6. His statement is attached as Exhibit 1. He was not told, however, which students were accusing him of specific conduct, negating his ability to rebut the allegations. Decl. ¶ 7. Nevertheless, he was immediately suspended. Decl. ¶ 6.

Several female students colluded with Student A to bolster her complaint against Doe. One of the student witnesses worked as a student assistant in Hess' office. She was overheard saying that she hoped Doe would be kicked out of school. Decl. ¶¶ 7-8. The statements of the other witnesses are attached as Exhibit 2.

Hess rushed to judgment. His investigation was limited and inadequate. He failed to interview important witnesses, such as other students present in the hallway at the time of the slapping incident, and failed to give Doe an opportunity to respond fully to all the allegations against him. Decl. ¶ 9.

The stories of the witnesses against Doe were unreliable. One female witness recanted part of her story to Hess. Additionally, one of the female witnesses contradicted statements made to Hess in text messages sent to another student,

which exculpated Doe.[1] Decl. ¶¶ 10-11.

Principal Matthew Eline and Hess decided to refer Doe to the School Board's Hearing Office to adjudicate the dispute. Decl. ¶ 13. Eline drafted a letter informing Doe's parents (at the time, Doe was still a minor) of the suspension and providing notice of the charges against Doe. The letter was dated December 10, 2018, but not mailed until December 18, 2018. Exhibit 3. It was not received until December 20, 2018, the day before the hearing. Consequently, Doe did not receive a summary of the procedures governing the proceedings in advance of the hearing. Decl. ¶ 14.

Lisa Forrest, a hearing officer for the division superintendent, conducted the hearing on December 21, 2018. The hearing was peppered with procedural flaws. Decl. ¶ 16.

At the hearing, the case against Doe was presented primarily by Hess. He summarized his investigation, as described in his Detailed Incident Report. A redacted version is attached as Exhibit 4.[2] Decl. ¶ 19.

In fact, Forrest did not even hear the testimony of any eye-witnesses other than Doe; they did not even attend the hearing. Decl. ¶ 18. Instead, Ms. Forrest determined

---

[1] It is unknown whether the female who recanted her story was the same girl who contradicted her written statement in text messages with another. The identity of the latter is known, but not the identity of the former.

[2] Most of the redactions in the Detailed Incident Report were made by the Hearing Office, which is the only version provided to Doe. The Hearing Office did not, however, redact Doe's name. Since he is seeking leave to proceed under a pseudonym, the copy attached to this complaint has also redacted references to Doe himself. Those redactions are in red. The courtesy copy of this exhibit, which will be delivered to the clerk's office, will be in color so that the Court can differentiate the redactions made by the Board and the redactions made by Doe.

the credibility of these witnesses based on the second-hand testimony of Eline and Hess. Decl. ¶¶ 18-20. Hess represented that the witnesses against Doe were credible, even though at least one witness had recanted part of her testimony. Decl. ¶ 19. Hess did not explain the inconsistencies in that student's testimony and Forrest did not inquire into the matter. *Id.* His representation to Forrest on the credibility of witnesses was unreliable and inaccurate. *Id.*

Neither Doe nor his parents were not allowed to question anyone at the hearing, including Hess or Eline. Decl. ¶ 20. Moreover, when the evidence was summarized, Hess did not state which witness made each specific statement or representation, leaving Doe unable to meaningfully rebut the charges against him. *Id.* Doe presented two witness statements which were not mentioned as evidence considered by the hearing officer. Decl. ¶ 22. Those statements are attached as Exhibits 5 and 6.

The hearing was governed by the Board's Student Rights and Responsibilities handbook ("SR&R"). *See* Exhibit 8. The SR&R is woefully inadequate for a host of reasons: (a) it does not provide for a presumption of innocence; (b) it does not provide a hearing officer with any standard of review for deciding whether or not a student violated the student code of conduct; (c) it does not provide any meaningful opportunity for a hearing officer to decide whether the witnesses against an accused student are credible; (d) it does not provide accused students with an adequate opportunity to challenge the evidence against them; (e) it has no method of allowing accused students to cross-examine the witnesses against them, either directly or

indirectly; (f) its definition of sexual harassment is vague and over broad;[3] and (g) it effectively fails to define improper touching at all. Decl. ¶ 25.

