IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>v.<br><br>FAIRFAX COUNTY SCHOOL<br>BOARD,<br><br>      Defendant. | Civil Action No. 1:19-cv-00065 |

## DECLARATION OF JOHN DOE

I am the Plaintiff in this case and am seeking the Court's permission to proceed under a pseudonym, as John Doe. I make the following declaration:

1.      I am a high school senior. Until January 10, 2019, I was studying at Robinson Secondary School. I had a 3.2 grade point average and was active on my school's wrestling team. I am an All American and Free Style State Champion Wrestler. Through my academic and wrestling achievements, I was awarded admission and a scholarship at a prestigious University; I am currently set to matriculate in the autumn of 2019.

2.      During the current 2018 to 2019 school year, I befriended a female student ("Student A"), who was new to Robinson.

3.      Student A and I had classes together and we would see each other at school outside of class. I flirted with Student A, which included friendly conversations,

1

putting my arm around her and playfully poking her in class. Student A did not reject these overtures. In fact, she would often seek out my company.

4.  On December 6, 2018, another male student ("Student B") slapped Student A on her buttocks. I was present when this occurred, but video surveillance of the incident conclusively shows that I did not take part in the slapping of Student B.

5.  After being assaulted by Student B, Student A filed a complaint with a school administrator, accusing me and Student B of sexual harassment. The accusations included the assault by Student B and allegations of sexual harassment by me. An investigation was initiated by Travis Hess, an assistant principal at Robinson.

6.  When confronted with the allegations against me, I truthfully denied ever harassing Student A but was nonetheless immediately suspended from school because of the allegations against me. The statement that I gave to Hess is attached as Exhibit 1.

7.  Other female students, who were friends of Student A, colluded with each other and Student A; they made false statements about me as part of Hess's investigation. I was not, however, afforded the ability to know what allegations each of these students made against me so that I could rebut the accusations. The statements of the other students are attached as Exhibit 2.

8.  One of the students who made a false statement about me to Hess works as a student assistant in his office. She told one of my friends that she hoped that I would be kicked out of school.

9.     The investigation was limited and inadequate. Hess failed to interview all of the important witnesses, such as other students who were in the hallway at the time of the slapping incident and failed to give me an opportunity to respond fully to all the allegations against me.

10.     One of the female witnesses later recanted part of her story to Hess.

11.     Additionally, one of the female witnesses contradicted the statement she made to Hess in text messages sent to another student, which exculpated me.

12.     Thus, the parties to the dispute disagreed as to the material facts, making the credibility of the various witnesses essential to resolving the dispute of whether I sexually harassed or inappropriately touched Student A.

13.     Robinson administrators referred me to the Board's hearing office for an adjudication of the complaint against him.

14.     Robinson Principal Matthew Eline drafted a letter informing my parents (at the time, I was still a minor) of the suspension and providing notice of the charges against me. The letter was dated December 10, 2018, but not mailed until December 18, 2018, as shown by the postmark. Exhibit 3. It was not received until December 20, 2018, the day before the hearing.  Because we did not receive the letter until December 20, we did not receive a copy of the Student Rights and Responsibilities handbook ("SR&R"), that included Regulation 2601.P, which explained the procedures that would be used at the hearing.

15.     The hearing commenced on December 21, 2018 at 10:00 a.m. and, as a result of the notice provided, I had an inadequate opportunity to prepare for the hearing

(just a single day after we the notice was received).

16.     The hearing was conducted by Lisa Forrest, a hearing officer for the division superintendent.

17.     At the hearing, neither myself nor anyone on my behalf was allowed to question my accusers or the witnesses against me. In fact, none of the witnesses were at the hearing. I was not even given the opportunity to question Hess about his investigation or the credibility of the witnesses against me.

18.     The hearing officer found the witnesses against me to be credible without hearing their testimony. Indeed, none of the witnesses against me even attended the hearing. Instead, Ms. Forrest decided the credibility based on the testimony of Principal Eline and Assistant Principal Hess.

19.     Assistant Principal Hess gave a second-hand account of the statements of the witnesses against me. He also summarized his Detailed Incident Report. Exhibit 4. He represented that these witnesses were credible, even though at least one witness had recanted part of her testimony and asked to provide a new statement. Hess never identified any of the witnesses, including the witness who recanted at least part of her testimony. Forrest did not properly inquire into the nature of the recanted testimony or why Hess still believed that witness to be credible. Hess' representation to the hearing officer on the credibility of witnesses was inaccurate.

20.     At the hearing, the case against me was present primarily by Hess. Eline also answered a few questions and made a few statements during the hearing. He summarized the evidence against me but did not provide the names of any of the

4

witnesses against me, so I had to guess as to who made each particular statement. Consequently, I was unable to rebut the evidence against me or challenge the credibility of the other witnesses.

21. There was a recess called in the middle of the hearing and my parents and I were required to leave the hearing room. At that point Forrest, Hess, and Eline remained in the hearing room alone together for an indeterminate amount of time. I do not know what they discussed during that interval.

22. At the hearing the video surveillance was presented, which showed that I did not slap or physical assault in any way Student A.

23. At the hearing I was asked questions by the hearing officer, my parents were allowed to speak, and I was allowed to make a brief statement. I was not allowed to ask any questions of Hess, Eline, or any other witnesses. I presented two witnesses statements, attached as Exhibit 5 and 6, which were not mentioned as evidence considered by the hearing officer.

24. The hearing was governed by the Board's Student Rights and Responsibilities handbook ("SR&R") and should have also been governed by the Board's duties under the United States and Virginia Constitutions and other relevant statutes, including Title IX of the Education Amendments of 1972.

25. The SR&R is woefully inadequate for a host of reasons: (a) it does not provide for a presumption of innocence; (b) it does not provide a hearing officer with any standard of review for deciding whether or not a student violated the student code of conduct; (c) it does not provide any meaningful opportunity for a

hearing officer to decide whether the witnesses against an accused student are credible; (d) it does not provide accused students with an adequate opportunity to challenge the evidence against them; (e) it has no method of allowing accused students to cross-examine the witnesses against them, either directly or indirectly; (f) it defines sexual harassment vaguely and inconsistently with the law; (g) it defines improper touching vaguely and is enforced in such a way as to make it inconsistently and disproportionally enforced against male students.

26.     On January 10, 2019, hearing officer Forrest sent my parents a letter explaining that she had found that I had violated the SR&R and that I would be reassigned to Mountain View High School ("Mountain View") for the remainder of my senior year. Mountain View is an alternative educational setting and offers substantially fewer educational and extra-curricular opportunities for me.

27.     In her decision, which is attached as Exhibit 7, Ms. Forrest discounted my testimony without cause and failed to properly consider the evidence that I offered at the hearing.

28.     Ms. Forrest ordered that I be enrolled at Mountain View as a probationary student for the remainder of my senior year. Consequently, I will not be able to attend sports activities, including wrestling. It is my understanding that if I am not allowed to wrestle by Thursday, January 24, 2019, then I will not be eligible to wrestle for the remainder of the school year. This will likely cause me to lose my college scholarship and perhaps even my college admission. Indeed, I have been notified within the last 24 hours by the University at which I have been

admitted that my admission might be withdrawn because of this proceeding. I will also not be able to attend graduation activities. I have also been denied the ability to transfer to a public school outside of Fairfax County because of the finding.

29.     Ms. Forrest's decision that I sexually harassed a female student will substantially interfere with any further college applications.

30.     Defendant has caused and is causing irreparable damage to my reputation, education, and future learning opportunities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2019

_John Doe_
John Doe