IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>FAIRFAX COUNTY SCHOOL BOARD,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:19-cv-00065 (AJT/MSN) |

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Stuart A. Raphael (VSB No. 30380)
Sona Rewari (VSB No. 47327)
2200 Pennsylvania Avenue, NW
Washington DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
sraphael@HuntonAK.com
srewari@HuntonAK.com

*Counsel for Defendant Fairfax County School Board*

February 25, 2019

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 1

A. The Student Rights & Responsibilities policy prohibits sexual harassment .......... 2

B. Robinson's administrators suspend Plaintiff for sexual harassment .......... 2

C. The Superintendent's Hearing Officer confirms the suspension and reassigns Plaintiff to an alternative high school. .......... 8

D. Plaintiff files suit here. .......... 13

E. The Court denies Plaintiff's motion for a temporary restraining order, finding that he is not likely to succeed on his legal claims. .......... 13

ARGUMENT .......... 14

I. Plaintiff has failed to plead a Title IX violation (Count I). .......... 15

II. The First Amendment does not shield sexual harassment and the SR&R fairly warned of the conduct for which Plaintiff was disciplined (Count II). .......... 20

III. Plaintiff fails to allege a due process violation (Count III). .......... 22

A. There was no due process violation because Plaintiff had notice of the accusations against him and an opportunity to present his side .......... 23

B. Plaintiff's allegations against Hearing Officer Forrest cannot support municipal liability against the School Board. .......... 25

C. High school students have no constitutional right in suspension proceedings to cross-examine witnesses or force the disclosure of witness names. .......... 26

D. Student disciplinary proceedings require no presumption of innocence or standard of proof. .......... 28

IV. Plaintiff fails to allege an Equal Protection violation (Count IV). .......... 30

CONCLUSION .......... 30

CERTIFICATE OF SERVICE .......... 31

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 14, 16, 17, 30

*Bd. of Zoning Appeals v. CaseLin Systems, Inc.*,
256 Va. 206, 501 S.E.2d 397 (1998) .......... 19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......... 14, 16, 17, 30

*Bernstein v. Menard*,
557 F. Supp. 92 (E.D. Va. 1983),
*aff'd*, 728 F.2d. 252 (4th Cir. 1984) .......... 23

*Bethel Sch. Dist. No. 403 v. Fraser*,
478 U.S. 675 (1986) .......... 20, 21, 22

*Brzonkala v. Va. Polytechnic Instit. & State Univ.*,
169 F.3d 820 (4th Cir. 1999),
*aff'd on other grounds sub nom. United States v. Morrison*, 529 U.S. 589 (2000) .......... 15

*Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*,
121 F. App'x 515 (4th Cir. 2005) .......... 27

*Cannon v. Univ. of Chicago*,
441 U.S. 677 (1979) .......... 15

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) .......... 25, 26, 30

*Cohen v. California,*
403 U.S. 15 (1971) .......... 22

*Collins v. Prince William Cty. Pub. Schs*.,
No. 03-1455-A, 2004 U.S. Dist. LEXIS 28298 (E.D. Va. Apr. 21, 2004),
*aff'd sub nom. Collins v. Prince William County Sch. Bd.*,
142 F. App'x 144, 146 (4th Cir. 2005) .......... 23

*Coronado v. Valleyview Pub. Sch. Dist.*,
537 F.3d 791 (7th Cir. 2008) .......... 28

*Corr v. Metro. Wash. Airports Auth.*,
800 F. Supp. 2d 743 (E.D. Va. 2011),
*aff'd*, 740 F.3d 295 (4th Cir. 2014) .......... 14, 15

*Dixon v. Ala. State Bd. of Educ.*,
294 F.2d 150 (5th Cir. 1961) .......... 26

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) .......... 27

*Doe v. Coll. of Wooster*,
243 F. Supp. 3d 875 (N.D. Ohio 2017).......... 19

*Doe v. Cummins*,
662 F. App'x 437 (6th Cir. 2016) .......... 16

*Doe v. Loh*,
No. CV PX-16-3314, 2018 WL 1535495 (D. Md. Mar. 29, 2018),
*appeal docketed* No. 18-497 (4th Cir. May 3, 2018) .......... 27

*Doe v. Marymount Univ.*,
297 F. Supp. 3d 573 (E.D. Va. 2018) .......... 15, 16, 18

*Doe v. Rector & Visitors of George Mason Univ.*,
132 F. Supp. 3d 712 (E.D. Va. 2015) .......... 15, 16, 19

*Doe v. Univ. of Cincinnati*,
173 F. Supp. 3d 586 (S.D. Ohio 2016) .......... 29

*Doe v. Univ. of Cincinnati*,
872 F.3d 393 (6th Cir. 2017) .......... 27

*FCC v. Pottsville Broad. Co.*,
309 U.S. 134 (1940).......... 24

*Feminist Majority Found. v. Hurley*,
911 F.3d 674 (4th Cir. 2018) .......... 17

*Franklin v. Gwinnett Cty. Pub. Schs.*,
503 U.S. 60 (1992).......... 15

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998).......... 15

*Goldberg v. Kelly*,
397 U.S. 254 (1970).......... 24

*Goss v. Lopez*,
419 U.S. 565 (1975).......... 23, 24

*Hardwick v. Heyward*,
711 F.3d 426 (4th Cir. 2013) .......... 21

*Henson v. Honor Comm. of the Univ. of Va.*,
719 F.2d 69 (4th Cir. 1983) .......... 26

*J.S. ex rel. Duck v. Isle of Wight Cty. Sch. Bd.*,
362 F. Supp. 2d 675 (E.D. Va. 2005) ........ 27

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
341 U.S. 123 (1951)........ 24

*Kowalski v. Berkeley Cty. Schs.*,
652 F.3d 565 (4th Cir. 2011) ........ 20, 21, 22

*Lavine v. Milne*,
424 U.S. 577 (1976)........ 29

*Mathews v. Eldridge*,
424 U.S. 319 (1976)........ 24, 26

*Monell v. New York City Dept. of Soc. Servs.*,
436 U.S. 658 (1978)........ 25

*Newsom ex rel. Newsom v. Albemarle Cty. Sch. Bd.*,
354 F.3d 249 (4th Cir. 2003) ........ 21

*Newsome v. Batavia Local Sch. Dist.*,
842 F.2d 920 (6th Cir. 1988) ........ 27, 28

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)........ 25, 26

*Philips v. Pitt Cty. Mem'l Hosp.,*
572 F.3d 176 (4th Cir. 2009) ........ 2, 14

*Prof'l Massage Training Ctr., Inc. v. Accreditation Alliance of Career Schs. & Colls.*,
781 F.3d 161 (4th Cir. 2015) ........ 17

*R.M.B. v. Bedford Cty. Sch. Bd.*,
169 F. Supp. 3d 647 (W.D. Va. 2016)........ 27

*Riddick v. Sch. Bd. of Portsmouth*,
238 F.3d 518 (4th Cir. 2000) ........ 26

*Schaffer ex rel. Schaffer v. Weast*,
546 U.S. 49 (2005)........ 29

*Terrebonne, Ltd. v. Murray*,
1 F. Supp. 2d 1050 (E.D. Cal. 1998) ........ 30

*Tinker v. Des Moines Indep. Sch. Dist.,*
393 U.S. 503 (1969)........ 21

*United States ex rel. Garzione v. PAE Gov't Servs., Inc.*
164 F. Supp. 3d 806 (E.D. Va. 2016) ........ 14

*Veney v. Wyche*,
293 F.3d 726 (4th Cir. 2002) .......... 14

*W.S. Carnes, Inc. v. Bd. of Sup'rs of Chesterfield Cty.*,
252 Va. 377, 478 S.E.2d 295 (1996) .......... 19

*Watson ex rel. Watson v. Beckel*,
242 F.3d 1237 (10th Cir. 2001) .......... 28

*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
473 U.S. 172 (1985) .......... 23