On January 10, 2019, Forrest sent Doe's parents a letter explaining that she found Doe had violated the SR&R and that he would be reassigned to Mountain View High School ("Mountain View") as a probationary student for the remainder of his senior year. Her letter is attached as Exhibit 7. Mountain View is an alternative educational setting and offers substantially fewer educational and extra-curricular opportunities for Doe. Her decision discounted Doe's testimony without cause and failed to properly consider the evidence offered at the hearing. Decl. ¶26.

Doe's classification as a probationary student as well as his assignment to an alternative behavioral school has severe consequences. First, he will not be able to attend sports activities, including wrestling. This will likely cause Doe to lose his college scholarship and perhaps even his college admission. Second, Doe will also not be able to attend graduation activities. Third, Doe has been denied admission to another high school outside of the Fairfax County Public Schools. Decl. ¶ 27. Hours before this motion was filed, Doe discovered that the University to which he had been granted admission was reconsidering his ability to matriculate due to this incident. Decl. ¶ 28.

Doe has not yet begun to attend classes at Mountain View. He moves for a

---

[3] Sexual harassment is defined as including "unwelcome sexual advances, regardless of sexual orientation; requests for sexual favors; and other inappropriate verbal, electronic, or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment." Exhibit 9.

temporary restraining order or a preliminary injunction to preserve the status quo *ex ante,* while this litigation proceeds. Specifically, he seeks to stay at Robinson, where he will have full advantage of the educational and extra-curricular opportunities available at a regular high school during his final semester. He also seeks to stay on the wrestling team, so that he does not lose his college scholarship.

Time is of the essence in this case. Doe understands that his college career is in imminent jeopardy and that if he is not academically eligible to wrestle by Thursday, January 24, 2019, then league rules will result in him being ineligible to wrestle for the entire school year. Decl. ¶ 28-29.

## Argument

The standard for granting a temporary restraining order or preliminary injunction are the same. *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006 (internal citations omitted). The following factors are considered in such motions: (1) the moving party's likelihood of success on the merits; (2) what irreparable harm the moving party is likely to suffer absent injunctive relief; (3) the balance of the equities between the parties; and (4) the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). Courts have cautioned that "these are factors to be balanced, not prerequisites to be met." *S. Glazer's Dist. of Ohio, LLC. v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017). When violations of the United States Constitution are alleged, the likelihood of success on the merits will often be determinative. *Doe v. Univ. of Cincinnati,* 872 F.3d 393, 399 (6th Cir. 2017) (internal citations omitted).

I.     <u>Likelihood of Success on the Merits</u>

Doe's complaint alleges that his due process, First Amendment, and Title IX rights were violated by the Board. He is likely to succeed on each claim.

A.  Doe's Discipline Violated Due Process

Doe was denied his due process rights because the Board's policies, procedures, and practices failed to provide him with any meaningful due process protections. Doe disputed the evidence against him but had no meaningful way to challenge the evidence. This evidence was collected behind closed doors and vaguely presented at the hearing in such a way that he had no way to question witnesses or their credibility or rebut the evidence. He was not presumed innocent. The hearing officer did not so much as use the preponderance of the evidence standard in adjudicating the claim. Moreover, Doe was not even properly notified of the charges against him.

Public school students subject to disciplinary actions are entitled to due process. *Goss v. Lopez,* 419 U.S. 565, 577 (1975). At a minimum, schools must provide (1) notice and (2) a hearing before a short suspension of ten days or less. *Id.* at 579. More severe discipline requires more due process protections. *Id.* The factors considered in determining whether an individual has received the process they are due are (1) the private rights affected by the official action; (2) the risk of an erroneous depravation of those rights because of procedural flaws; (3) the probable value of additional or substitute procedural safeguards, and (4) any governmental interests at play, such as fiscal and administrative burdens. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

The test is flexible, but certain procedural safeguards are cornerstones to any fair proceeding. "The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *Goldberg v. Kelley,* 397 U.S. 254, 267 (1970). Here, Doe received neither.

> 1. There was no presumption of innocence and no burden of proof or persuasion that had to be met before Doe was punished.