*Woods v. City of Greensboro*,
855 F.3d 639 (4th Cir. 2017) .......... 2, 17

*Yusuf v. Vassar Coll.*,
35 F.3d 709 (2d Cir. 1994) .......... 16

**Statutes**

20 U.S.C. §§ 1681–1688 .......... 13

20 U.S.C. § 1681(a) .......... 15

20 U.S.C. § 1682 .......... 15

42 U.S.C. § 1983 .......... 13, 25

Va. Code Ann. § 22.1-87 (2016) .......... 23

Va. Code Ann. § 22.1-279.3(C) (2016) .......... 2

**Regulations**

29 C.F.R. § 1604.11(a) (2018) .......... 22

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1, 16

Fed. R. Evid. 802 .......... 19

## INTRODUCTION

The plaintiff was suspended from high school and reassigned to an alternative school for sexually harassing his female classmate. The classmate complained that Plaintiff persistently said that he wanted to "f---" her, sent her a Snapchat photograph of his fully-clothed crotch with the caption "do you want this in your mouth," said he wanted her "between" him and his friend, and repeatedly poked her on the arms, leg, and stomach. Although Plaintiff denies doing those things, five other witnesses supported the victim's account, including Plaintiff's male friend, who forthrightly admitted his role in the harassment. Before any discipline was imposed, Plaintiff received notice of the accusations against him and a chance to tell his side of the story.

This Court previously denied Plaintiff's motion for a temporary restraining order, finding that Plaintiff was not likely to succeed on the merits of any of the three counts alleged in the original complaint. Plaintiff's now-amended complaint likewise fails to add sufficient factual material to survive scrutiny. His Title IX claim and new Equal Protection claim lack merit because he fails to allege sufficient facts to plausibly show that he was disciplined on account of gender bias or because the school system treats boys differently from girls. His Free Speech claim fails because the school system's definition of sexual harassment provided fair warning that Plaintiff's harassing conduct was prohibited. And his Due Process claim fails because he had notice of the charges against him and an opportunity to tell his side before discipline was imposed. Plaintiff's novel claim that he was entitled to various courtroom-like procedures in a high-school disciplinary setting has no basis in law, in this or any other circuit.

## STATEMENT OF FACTS

In considering a motion to dismiss under Rule 12(b)(6), the Court must "consider as true all well-pleaded allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and of unquestioned authenticity."

*Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) (same).[1]

**A. The Student Rights & Responsibilities policy prohibits sexual harassment.**

Virginia law requires public school systems to notify parents each year about the "standards of student conduct" that apply to their children. Va. Code Ann. § 22.1-279.3(C) (2016). The standards implemented by the Fairfax County School Board are set forth in the Student Rights & Responsibilities handbook ("SR&R") (Ex. 6). The SR&R provides that "[s]tudents may be disciplined by school officials, to include suspension, reassignment, expulsion, and exclusion from school and all school-sponsored activities, for prohibited conduct occurring on school property . . . ." Ex. 6 at 50. "Prohibited conduct" specifically includes:

> Sexual harassment (which includes unwelcome sexual advances, regardless of sexual orientation; requests for sexual favors; and other inappropriate verbal, electronic, or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment).

*Id.* at 54 (footnote omitted); *see also id.* at 82 ("sexual harassment" definition).

**B. Robinson's administrators suspend Plaintiff for sexual harassment.**

In December 2018, Plaintiff was a senior at Robinson Secondary School in Fairfax County, Virginia. Am. Compl. ¶ 4. Plaintiff "befriended a female student" that year "who was

---

[1] Consistent with that standard, the facts discussed here come from the amended complaint and six other documents: (1) the transcript of the December 21, 2018 disciplinary hearing, referenced in the amended complaint (¶¶ 18-24, 26), and previously filed in connection with the TRO briefing at ECF 13-1 (**Exhibit 1**); (2) the student witness statements referenced in the amended complaint (¶¶ 8-10) and previously filed by Plaintiff at ECF 5-2 & 5-3 (**Exhibit 2**); (3) the Principal's letter of December 10, 2018 (Am. Compl. ¶ 17), previously filed by Plaintiff at ECF 5-4 (**Exhibit 3**); (4) the Hearing Officer's January 10, 2019 letter (Am. Compl. ¶ 28), previously filed by Plaintiff at ECF 5-8 (**Exhibit 4**); the Detailed Incident Report (Am. Compl. ¶ 12), previously filed by Plaintiff at ECF 5-5 (**Exhibit 5**); and the School Board's Student Rights & Responsibilities handbook, https://tinyurl.com/y2yks4y9, previously filed at ECF 10-1 at 11 (**Exhibit 6**).

new to Robinson." *Id.* ¶ 5. Consistent with the terminology used at the TRO hearing, she will be referred to here as "Female Student 1." She and Plaintiff "had classes together and would see each other at school outside of class. Plaintiff flirted with [her], which included friendly conversations, putting his arm around her and playfully poking her in class." *Id.* ¶ 6. Plaintiff claims that she "did not reject these overtures. In fact, she would often seek out [Plaintiff] Doe's company and return his flirtations." *Id.*

On December 6, 2018, another male student ("Male Student 1") "slapped [Female Student 1] on her buttocks." *Id.* ¶ 7. Plaintiff was present but did not himself "take any part in the slapping." *Id*. "After being assaulted by [Male Student 1], [Female Student 1] filed a complaint with a school administrator, accusing [Plaintiff] Doe and [Male Student 1] of sexual harassment. The accusations included the assault by [Male Student 1] and allegations of sexual harassment by Doe." Compl. ¶ 8.

"An investigation was initiated by Travis Hess, an assistant principal at Robinson." *Id*. Female Student 1 told Hess that Plaintiff and Male Student 1 had started "sexually harassing" her about a month before. Ex. 2 at 4. She said they told her "how they want to 'get me in between them.'" *Id*. When she would walk down the hall, they would yell "Damn looking good" and similar catcalls. *Id*.; Ex. 1, 12-21-18 Tr. at 12:11–14. She said that, earlier that day, Male Student 1 "slapped my butt" in the locker bay. Ex. 2 at 4. And when she turned around, "the boys were kind of pointing back and forth at each other, like, he did it, no, he did it, no, he did it, and kind of laughing, or whatever." Ex. 1, 12-21-18 Tr. at 11:7–10. Female Student 1 was accompanied by her friend, Female Student 2, who told Hess that she witnessed the Plaintiff asking Female Student 1 "Hey, are you trying to fuck?" *Id*. at 13:1–2; *see generally* Ex. 5 at 1.

Hess obtained and reviewed the security-camera video of the locker-bay incident and contacted the parents of Female Student 1, meeting with the family the next day, December 7. Ex. 1, 12-21-18 Tr. at 13:3–18. Female Student 1 told Hess that the harassment had been going on for "about four weeks." *Id*. at 13:18. Female Student 1 again described Plaintiff's "in between them" remark, adding that Plaintiff also "sent her a Snapchat of his fully clothed-crotch" with the caption "'Do you want this in your mouth?'" *Id*. at 13:22–14:3. In English class, Plaintiff "would poke her in a flirtatious matter, either on the arm, or on the leg, or on the stomach," even though "she tried to make it clear that she was not comfortable with that." *Id*. at 14:7–11. She would tell him "[t]hat's enough" or move her chair away. *Id*. at 14:12–13. But when she told him "it's not going to happen," he responded "I will have sex with you at some point." *Id*. at 14:14–16. *See also* Ex. 5 at 2 (Detailed Incident Report).

In a victim-impact statement, Female Student 1 said that the comments by Plaintiff started "in a humorous way" but got "worse" and "physical." Ex. 2 at 9. The comments made her "very uncomfortable." *Id*. She said that when Plaintiff "talks to me or touches me I tell him to stop and that I'm not comfortable with it but he remains persistent." *Id*. She said she "was hesitant to say anything about this situation to an adult because I felt bad for getting the [two] boys in trouble but once it got to a certain point it was the right thing to do." *Id*.