The SR&R outlines the adjudication procedures used in student disciplinary matters. Ex. 8 at 17-24. It omits any presumption of innocence and does not provide hearing officers with an evidentiary standard to comply with before finding a student responsible for violating the rules and deciding to discipline the student. Here, Forrest failed to presume Doe innocent at the hearing and failed state the burden of persuasion or proof that she used in determining whether or not to punish the him. In short, she failed to delineate *any* hurdle that Doe's accuser must clear before Doe was to be punished.

"[T]he presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary…" *Coffin v. United States*, 156 U.S. 432, 453 (1895) (referring to criminal law). While this matter is not criminal, the same principle applies. Indeed, the Department of Education's Office for Civil Rights requires that educational institutions use either the preponderance of the evidence standard or the clear and convincing evidence standard. *Q&A on Campus Sexual Misconduct*, Department of Education Office for Civil Rights. Sept 2017. Available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf (last accessed

Jan. 19, 2019) at 5.[4]

Due process required the Board to hold the complainant to *some* burden of proof, at the very least the preponderance of the evidence standard, before finding Doe responsible for sexual harassment. They failed to do so.

> 2. **Doe had no ability to cross-examine witnesses or challenge the evidence against him.**

When the material facts are in dispute, students are entitled to cross-examine their accusers in a live hearing in front of the fact-finder. *See Doe v. Baum,* 903 F.3d 575, 583 (6th Cir. 2018) (*citing Doe v. Univ. of Cincinnati,* 872 F.3d at 402-03). This requirement can be facilitated through technology, such as video conferencing. *Univ. of Cincinnati,* 872 F.3d at 402-03.[5] Procedural due process also requires that a student who denies the charges be afforded an explanation of the evidence gathered against

---

[4] Previously, OCR required the preponderance of the evidence standard in a 2011 *Dear Colleague Letter*, Department of Education Office for Civil Rights. Apr. 2011. Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf (last accessed Jan. 19, 2019). That letter was rescinded in 2017 and schools were allowed to choose between clear and convincing and preponderance of the evidence as interim guidance, pending the adoption of new regulations after forthcoming rule making. Dear Colleague Letter. Those regulations are currently undergoing a notice and comment period. The proposed regulations are available at: https://www2.ed.gov/about/offices/list/ocr/docs/title-ix-nprm.pdf (last accessed Jan. 29, 2019). Like the 2017 interim guidance, the proposed regulations allow for either standard. While this applies to the Title IX count directly, it is also persuasive to show the requirement of a burden of persuasion as a matter of due process.

[5] Both *Baum* and *University of Cincinnati,* dealt with the requirements of post-secondary institutions. The holdings of both courts, however, were rooted in the *Goss* framework, *see Baum,* 903 F.3d at 581 and *University of Cincinnati,* 872 F.3d at 400, which arose from a secondary school disciplinary matter. *Goss*, 419 U.S. at 567. The analysis in those cases is equally applicable here.

him and an opportunity to present his side of the story. *Goss,* 419 U.S. at 581.

At the hearing, Doe was asked specific questions and to make a brief statement on his behalf. His parents were also allowed to answer questions. At no point, however, was Doe or his parents able to cross-examine Hess, Eline, Student A, or her supporting witnesses. Indeed, no witnesses were even present at the hearing.

Cross-examination would have been especially important in this case because the facts were squarely in dispute. Moreover, one of the individuals believed to witnesses against Doe was a student assistant in Hess' office and was heard saying that she wanted Doe kicked out of school. Doe should have been permitted to inquire into these and other topics that could have shed light on the veracity of the testimony of his accusers just as the hearing officer was able to ask questions of Doe to test his veracity.

Not only was Doe barred from cross-examination, he did not even have the ability to meet the evidence against him. At the hearing, the evidence against Doe was presented almost entirely by Hess (Eline spoke only occasionally). In presenting the evidence, Hess summarized the Detailed Incident Report (Exhibit 4) and the witness statements. He failed, however, to even identify the witnesses to the hearing officer.

Hess initially testified, in a conclusory manner, that he found the female witnesses credible and Doe not credible. He gave no reason for that determination. Indeed, he later mentioned, off handedly, that one of the female witnesses came to him and admitted her original statement was inaccurate and she asked to revise it.

Hess failed to specify the recanted testimony and did not even explain why he still found her credible even after she had admitted to lying. Similarly, Forrest declined to ask any questions about the recanted and revised testimony of the witness.