Hess interviewed Female Student 3 about the locker-bay incident. Ex. 1, 12-21-18 Tr. at 14:20 to 15:3. Female Student 3 confirmed that, after Male Student 1 slapped the buttocks of Female Student 1, both boys were "pointing to each other and laughing." *Id*. at 15:2–3. She added that both boys had previously said "multiple times" that "they want to fuck us." *Id.* at 15:4–6; Ex. 2 at 5. Female Student 3 said that Plaintiff told her that he would "bang the shit out of me in his bed." Ex. 1, 12-21-18 Tr. at 15:7–9; Ex. 2 at 5.

Male Student 1 was interviewed by Hess on the morning of December 7 and later gave a written statement on December 9. Ex. 1, 12-21-18 Tr. at 16:2–7; Ex. 2 at 2–3 (written statement). Male Student 1 admitted to having touched Female Student 1 on the buttocks, for which he was "truly sorry"; he hoped that she "and her family will forgive me for my actions." Ex. 2 at 2–3. But he also said that Plaintiff was the one who had told Female Student 1 "We want you in between us." *Id*. at 2. Male Student 1 acknowledged, "now looking back, how those [prior] exchange[s] would be perceived as threatening." *Id*.

Female Student 4 spoke to Hess on December 7. Ex. 1, 12-21-18 Tr. at 15:10–11. She revealed that she too felt "very uncomfortable" by the way [Plaintiff] talks to [Female Student 1]. "He always talks about sexual activity with her even when she tells him to stop." Ex. 2 at 8. "Not only does he use nasty words, he also touches her when she has told him not to." *Id*. One time she heard Plaintiff tell Female Student 1 "You telling me I can't get it makes me want it even more. I'm gonna get it." *Id.* He also told her that "You're gonna be in the middle of me and [Male Student 1]." *Id*. She recounted that Plaintiff once commented that Female Student 1 was "just playing hard to get," but "I know she wants me." *Id*.; *see also* Ex. 1 at 15:10–16:1.

Hess called Plaintiff to his office on the morning of Monday, December 10. Ex. 1, 12-21-18 Tr. at 17:15–16. Hess thought "the best thing to do, was to inform the parents and [Doe] at the same time of the allegations." *Id*. at 17:17–19. Plaintiff's mother was called and offered the opportunity to attend in person, but she elected to participate by speaker phone; Plaintiff's father joined the call thereafter. *Id*. at 17:21–18:4.

Hess "made them aware of all of these allegations." *Id*. at 18:5–8. Plaintiff "denied saying any of these things; denied the Snapchat, denied any of the comments—the in between us—any of the other sexually explicit stuff. He did say that he felt that he was flirtatious with

[Female Student 1]; that he had put his arm around her in English class, and maybe poked her on the arm, but didn't believe that he poked her on the legs, or on the stomach." *Id*. at 18:9–17. Plaintiff also denied telling Female Student 1 he wanted to have sex with her. *Id*. at 18:18–20; *see* Ex. 5 at 2-3 (Detailed Incident Report). Plaintiff theorized to Hess that "the girls had kind of corroborated their story, and gotten together against him." Ex. 1, 12-21-18 Tr. at 18:22–19:2.

Hess told the family that Plaintiff did not have to provide a written statement, but Plaintiff volunteered one. *Id*. at 19:3–6. Plaintiff's written statement acknowledged that "I am being accused of sexual harassment" but said "I feel this is not true." Ex. 2 at 1. He admitted telling a friend that he thought Female Student 1 is "attractive" and that "I would hook up with her." *Id*. He admitted "flirting" with her, putting his "arm around her," and having "poked her in class." *Id.* He denied saying he wanted to "fuck" her and denied having "snapchatted her any inappropriate things." *Id*. He felt "that I should apologize" and then "never talk to her or her friends ever again and this issue [will] never occur again." *Id*. While Plaintiff was writing his statement, Hess asked why Plaintiff's friend would have attributed the in-between-us comment to him, to which Plaintiff responded "I thought we were friends; that's messed up." Ex. 1, 12-21-18 Tr. at 19:12–18.

Hess found Female Student 1 and the other students he interviewed to be credible. Ex. 1, 12-21-18 Tr. at 22:22–23:2. Although Plaintiff told Hess that he thought the girls had "got[ten] together and corroborated their story," Hess interviewed them separately, except for Female Student 2, who had accompanied Female Student 1 when she first reported the harassment. *Id*. at 23:5–20. Hess also found Plaintiff's male friend to be credible because he had been "honest" about "his own misconduct." *Id*. at 24:1–5. By contrast, Hess did not find Plaintiff's denials to be credible. *Id*. at 24:19–25:6.

After consulting with Hess, Robinson Principal Matthew Eline decided to suspend Plaintiff for ten days and refer him to the Division Superintendent to consider further discipline. *Id*. at 50:4–10; Ex. 3 at 1. Hess telephoned Plaintiff's mother to tell her about the suspension and to ask her to pick up her son from school. When the mother arrived, Hess showed her the videotape of the December 6 incident; she disagreed that the tape showed Plaintiff laughing when Male Student 1 slapped Female Student 1's buttocks, saying that the tape only showed Plaintiff's head from behind. Ex. 1, 12-21-18 Tr. at 50:21–51:8.

The Principal's December 10, 2018 letter to Plaintiff's parents confirmed the "conversation on December 10th, when you were informed that your son . . . would be suspended from school for ten school day(s) and referred to the Division Superintendent" to consider further discipline. Ex. 3 at 1. It stated that the "decision to suspend [Doe] and to make this disciplinary referral was made after he was advised of the suspected infraction and the facts known to school personnel were explained to him. [Doe] was given the opportunity to present his version of the incident before the decision to suspend him was made." *Id*.

The amended complaint asserts that the December 10 letter was "not received until December 20, 2018, the day before the [Hearing Officer's] hearing." Am. Compl. ¶ 17. Although that assertion is false,[2] we will assume it to be true for purposes of this motion.

Hess drafted a Detailed Incident Report (Ex. 5) on or about December 10. Am. Compl. ¶ 16. Plaintiff claims that the report omitted "exculpatory" evidence that Hess had collected in the form of a statement from one witness—Female Student 5. *Id*. ¶ 16. But Hess explained those circumstances at the disciplinary hearing before the Hearing Officer.

---

[2] *See* Declaration of Dana Scanlan ¶ 8 (ECF 10-2) (stating that a copy of the 12-10-2018 letter was included in the disciplinary packet picked up from the Hearings Office by Plaintiff's father on December 13, 2018).

Female Student 5 initially told Hess on December 7 that she had "never heard [Plaintiff] say anything sexually inappropriate." Ex. 1, 12-21-18 Tr. at 16:15–17. After Hess submitted his report, Female Student 5 returned to him on December 12 to admit that she had not been truthful because "she was friends with [Plaintiff]" and "didn't want [him] to get into trouble." *Id*. at 16:18–17:3. She then provided a written statement that Plaintiff had made various "sexual comments" about Female Student 1, "like 'Oh, I'm going to fuck the shit out of her.'" Ex. 2 at 10. Female Student 1 would tell him to stop, but he said that telling him to stop just made him want "to fuck her more." *Id*. At first, Female Students 1 and 5 "thought it was funny[,] but it eventually got out of hand," with Plaintiff continuously making statements about "wanting to fuck" Female Student 1. *Id*. She said he boasted that he would be "'fucking' her by the end of the year or adding [her] to his 'collection.'" *Id*.; *see also* Ex. 1, 12-19-18 Tr. at 17:6–14.