Doe was denied any opportunity to test the evidence against him. He was denied the right of cross-examination, and denied identities of the witnesses against him. He was not even given exculpatory evidence, such as the recanted or revised statement of witness who admitted to giving an inaccurate statement.

### 3. Doe was given inadequate notice

Notice is a fundamental tenant of due process in campus disciplinary proceedings. *See Doe v. Rector & Visitors of George Mason University,* 149 F. Supp. 3d 602, 615 (E.D. Va. 2016) quoting *Dixon v. Ala. State Bd of Educ.,* 294 F.2d 150, 158 (5th Cir. 1961). As previously discussed, Doe was never put on notice about what specific witnesses were accusing him of making which specific comments. Without knowing the full context of the accusations, he was not able to rebut them or explain why a certain witness may be spreading inaccuracies about him. Also, Doe's parents received the notice of the referral to the Division Superintendent the day before the hearing. While the letter was dated on December 10, it was not postmarked until December 18. The hearing was separately scheduled for December 21, 2018.

### B. The Sexual Harassment Policy Violates the First Amendment

The Board's Sexual Harassment Policy is unconstitutional because it is overbroad and vague. It states that "[h]arassment [] includes…inappropriate verbal, electronic, or physical conduct of a sexual nature that creates an intimidating, hostile,

or offensive environment." This policy is vague because it does not delineate what conduct is specifically prohibited an overbroad because it reaches constitutionally protected conduct.

A law is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Vague laws offend several important values: (1) laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so he can avoid it; (2) laws must provide explicit standards for enforcement to avoid arbitrary and capricious enforcement; and (3) where vague laws encroach First Amendment freedoms, they inhibit those freedoms by causing citizens to steer clear of the entire area. *Id.* at 108-09. Vague and ambiguous laws are anathema to the First Amendment because of their potential to chill speech. *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253-54 (2012).

Banning conduct that creates an "offensive environment" is inherently vague. There is no attempt to define what constitutes offensive. Indeed, it would appear that a decision on what constitutes offensive is left to the school administrators. Because there is no definition and no standards for enforcement, the sexual harassment policy is vague. *Doe v. Cooper*, 40 F. Supp. 3d 657, 682, 684 (M.D.N.C. 2014) (adequate notice is required in order for ordinary people to conform their conduct to the law).

The sexual harassment policy is also overbroad. *See Cooper*, 40 F. Supp. 3d at 680-81 (finding that plaintiff had sufficiently raised a facial overbreadth challenge). The sexual harassment policy at issue prohibits any conduct that creates an "offensive environment," but does not define further what "offensive" may mean in

this context.

A law is overbroad if it reaches a substantial number of impermissible applications. *Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 258 (4th Cir. 2003). In that case, the Fourth Circuit found that the plaintiff had demonstrated a strong likelihood on the merits that the school dress code was overbroad because it reached lawful, nonviolent and nonthreatening symbols of various organizations, including the State Seal of the Commonwealth of Virginia and University of Virginia gear that depicts its mascot. *Id.* at 259-60.

Similarly, the Board's sexual harassment policy reaches a substantial number of impermissible applications. For example, the policy could be used to punish students who are mutually flirtatious with each other. A ban that reaches all expressive conduct that may be found offensive is plainly overbroad because it reaches too much expression that is protected by the First Amendment. *See Bragg v. Swanson*, 371 F. Supp. 2d 814, 829-30 (S.D.W. Va. 2005) (finding that a policy that banned clothing that materially disrupted class work or involved substantial disorder or invasion of the rights of others was overbroad in violation of the First Amendment).

The facts here show that the policy is both overbroad and vague. Doe is likely to be successful on the merits of his First Amendment claim.

### C. Doe's Discipline Violated Title IX

In Title IX cases, plaintiffs can proceed under two theories: (1) plaintiff is innocent and was wrongly found to have committed an offense or (2) regardless of the guilt or innocence of the plaintiff, the severity of the penalty and/or decision to initiate

the proceeding was affected by the student's gender. *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). Doe will be successful on the merits under either theory.

### 1. Doe was wrongly found to have committed an offense.

To be successful on a claim for disparate treatment, Doe must prove facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding as well as a particularized causal connection between the flawed outcome and gender bias. *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 583 (E.D. Va. 2018).