Copies of the written witness statements of Female Students 1–5 were provided to Plaintiff's family in advance of the disciplinary hearing before the Superintendent's Hearing Officer, although the names of the students were redacted. *See* Ex. 1, 12-21-18 Tr. at 49:14–17; Ex. 2 (witness statements); Ex. 7, 1-23-19 Tr. at 10:6 (noting Plaintiff had the statements).

**C. The Superintendent's Hearing Officer confirms the suspension and reassigns Plaintiff to an alternative high school.**

The Superintendent's Hearing Officer, Lisa S. Forrest, conducted a disciplinary hearing on December 21, 2018, attended by Plaintiff, his parents, Principal Eline, and Assistant Principal Hess. Am. Compl. ¶¶ 17–21; Ex. 1, 12-21-18 Tr. at 1–3. Plaintiff acknowledged at the outset that he was accused of sexual harassment. Ex. 1, 12-21-18 Tr. at 8:3–5. The names of Female Students 1 and 3 were known to him and his parents, and their true names were used without pseudonyms at the hearing. *Id*. at 10:3–10; 65:13–19.

Hess explained his investigation and his findings, describing what he had been told by Female Students 1–5, Male Student 1, and the Plaintiff. *Id*. at 10:13–26:10. Principal Eline explained his rationale for suspending Plaintiff, stating that safety was "the most important job that I have," and "not just safety for [Plaintiff] but for all of our students." *Id.* at 26:14–7. He said that "[w]hen somebody is harassed, it's difficult to learn well." *Id*. at 26:18–27:1.

Hearing Officer Forrest then heard Plaintiff's account of the incident and the accusations against him. *Id*. at 27:17. Plaintiff admitted that he knew that school rules do not allow him to "improperly touch anyone" and that sexual harassment is not allowed. *Id*. at 31:2–10. But he disagreed with "most" of what Hess described, except that he admitted being present when Male Student 1 "slapped" Female Student 1 "on the butt." *Id*. at 28:2–5. Plaintiff said "I don't recall laughing, but then again, I don't understand how laughing is an issue." *Id*., 28:6–8. When asked if it was appropriate to laugh when a female student is slapped on the buttocks, he answered "I laugh when I'm uncomfortable." *Id*. at 28:11–17.

Plaintiff said that the allegations against him "came at me out of nowhere." *Id*. at 28:20–21. While he admitted having flirted with Female Student 1 and being "nice" and "kind" to her, he denied doing anything "inappropriate with her," insisting they were "friends." *Id*. at 29:3–13. He claimed that she had never told him to "stop" or that he was "bothering her." *Id*. at 29:18–21.

Plaintiff denied telling Female Student 1 that he wanted her "in between" him and Male Student 1. *Id*. at 33:14–16. Plaintiff also denied poking her anywhere except on her "shoulder or arm," which he said he did "one time" in a "teasing, friendly way." *Id*. at 34:1–13. He denied using Snapchat to invite fellatio but admitted being friends with her on that social media platform. *Id*. at 34:22–35:8. The Hearing Officer asked about the other accusations of catcalling and inappropriate comments, which Plaintiff also denied. *Id*. at 35:9–22.

When asked why he thought Female Student 1 would "make this up," Plaintiff answered "I honestly don't know where this is coming from. You know, she came across as someone [who] was really shy and friendly; I thought we were okay friends." *Id*. at 36:4–9; *see also id.* at 33:17–22 (same). He also said he didn't know why Male Student 1—his friend of "[f]ive or six years"—would attribute the "in between us" comment to Plaintiff. *Id*. at 37:17.

The Hearing Officer called for the videotape of the December 6 locker-bay incident. *Id*. at 43:21–6. During the break, Plaintiff alleges that Hess and Eline remained in the room for an "*ex parte* conference," Am. Compl. ¶ 24, but he does not allege what they discussed; neither Plaintiff nor his parents voiced any complaint about it afterwards when the hearing resumed. *See* Ex. 1, 12-21-18 Tr. 44. The Hearing Officer then played the videotape. *Id*. at 44:7-45:14.

The Hearing Officer next heard from Plaintiff's parents. Plaintiff's mother complained that Hess had questioned Plaintiff outside of the parents' presence when he asked why Male Student 1 would attribute the "in between us" comment to Plaintiff. *Id*. at 47:16–22. The Hearing Officer asked Hess to respond; Hess said that he had asked that question in passing and that it was the only question posed outside of the parents' presence. *Id*. at 48:1–16. Hearing Officer Forrest observed that, although the discipline packet given to the family included redacted written statements from the other witnesses, it did not have the written statement of Male Student 1; she directed that a redacted copy be provided to the family. *Id*. at 48:17–49:17.

Plaintiff's mother next complained that the school system had not followed its own rules because the family had not received the Principal's December 10 letter until the day before the hearing. *Id*. at 52:1–19. She also said that, if there had been a problem in Plaintiff's English class, the school should have told the parents. *Id*.at 53:17–54:8. The Hearing Officer noted that the English teacher's report showed that she had not observed Plaintiff's actions towards Female

Student 1. *Id*. at 54:10–20. Plaintiff's mother further complained that Hess is "an educator, an administrator; he's not an investigator," *id*. at 55:3–7, and that her son was punished in this "so-called investigation" without "due process," *id*. at 56:6–17.

The Hearing Officer responded that due process called for Plaintiff to be informed of the accusations against him and given a chance to respond, which appeared to have been done. *Id*. at 56:20–57:5, 58:11–13. She asked Principal Eline if there had been a delay in mailing the December 10 letter, to which he replied "not that I'm aware of." *Id*. at 57:6–8.

Plaintiff's father complained that "this process is highly flawed" and that his son was the "victim." *Id.* at 59:22, 60:6–7. He blamed his son's poor grades on the suspension and complained that his son "was not afforded due process." *Id.* at 60:7–16. He said that "a case built by an accuser and her friends, holds no validity in any court of law." *Id*. at 60:21–22.

Plaintiff's father added that "Mr. Hess is an educator and an administrator, he's not an investigator," and that the school should have done "a more thorough investigation." *Id*. at 61:1–11. He complained that the written statement from Female Student 1 was vague and had little detail. *Id*. at 61:12–18. He argued that no punishment was appropriate because the Fairfax Police had declined to bring charges. *Id*. at 62:18–63:14. He said he did not blame Hess, noting "my son absolutely adores that guy." *Id*. at 63:22–64:6.

Plaintiff's father submitted supporting statements from two students, one accusing Female Student 1 of saying untruthful things about a boy she previously dated, and another from a girl claiming to have seen Female Student 1 flirting with Plaintiff. *Id*. at 64:9–65:3. Plaintiff's mother also said that Female Student 3 had been texting with her son "as though nothing was going on," "acting like his friend," while "backhandedly writing this stuff" about him; she said the Hearing Officer could do "whatever you please" with that. *Id*. at 66:3–68:19.

In response to the father's comments, the Hearing Officer further questioned Hess about Female Student 1's statements. Hess explained that Female Student 1 had offered more details during her interview than she put in her written statement, but she had declined to provide further written statements. *Id*. at 67:10–18.

Hearing Officer Forrest invited final comments by Plaintiff. He said he felt "horrible that [Female Student 1] feels this way. I didn't see this coming, because I thought we were good friends." *Id*. at 68:20–69:4.

At the hearing's conclusion, Hearing Officer Forrest found that, "notwithstanding [Plaintiff's] denials, I do find that he made inappropriate comments towards another student. That his involvement was not only substantiated by the victim, but also a number of other students who school officials found to be credible, to include the other boy who's involved, who had no reason to falsely implicate [Plaintiff]." *Id*. at 70:3–11. So the Hearing Officer confirmed the ten-day suspension, extended it pending a written decision, and promised a written decision within ten school days. *Id*., 70:12–17.