Doe pled several facts that cast articulable doubt on the accuracy of the outcome of the proceeding. Those procedural deficiencies include: school officials failed to interview all of the important witnesses; failed to give Doe an opportunity to fully respond to all of the allegations against him; ignored credibility problems with the witnesses, including one who recanted part of her story and another who was contradicted by the very texts she sent; ignored evidence that clearly exonerates Doe as not having slapped the accuser on her buttocks; mailed the notice of the hearing merely three days before the hearing; and Forrest demonstrated her bias when she discounted Doe's statements without any evidence. As a result of these actions and Hess's and Forrest's bias, Doe never received a fair hearing.

The Board's disciplinary procedures are flawed and do not provide for a fair and reliable outcome. Here, Doe was incorrectly found responsible for violating the SR&R because he was a male student and because the Board's policies, practices, and procedures wrongly disfavor male students, like Doe.

Additionally, the Supreme Court has defined "sexual harassment" under Title

IX. *Davis v. Monroe*, 526 U.S. 629, 650. That Court states:

> Whether gender-oriented conduct rises to the level of actionable
> "harassment" thus "depends on a constellation of surrounding circumstances,
> expectations, and relationships," *Oncale v. Sundowner Offshore Services,
> Inc.*, 523 U.S. 75, 82, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998), including, but
> not limited to, the ages of the harasser and the victim and the number of
> individuals involved, see OCR Title IX Guidelines 12041-12042. Courts,
> moreover, must bear in mind that schools are unlike the adult workplace and
> that children may regularly interact in a manner that would be unacceptable
> among adults. *See, e.g.,* Brief for National School Boards Association et al.
> as Amici Curiae 11 (describing "dizzying array of immature . . . behaviors by
> students"). Indeed, at least early on, students are still learning how to
> interact appropriately with their peers. It is thus understandable that, in the
> school setting, students often engage in insults, banter, teasing, shoving,
> pushing, and gender-specific conduct that is upsetting to the students
> subjected to it. Damages are not available for simple acts of teasing and
> name-calling among school children, however, even where these comments
> target differences in gender. Rather, in the context of student-on-student
> harassment, damages are available only where the behavior is so severe,
> pervasive, and objectively offensive that it denies its victims the equal access
> to education that Title IX is designed to protect.

*Id.* at 651-52. As shown by the facts pled in the complaint as well as proven here,

Doe's actions did not rise to level of harassment as defined by the Supreme Court –

nor did they even come close.

Once the student has pled facts that show articulable doubt, he then must

plead facts showing a particularized causal connection between the flawed outcome

and gender. *Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018). Doe alleges that

the Board was motivated by the Office of Civil Rights ("OCR") investigations into how

schools handle allegations of sexual assault as well as media stories regarding the

pervasive nature of sexual assault committed by male student.

Evidence at trial will show that schools, including Fairfax County Public

Schools, are not adjusting their procedures based on the 2017 "Dear Colleague Letter" and the new 2018 guidelines. Evidence will further show that the Board was motivated by the current public sentiment to treat Doe differently due to his gender. Moreover, this assertion is supported by other facts alleged in the complaint, including that Defendant refused to believe Doe because he is male and would have believed a female student in the same situation. Further, the Board has a pattern and practice of treating males and females differently when it comes to sanctions for alleged sexual misconduct.

The absolute lack of investigation and credible evidence make it clear that Doe's gender motivated the outcome. For the foregoing reasons, Doe will be successful on the merits for his Title IX claim for erroneous outcome discrimination.

## 2. The severity of the sanctions was a result of Doe's gender.

To be successful on a claim for selective enforcement, Doe must prove that a female was in circumstances sufficiently similar to his and was treated more favorably by the defendants. *Mallory v. Ohio Univ.*, 76 Fed. App'x. 634, 641 (6th Cir. 2003). Doe will be successful on this standard because he identified female students, who were treated more favorably by the defendants.