The Hearing Officer issued her written decision on January 10, 2019 (Ex. 4), four school days after the disciplinary hearing.[3] After "careful consideration of all the information," the Hearing Officer concluded that Plaintiff had violated "School Board policy by sexually harassing a female student (by virtue of his repeated inappropriate and sexual comments, gestures, and improper touching) at school." Ex. 4 at 2. That misconduct was "substantiated by multiple credible witnesses, to include the other boy involved who had already admitted his own misconduct to school officials and had no reason to falsely implicate" Plaintiff. *Id*. at 3. She

[3] The school system's winter break lasted from Monday, December 24, 2018, through Friday, January 4, 2019. *See* FCPS Standard Calendar for School Year 2018–19 at https://www.fcps.edu/index.php/calendars/2018-2019-fcps-standard-school-year-calendar.

found that, while expulsion was unwarranted, Plaintiff should be reassigned to Mountain View High School effective immediately. *Id*. She advised the family of their right to appeal her decision to the School Board. *Id*. at 5.

**D. Plaintiff files suit here.**

Having recently turned 18, Doe filed his initial complaint here on January 16, 2019, ECF 1, and an amended complaint on February 12, ECF 22. Plaintiff claims in Count I that the School Board violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, asserting that he was treated more harshly because he is male. Am. Compl. ¶¶ 39–41, 46-47. Count II alleges a claim under 42 U.S.C. § 1983 that the School Board violated Doe's First Amendment rights "by punishing him for his speech" and "using a harassment policy and an improper touching policy that is unconstitutionally vague." *Id.* at 11 (¶ 46).[4] Count III adds a second § 1983 claim for denying him procedural due process. Finally, Count IV (newly added) asserts that the Board also violated the Equal Protection Clause on the theory that "Board employees investigated and punished Doe for sexual harassment when female students who engage in activity that is materially indistinguishable from the activity of which Doe was accused are not investigated or punished." *Id*. at 14 (¶ 57).

The day after commencing this litigation, Plaintiff appealed the Hearing Officer's decision to the School Board. Ex. 7, 1-23-19 Tr. at 4:16. The Amended Complaint does not say what happened in that appeal.

**E. The Court denies Plaintiff's motion for a temporary restraining order, finding that he is not likely to succeed on his legal claims.**

Plaintiff moved for a temporary restraining order to be restored to Robinson Secondary School and the wrestling team. ECF 4 & 5. The Court denied that motion on January 23, 2019.

[4] The Amended Complaint repeats paragraph numbers out of order beginning at page 11.

ECF 15 (Order), Ex. 7 (transcript of bench ruling). The Court found that Plaintiff was not likely to prevail on his Title IX claim, Ex. 7 at 6:8–12, or his First Amendment claim, *id*. at 6:13–7:15. The Court also found that Plaintiff's Due Process claim would likely not succeed because Plaintiff was on notice of the claims against him and had an adequate opportunity to tell his side, and because courts have not required in the secondary school context the type of procedural protections Plaintiff demands here, *id*. at 7:16–12:6.

**ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The pleading "must 'possess enough heft'—that is, 'factual matter,'" to make the plaintiff's claims "plausible," not merely "conceivable." *United States ex rel. Garzione v. PAE Gov't Servs.*, *Inc.* 164 F. Supp. 3d 806, 811 (E.D. Va. 2016) (Trenga, J.) (citations and quotations omitted).

While properly pleaded facts must be construed "in the light most favorable to the plaintiff," *Philips*, 572 F.3d at 180, the Court "need not accept legal conclusions drawn from the facts nor accept as true unwarranted inferences, unreasonable conclusions or arguments." *Corr v. Metro. Wash. Airports Auth.*, 800 F. Supp. 2d 743, 745 n.2 (E.D. Va. 2011) (Trenga, J.), *aff'd*, 740 F.3d 295 (4th Cir. 2014) (citing *Philips*). "Nor must [the Court] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and quotation marks omitted). Thus, if there is a conflict between the factual allegations in the amended complaint and the exhibits attached to the motion

to dismiss, the exhibits control. *Id.*; *Corr*, 800 F. Supp. 2d at 745 n.2 (considering numerous matters of public record attached to motion to dismiss).

Consistent with this Court's ruling when it denied a TRO, not one count of the amended complaint alleges a plausible claim for relief.

## I. Plaintiff has failed to plead a Title IX violation (Count I).

Title IX provides that no person shall "on the basis of sex" be "excluded from . . . denied the benefits of . . . or . . . subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Congress expressly authorized an administrative enforcement mechanism in the statute. *Id.*, § 1682. But the Supreme Court has also recognized an implied private right of action, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979), which allows plaintiffs to recover both money damages and equitable relief, *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 76 (1992). Because Title IX draws its authority from the Spending Clause, educational institutions can be liable only for their own intentional misconduct; their liability may not be premised on vicarious liability or constructive knowledge. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998). Similarly, Title IX does not permit a claim based on "disparate impact." *Brzonkala v. Va. Polytechnic Instit. & State Univ.*, 169 F.3d 820, 827 n.2 (4th Cir. 1999) (en banc), *aff'd on other grounds sub nom. United States v. Morrison*, 529 U.S. 589 (2000); *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 731–32 (E.D. Va. 2015).

When a student's Title IX claim asserts that an educational institution has reached an erroneous outcome with regard to the discipline imposed, the plaintiff must show not only that procedural flaws led to the wrong outcome, but that the decision-makers were motivated by gender bias. *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 583–84 (E.D. Va. 2018). We show in Part III below why the procedures used by the school system do not violate the Due Process

Clause. For the same reason, Plaintiff has not pleaded facts sufficient to show that procedural flaws led to his being wrongly found to have committed sexual harassment.

In addition, he has failed to plead facts sufficient to show that he was disciplined because of gender bias. A "conclusory allegation of gender discrimination [is] not sufficient to survive a motion to dismiss." *Marymount*, 297 F. Supp. 3d at 584 (quoting *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016)). Instead, the plaintiff must "plead *sufficient facts* to create an inference that he was wrongfully accused and that he was wrongfully adjudicated guilty and disciplined, in part because of his gender." *Id*. at 584 (emphasis added); *see also Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994) ("A plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.").

To be sure, Plaintiff broadly asserts that the school system was biased against him because he is "male" and that he would have been treated more leniently if he had been female. *E.g.,* Am. Compl. ¶¶ 43, 46–47. He also claims that "[m]ale students at schools governed by Defendant are more likely to be disciplined than female students for the same offense." *Id*. ¶ 48. He says that "female students are almost never punished at all for conduct that is materially indistinguishable from the conduct of which Doe has been accused." *Id*. ¶ 47.

Such conclusory allegations, without any supporting facts, flunk the Supreme Court's *Iqbal/Twombly* test and require dismissal under Rule 12(b)(6). *See, e.g.*, *George Mason Univ*., 132 F. Supp. 3d at 732–33 ("[P]laintiff's two allegations that gender bias is the 'only' explanation for the outcome of his proceeding are entirely conclusory and entitled to no weight under *Twombly.*"). Plaintiff fails to identify any example to support his claims. He cites no female student, for instance, who escaped discipline despite having sexually harassed another student.

*Twombly* held that a plaintiff must plead "enough facts to state a claim to relief that is

plausible on its face." *Id*. at 570. The Supreme Court applied that rule again in *Iqbal*, reiterating that allegations that "are no more than conclusions[] are not entitled to the assumption of truth." *Id*. at 679. Iqbal's allegations that the defendants acted "solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest" were thus "bare assertions . . . not entitled to be assumed true." *Id*. at 680–81. The Fourth Circuit holds that *Iqbal/Twombly*'s "heightened standard applie[s] to *all* civil actions, including claims of discrimination." *Woods*, 855 F.3d at 647 (emphasis added). Indeed, it recently applied *Iqbal/Twombly* in a Title IX case. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018).