Doe pled and will be able to prove that male students in Fairfax County Public Schools are treated disproportionately harsher for accusations of sexual harassment, improper touching, or other sexual misconduct as compared to female students. For instance, if a male student and female student are both engaged in mutual sexual contact on school grounds, it is common for the male student to be punished and for

the female student not to be punished, based on gender. Likewise, when male and female students touch each other in flirtatious but non-sexual ways, it is common that a male student will be punished and a female student will not be punished. In this case, Doe was treated more harshly and punished because he was a male student; a female student in a similar position would not have been punished. Additionally, the female students' credibility was assumed and they were treated for favorably because of their gender, while Doe's credibility was discounted and he was automatically treated less favorably because he is male. Doe's punishment was disproportionately severe because he was a male.

Evidence will show that Doe and the accuser engaged in mutual flirtation. The only difference between the behavior by Doe and the accuser is that the accuser is female. Doe will be successful on his claim under Title IX for selective enforcement.

When violations of the United States Constitution are alleged, the likelihood of success on the merits will often be determinative. *Univ. of Cincinnati,* 872 F.3d at 399 (internal citations omitted). Because Doe has alleged constitutional violations and has proven he is likely to succeed on the merits, the Court should grant this motion for temporary restraining order and preliminary injunction on this factor alone.

## II. <u>Irreparable harm the moving party is likely to suffer absent injunctive relief</u>

Irreparable harm must be actual and imminent. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). Irreparable harm occurs

where money damages are difficult to ascertain or are inadequate. *Multi-Chanel TV Cable Operating Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994). The harm here is imminent. Doe is in his last semester in high school. He has his graduation, college entrance, and scholarship on the line. Should he be required to attend an alternative behavioral school, it will forever change his opportunities in school and even, his life. If this injunction is not granted, this wrongly afforded sanction will be on his transcript during one of the most important times of Doe's life and all of the above is at stake. As he has previously discussed, if he is not granted emergency relief, he is likely to have his college admission or scholarship promptly revoked.

Additionally, the loss of an individual's First Amendment rights, even if only for a minimal period of time constitutes irreparable injury. *Doe v Pittsylvania Cnty.*, 842 F. Supp. 2d 927, 932 (W.D. Va. February 3, 2012). The Board's deprivation of Doe's First Amendment rights resulted in his suspension and removal to an alternative behavioral school for the rest of his high school career. Further, when a student's constitutional right to due process is threatened or impaired, the Court may presume irreparable injury. *Univ. of Cincinnati*, 872 F.3d at 407.

Doe is suffering imminent harm as a result of the deprivation of his due process and first amendment rights. That harm cannot be fixed by money damages and his irreparable harm is presumed. The temporary restraining order and preliminary injunction should be granted.

### III. The balance of equities is in Doe's favor.

The Court must consider the competing claims of injury between the parties and the effect on each party of the granting or denial of the relief requested. *Pro-Concepts, LLC v. Resh*, 2013 U.S. Dist. LEXIS 151714 at 63 (E.D. Va. Oct. 22, 2013). As stated above, Doe will suffer irreparable harm if he is not allowed to return to his high school to finish his last semester and is instead forced to attend an alternative behavioral school.. Additionally, to prevent any contact between Doe and his accuser, a simple, mutual no contact order will suffice.

This relief will not prejudice the Board or Doe's school. It requires minimal effort on their part. The Board merely need to allow Doe to finish out his last semester. The balance of equities is in Doe's favor.

### IV. Public interest.

Upholding constitutional rights serves the public interest. *Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003); *Stuart v. Huff*, 834 F. Supp. 2d 424, 428 (M.D.N.C. October 25, 2011). Doe has alleged that the Board violated his due process and First Amendment rights. It is in the public's interest to uphold his constitutional rights.

### Conclusion

Doe will be irreparably harmed if he is not allowed to finish his last semester of high school at a regular school. Therefore, he requests that this Court issue a temporary restraining order and a preliminary injunction preventing the Board from enforcing any sanctions against Doe for the pendency of this action.

DATED: January 19, 2019               Respectfully submitted,


By: /s/Jesse R. Binnall     .
Jesse R. Binnall, VSB No. 79292
Harvey & Binnall, PLLC
717 King Street – Suite 300
Alexandria, VA 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com
*Counsel for Plaintiff*

## Certificate of Service

I certify that on January 19, 2019, the forgoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record who are registered with CM/ECF. I further certify that I have also emailed a copy of the forgoing to:

Stuart Raphael
sraphael@HuntonAK.com
Counsel for the Fairfax County Board of Supervisors