The *Iqbal/Twombly* standard forecloses crediting Plaintiff's conclusory claims that the "defendant" discriminated against Doe because he is male. It is certainly possible that a decision-maker in a hypothetical case *could* discriminate against a student on account of sex-based animus. But a suspension for sexual harassment is also consistent—indeed, much more so—with the inference that the decision-maker genuinely believed that the student engaged in disciplinable conduct. "An administrative decisionmaker [is] entitled to a 'presumption of honesty and integrity,'" a presumption that is overcome *only* by "a strong showing of bad faith or improper behavior." *Prof'l Massage Training Ctr., Inc. v. Accreditation Alliance of Career Schs. & Colls.*, 781 F.3d 161, 177–78 (4th Cir. 2015) (citation and quotation marks omitted). The Amended Complaint fails to make that "strong showing" here.

For instance, Plaintiff asserts in his amended complaint that Hess "believed that Doe was more of a threat due to gender stereotypes, specifically because [Doe] is a large male and his accuser is a smaller." Am. Compl. ¶ 38. Here again, Plaintiff pleads no facts to support that accusation. And even accepting it as true, it fails to make the Title IX claim "plausible." For one thing, the allegation does not show that Hess wrongly *believed* Female Student 1, or Female

Students 2-5, because they were female. Indeed, Hess found Plaintiff's *male* friend credible when he revealed Plaintiff's role in saying he wanted Female Student 1 "between" the two boys. Ex. 1, 12-21-18 Tr. at 24:1–5. Plaintiff thus fails to identify any fact showing that Hess's credibility findings were skewed by gender bias.

For another, Plaintiff fails to allege how any supposed gender bias on Hess's part affected Principal *Eline*'s decision to suspend him, or Hearing Officer *Forrest*'s decision to affirm the suspension and determine that reassignment was appropriate. In other words, the allegation against Hess fails to make it plausible that Plaintiff was "*wrongfully adjudicated guilty and disciplined*, in part because of his gender." *Marymount*, 297 F. Supp. 3d at 584.

Plaintiff also tries to show that Hearing Officer Forrest was motivated by gender bias because "she referred to [Female Student 1] as the 'victim' before she heard any evidence of whether Doe had done anything that could be construed as sexual harassment." Am. Compl. ¶ 19. But Plaintiff himself acknowledges that Female Student 1 *is* a victim; she was "assaulted" by Male Student 1, who slapped her buttocks in Plaintiff's presence. Am. Compl. ¶ 8. In fact, *both* of Plaintiff's parents called Female Student 1 a "victim" at the disciplinary hearing. Ex. 1, 12-21-18 Tr. at 58:19 (mother), 62:11 (father). In any case, Forrest's use of "victim" does not show that she was *gender*-biased against Plaintiff. It speaks volumes that Plaintiff can point to nothing in the transcript of the proceeding to support his "gender bias" claim here.

Plaintiff also gets no traction from his claim that "[a]n elected member" of the School Board "has commented that male students are not treated fairly in disciplinary proceedings involving allegations of a sexual nature that are adjudicated by School Board employees." Am. Compl. ¶ 42. Even if accepted as true, that alleged statement fails to show that Eline, Hess, or Forrest treated Doe unfairly because he is a boy. In any event, the statement is inadmissible

hearsay. Fed. R. Evid. 802. What's more, the statement of a single member cannot bind the School Board because an elected board speaks only through its collective action. That is why a chairman's unilateral statement is inadmissible to bind the board, *Bd. of Zoning Appeals v. CaseLin Systems, Inc.*, 256 Va. 206, 214, 501 S.E.2d 397, 401 (1998); and why minutes of board actions are irrelevant to determining a board's intent, *W.S. Carnes, Inc. v. Bd. of Sup'rs of Chesterfield Cty*., 252 Va. 377, 385, 478 S.E.2d 295, 300-01 (1996) (affirming trial judge's ruling excluding minutes of board meeting because "evidence of the Board's intent or motive in enacting ordinances is irrelevant to our consideration whether they are valid laws"). If a Title IX claim can be based on a general statement by a lone board member that boys had been treated unfairly, then *every* male student who is ever disciplined at any school could make a federal case out of it. *Iqbal/Twombly* is not so easily circumvented.

Finally, Plaintiff cannot salvage his claim by alleging that he was disciplined more harshly as a knee-jerk reaction to prior OCR investigations and national media reports of male sexual assaults. Am. Compl. ¶ 45. Here again, no facts are pleaded to make it plausible that such events influenced Hess, Eline, Forrest or the School Board. "[I]t is not reasonable to infer that" school officials have "a practice of railroading students accused of sexual misconduct simply to appease the Department of Education and preserve its federal funding." *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 887 (N.D. Ohio 2017) (citation and quotation omitted). Without supporting facts to show that *this* school system somehow knuckled-under to such pressure in this case, the Title IX claim must be dismissed. *See George Mason Univ.*, 132 F. Supp. 2d at 733 n.27 (finding Title IX claim insufficient where plaintiff did "not allege any facts suggesting that plaintiff is being singled out as a man to make a point to the Office for Civil Rights").

**II. The First Amendment does not shield sexual harassment and the SR&R fairly warned of the conduct for which Plaintiff was disciplined (Count II).**

Count II alleges that the School Board "violated Doe's First Amendment rights by punishing him for his speech, using a harassment policy and an improper touching policy that is unconstitutionally vague and overly broad because it prohibits conduct that creates an 'offensive environment.'" Am. Compl. ¶ 46. This count must be dismissed under controlling Supreme Court and Fourth Circuit precedent: *Bethel School District No. 403 v. Fraser*, 478 U.S. 675 (1986), and *Kowalski v. Berkeley County Schools.*, 652 F.3d 565 (4th Cir. 2011).

The Supreme Court held in *Fraser* that a student was properly disciplined for giving a lewd nominating speech at a student assembly. 478 U.S. at 685. Unlike the explicit statements here that Plaintiff wanted to "f---" Female Student 1, the speech in *Fraser* involved sophomoric sexual metaphors praising a fellow student as, among other things, "firm in his pants" and "a man who takes his point and pounds it in." *Id.* at 687 (Brennan, J., concurring in the judgment). "By glorifying male sexuality, and in its verbal content, the speech was acutely insulting to teenage girl students." *Id.* at 683. The Court said that school officials have "an interest in protecting minors from exposure to vulgar and offensive spoken language." *Id.* at 684. It held that the school system "acted entirely within its permissible authority in imposing sanctions . . . in response to his offensively lewd and indecent speech." *Id.* at 685.

Furthermore, the Court rejected the student's claim that "he had no way of knowing that the delivery of the speech in question would subject him to disciplinary sanctions." *Id.* at 686. "Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Id.* And although the student manual said nothing about lewd speeches, it placed students on notice that "[c]onduct

which materially and substantially interferes with the educational process is prohibited, including the use of obscene, profane language or gestures." *Id.* at 678. That provided "adequate warning . . . that his lewd speech could subject him to sanctions." *Id*. at 686.

Similarly, the Fourth Circuit held in *Kowalski* that a student's speech rights were not violated when she was suspended for bullying a fellow student through a social media website. 652 F.3d at 575–76. Although the student manual did not prohibit off-campus cyberbullying, it said that "a student will not bully/intimidate or harass another student," and "the prohibitions [we]re designed to regulate student behavior that would *affect* the school's learning environment." *Id*. at 575. Those general warnings sufficed to put the student "on notice" that her conduct would subject her to discipline. *Id*. at 576.

Significantly, the Fourth Circuit has repeatedly recognized that *Fraser* created an "exception" to the rule in *Tinker v. Des Moines Independent School District,* 393 U.S. 503, 513–14 (1969), that school officials ordinarily may not restrict a student's speech unless it threatens substantial disruption of school activities. *See Hardwick v. Heyward*, 711 F.3d 426, 435 (4th Cir. 2013); *Newsom ex rel. Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 256 (4th Cir. 2003). "Under *Fraser,* the banned school speech need not meet *Tinker*'s disruption requirement; rather, speech in school can be banned if it is lewd, vulgar, indecent, or plainly offensive." *Newsom*, 354 F.3d at 256. *Fraser* allows school officials to "'prohibit the use of vulgar and offensive terms' as part of their role in teaching students the 'fundamental values of "habits and manners of civility" essential to a democratic society.'" *Hardwick*, 711 F.3d at 435 (quoting *Fraser*, 478 U.S. at 683).

*Fraser* and *Kowalski* thus preclude Plaintiff's claim that the First Amendment somehow shields him from being disciplined for the harassing conduct and comments at issue here. *Fraser*

shows that student speech in secondary schools is subject to greater regulation than the speech of adults in other settings. 478 U.S. at 682–83. Just as a high school student may be disciplined for wearing Cohen's "F--- the Draft" jacket to school, *id.* at 683 (discussing *Cohen v. California,* 403 U.S. 15 (1971)), Plaintiff can be disciplined for harassing his classmates by saying how much he wants to "f---" them.

As for the School Board's definition of "sexual harassment," the SR&R in this case provides even clearer notice of prohibited conduct than the student-conduct manuals upheld in *Fraser* and *Kowalski.* The SR&R defines "sexual harassment" to include "unwelcome sexual advances, . . . requests for sexual favors; and other inappropriate verbal . . . or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment." Ex. 7 at 54. The SR&R also warns students that engaging in sexual harassment will subject them to suspension and other discipline. *Id.* at 53–54. As this Court found in denying the TRO, this provision "appears to adequately place a student on notice that the type of harassing conduct found to have taken place in this case was a violation of the handbook." Ex. 7 at 7:6–8.[5]

So Plaintiff's First Amendment claim must be dismissed.

## III. Plaintiff fails to allege a due process violation (Count III).

Under Virginia law, the "process" provided by a School Board for a long-term suspension includes an initial notice-and-hearing opportunity before the principal determines whether to suspend for up to ten days, an appeal to the division superintendent (or his hearing

[5] Plaintiff's extravagant claim that such statements constitute protected "speech" would be dubious even outside of the high school setting, as it would bring into question the constitutionality of the federal government's definition of "sexual harassment" in employment cases brought under Title VII. *See* 29 C.F.R. § 1604.11(a) (2018) (defining "sexual harassment" as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when," among other things, "(3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.").

officer), an appeal to the School Board, and then judicial review by the local circuit court. *See* Va. Code Ann. §§ 22.1-87, 22.1-277.05 (2016). Plaintiff appealed the Hearing Officer's decision to the School Board on January 17, 2019. Ex. 7, 1-23-19 Tr. at 4:16. And the School Board was required to decide that appeal within 30 days. Va. Code Ann. § 22.1-277.05(A).

The amended complaint is silent about what the School Board did. (The Board affirmed the suspension and reassignment, but that fact is not in the record.) Ordinarily, such a pleading-omission would warrant a dismissal with leave to amend, because the due process claim as pleaded is "premature." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 199 (1985); *id.* at 200 (explaining that how the State handled an administrative appeal "cannot be measured until a final decision is made").[6] But since Plaintiff has already amended the complaint once, and since the underlying due process arguments fail as a matter of law, the Court should now dismiss this count with prejudice.

**A. There was no due process violation because Plaintiff had notice of the accusations against him and an opportunity to present his side.**

Plaintiff's due process claim fails at the outset because he had the minimum notice and opportunity to be heard that the Due Process Clause requires. To be sure, the Due Process Clause applies in public school settings to protect students who are subject to expulsion or suspension from public school "for more than a trivial period," *Goss v. Lopez*, 419 U.S. 565, 576 (1975), but the essence of due process "is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Id*. (quoting *Joint*

[6] *See also Collins v. Prince William Cty. Pub. Schs*., No. 03-1455-A, 2004 U.S. Dist. LEXIS 28298, *27 (E.D. Va. Apr. 21, 2004) (Hilton, J.) ("failure to pursue that appeal undermines his procedural due process claim"), *aff'd sub nom. Collins v. Prince William County Sch. Bd.*, 142 F. App'x 144, 146 (4th Cir. 2005); *Bernstein v. Menard*, 557 F. Supp. 92, 93 n.1 (E.D. Va. 1983) (finding no viable due-process claim "because adequate post-punishment State remedies existed"), *aff'd*, 728 F.2d. 252 (4th Cir. 1984).

*Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)). In the public school setting, due process requires, "[a]t the very minimum," that "students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Id.* at 579. In other words, school officials must "inform [a student] of his dereliction and . . . let him tell his side of the story in order to make sure that an injustice is not done." *Id*. at 580.

But the procedural protections required "to assure fairness" in administrative settings are not as elaborate as in judicial proceedings. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The "differences in the origin and function of *administrative* agencies 'preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of courts.'" *Id*. (quoting *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 143 (1940)) (emphasis added). "All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' to insure that they are given a meaningful opportunity to present their case." *Id*. at 349 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 268–69 (1970)).

As this Court previously ruled, the "issue here is not whether the process used by the school system is the best or most effective system for ferreting out the truth of allegations." Ex. 7, 1-23-19 Tr. at 8:5–8. It is whether the process met the minimum requirement that "the student be given oral or written notice of the charges against him, and if he denies them an explanation of the evidence against him and an opportunity to present his side of the story." *Id*., 9:16–19.

Plaintiff's due process claim fails that test. Plaintiff was *twice* given notice of the accusations and an opportunity to be heard: (1) on December 10, before he was initially suspended by Principal Eline, *supra* at 5–6; and (2) at the December 21 disciplinary hearing,

*supra* at 8-10. So this Court was right when it found that Plaintiff's due process claim would likely fail because the basic requirements were satisfied:

> Here the plaintiff was on notice of the claims against him and the specific actions he was alleged to have committed. He was provided the statements made by witnesses. He was aware of the identity of some, but not all of the witnesses against him. Although he was given all the witnesses' statements that were received even from those whose identities he may not have known. He was given the opportunity on two occasions to present his side of the controversy and to date the allegations against him have been reviewed on two separate occasions and an appeal is pending before the school board.

Ex. 7, 1-23-19 Tr. at 10:4–14.

### B. Plaintiff's allegations against Hearing Officer Forrest cannot support municipal liability against the School Board.

Part of Plaintiff's due process claim is based on alleged transgressions by Hearing Officer Forrest. Plaintiff argues that Forrest "discounted Doe's statements without any evidence, failed to ask questions about the credibility of a witness who had admitted to lying in the investigation, and engaged in an ex parte conference with Hess and Eline in a recess during the hearing." Am. Compl. at 11 (¶ 52). None of those claims, even if true, would show a due process violation. But those allegations fail for a more fundamental reason: Plaintiff alleges no unconstitutional conduct by the *School Board* itself, and § 1983 does not permit vicarious liability to be imposed on municipalities for the actions of their subordinates. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Recovery against a municipality is permitted under § 1983 only for "acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). So "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). In

this situation, liability can be imposed on the municipality only "[i]f the authorized policymakers approve a subordinate's decision and the [unconstitutional] basis for it." *Id*. *See Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523–24 (4th Cir. 2000) (holding that school board could not be liable for decisions by superintendent and principal to retain athletic coach who secretly videotaped female athletes in locker room).

The *Pembaur/Praprotnik* rule thus bars any due process claim against the School Board based on the allegedly unconstitutional actions of Hearing Officer Forrest, absent facts showing that the School Board adopted *both* her decision and the allegedly unconstitutional basis for it. Because the amended complaint alleges no such facts, it is fatally deficient.

### C. High school students have no constitutional right in suspension proceedings to cross-examine witnesses or force the disclosure of witness names.

Plaintiff is also wrong that he was denied due process because he could not cross-examine his accuser or the witnesses in the disciplinary proceeding and did not know the identities of all of the corroborating witnesses. Compl. at 13 (¶ 53(c)-(e)). As *Mathews* teaches, such trial-like procedures are not required in administrative settings. 424 U.S. at 348. In fact, the Fourth Circuit has never recognized a cross-examination right in academic settings, even at the university level. In *Henson v. Honor Committee of the University of Virginia*, 719 F.2d 69 (4th Cir. 1983), the Fourth Circuit adopted the Fifth Circuit's *Dixon* decision as an "accurate" "summary of minimum due process requirements for disciplinary hearings in [a college] academic setting." *Id*. at 74 (discussing *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir. 1961)). *Dixon* made clear that "the right to cross-examine witnesses" was *not* constitutionally required. 294 F.2d at 159.

*Henson* is still good precedent. For instance, the Fourth Circuit held in *Butler* that there is no constitutional right in a university disciplinary setting to a "trial-like proceeding, with the

attendant right to call and cross-examine witnesses." *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005). The Court said "we find no basis in the law . . . for importing such a requirement into the academic context." *Id*. And district courts in this circuit have followed *Henson* and *Butler* in dismissing claims in the academic setting, at both the college and high-school level, that were premised on an alleged right to cross-examine. *See Doe v. Loh*, No. CV PX-16-3314, 2018 WL 1535495, at *7 (D. Md. Mar. 29, 2018) ("It is well settled that the accused is not entitled to 'trial-like' rights of confrontation or cross-examination at disciplinary proceedings."), *appeal docketed* No. 18-497 (4th Cir. May 3, 2018); *R.M.B. v. Bedford Cty. Sch. Bd.*, 169 F. Supp. 3d 647, 656 n.5 (W.D. Va. 2016) (following *Butler*). As Judge Smith put it, "[t]he general consensus among courts . . . is that there is no due process right to cross-examine witnesses or to examine the actual statements made by witnesses" in student-disciplinary proceedings. *J.S. ex rel. Duck v. Isle of Wight Cty. Sch. Bd.*, 362 F. Supp. 2d 675, 683 (E.D. Va. 2005) (collecting cases).

Plaintiff misplaces his reliance on recent Sixth Circuit cases holding that, in certain circumstances at the *university* level, due process may require the ability to cross-examine the accuser. *Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 403 (6th Cir. 2017). For even the Sixth Circuit has explicitly rejected that requirement *at the high school level*. *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 924–26 (6th Cir. 1988). The court in *Newsome* explained that cross-examination was less important in high-school disciplinary cases because school administrators generally have "particularized knowledge of the student's trustworthiness" and access to their records, as well as the ability to "readily discover whether the student witness and the accused have had an amicable relationship in the past." *Id*. at 924.

The *Newsome* court was particularly concerned that recognizing a constitutional right to confront and cross-examine witnesses and to force the disclosure of witness names would deter high-school students from coming forward:

> [I]t is critically important that we protect the anonymity of students who "blow the whistle" on their classmates who engage in drug trafficking and other serious offenses. Without the cloak of anonymity, students who witness criminal activity on school property will be much less likely to notify school authorities, and those who do will be faced with ostracism at best and perhaps physical reprisals.

*Id*. at 925. The Sixth Circuit concluded that "the necessity of protecting student witnesses from ostracism and reprisal outweighs the value to the truth-determining process of allowing the accused student to cross-examine his accusers." *Id*. So it held "that the burden of cross-examination on the administration of school discipline outweighs the benefits to be derived from that procedure." *Id*.

In fact, *no* federal circuit has found a due-process right to cross-examine witnesses in high-school disciplinary proceedings. That theory has been affirmatively rejected not only by the Sixth Circuit, but by the Seventh and Tenth Circuits as well. *See Coronado v. Valleyview Pub. Sch. Dist.*, 537 F.3d 791, 796 (7th Cir. 2008) (following *Newsome*); *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242–43 (10th Cir. 2001) (finding no "right to cross-examine witnesses" in secondary-school setting). This Court was correct when it found that the Fourth Circuit has never recognized the right claimed here, that other circuits have not recognized any such right within a secondary school, and that Plaintiff has failed to cite any case to support his argument. Ex. 7, 1-23-19 Tr. at 10:15–11:8.

**D. Student disciplinary proceedings require no presumption of innocence or standard of proof.**

Plaintiff has also failed to allege a due process violation on the theory that the SR&R has

no "presumption of innocence" or "standard of proof." Am. Compl. at 12-13 (¶ 53(a)–(b)). For starters, Plaintiff pleads no facts suggesting that he was *presumed* guilty, let alone that the absence of an explicit standard of proof made any difference in the outcome. "[I]n truth, . . . very few cases will be in evidentiary equipoise," so allocating the burden of proof often makes no difference. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 58 (2005). And in any event, Plaintiff has cited no case law to show that students cannot be disciplined if the school's procedures do not include an explicit presumption of innocence or standard of proof. As this Court observed when denying Plaintiff's application for a TRO, "there is certainly no binding authority or really any case the plaintiff can point to that supports his claim that he was entitled to the other procedural safeguards that he has referenced." Ex. 7, 1-23-19 Tr. at 11:5-8.

Indeed, the on-point authority goes the other way. For instance, the Supreme Court held in *Lavine v. Milne*, 424 U.S. 577 (1976), that the Due Process Clause does not require that the Government bear the burden of proving that welfare benefits should be denied to recipients. *Id*. at 585. The Court acknowledged that assigning the burden of proof to one side could be "dispositive to the litigation or application." *Id*. But that did not matter. For "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally *not an issue of federal constitutional moment*." *Id*. (emphasis added). Criminal cases addressing such procedural safeguards are simply "not helpful" in administrative and civil settings like this one. *Id*. at 585 n.10. *Lavine* has been followed in various contexts, including academic settings. *See Schaffer*, 546 U.S. at 58 (applying *Lavine* to reject parents' claim that "due process" under the IDEA required the school system to bear the burden of proving the adequacy of a student's individualized educational program); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 604 (S.D. Ohio 2016) (holding that due process in a university disciplinary setting

did not require a presumption of innocence or assigning the burden of proof to the accuser); *Terrebonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050, 1058 n.6 (E.D. Cal. 1998) ("The . . . presumption of innocence is a creature of criminal proceeding; and hence, does not apply in a lawyer disbarment proceeding.").

**IV. Plaintiff fails to allege an Equal Protection violation (Count IV).**

Plaintiff's equal-protection claim suffers many of the same fatal flaws described above. Plaintiff alleges generically that "Board employees investigated and punished Doe for sexual harassment" when similarly-situated female students were "not investigated or punished." Am. Compl. at 14 (¶ 57). Because no specific facts are offered to support that conclusory assertion, it fails under *Iqbal/Twombly*. And *Praprotnik* also bars imposing liability on the School Board for the alleged actions of subordinate "Board employees" without showing that the Board ratified the subordinate's action and the unconstitutional basis for it.

**CONCLUSION**

Failing to exercise proper gatekeeping functions under *Iqbal/Twombly* would mean that all students or parents unhappy with the discipline imposed on their children could file a federal lawsuit against a school board on the flimsiest allegation that it treats boys and girls differently or that the decision-maker acted out of gender bias. The Supreme Court has made clear that the pleading rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

The motion to dismiss should be granted and the case dismissed with prejudice.

Respectfully submitted,

FAIRFAX COUNTY SCHOOL BOARD

By: /s/
Stuart A. Raphael (VSB No. 30380)

Sona Rewari (VSB No. 47327)
2200 Pennsylvania Avenue, NW
Washington DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
sraphael@HuntonAK.com
srewari@HuntonAK.com

*Counsel for Defendant Fairfax County School Board*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

By: /s/
Stuart A. Raphael (VSB No. 30380)