IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| JOHN DOE,<br><br>  Plaintiff,<br><br>v.<br><br>FAIRFAX COUNTY SCHOOL BOARD,<br><br>  Defendant. | Civil Action No. 1:19-cv-00065 |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiff seeks to amend his Complaint and submits this memorandum in support of that motion. Attached hereto is a copy of his proposed Second Amended Complaint (Exhibit A; hereinafter, "Exh. A"). Defendants have moved to dismiss Plaintiff's Complaint and Plaintiff opposed that motion. The hearing date for that motion was March 22, 2019. No order from the Court has been made relating to that motion. Since briefing and argument on that motion, Doe has learned many new and important facts. Accordingly, Plaintiff seeks leave to amend.

**LEGAL ARGUMENT**

Rule 15(a)(2) provides that leave to amend a pleading should be "freely give[n]…when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court mandates a liberal reading of the rule's direction for

1

"free" allowance: motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive…repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Fourth Circuit essentially recognizes three reasons to deny leave to amend: prejudice to nonmovant, bad faith by movant, or futility. *See e.g., Int'l. Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 420 (4th Cir. 2000) citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 (4th Cir. 1999). The Fourth Circuit also holds that a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay absent any resulting prejudice or evidence of dilatoriness is not a sufficient justification for denial. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

Here, Plaintiff has amended one time as a matter of course as provided by Rule 15(a). Fed. R. Civ. P. 15(a). Defendants have moved to dismiss Plaintiff's Amended Complaint. The Court has not yet ruled on that motion. The Second Amended Complaint addresses the issues in Defendants' motion to dismiss and adds issues that were discovered after the Amended Complaint was filed.

There will be no prejudice to Defendant. If this motion is granted, Defendants will certainly renew their motion to dismiss. The Court can then resolve that motion on its merits. This assures that there will be no

prejudice to Defendant. Further, discovery is ongoing and the amendment will not delay adjudication. Under these circumstances, Plaintiff should be allowed to amend his Complaint and have his claims heard on the merits pursuant to the terms of the Second Amended Complaint.

Plaintiff has not acted in bad faith. Plaintiff only recently discovered many of the newly alleged facts in the proposed Second Amended Complaint. He amends now to further support his plausibility arguments. Other newly pled and previously known facts have become relevant and important because of the newly learned information.

The amendments are not futile. Indeed, Plaintiff adds the following facts to further support his Title IX and Equal Protection claims (this list is not exhaustive of the changes made):

- It was discovered during the investigation into Doe and Male Student 1 that Female Student 1 sent Male Student 1 salacious messages by phone and otherwise. Her messages requested sexual favors and described Female Student 1's sexual ability and her capacity to sexually please Male Student 1 quickly. Female Student 1 admitted sending such a message. Nevertheless, Hess decided not to punish Female Student 1 or even investigate Female Student 1 for sending the message, even though her actions violated the school's sexual harassment policy. If Female Student 1 were a male, she would have been investigated and punished for that behavior, as can

3

be seen by the unsubstantiated accusation that Doe sent a similar message to Female Student 1 [Exh. A, ¶ 25];

- The Board's training materials, which were provided to Hess and others, focus on administrators being conscientious of OCR and potential OCR and legal liabilities should they fail to investigate. The training materials state that the Board is under significant scrutiny due to increased media coverage of Title IX issues, the #METOO movement, state and federal lawsuits, and the impact of social media [Exh. A, ¶ 47];

- Board material also evidence that the Board knows that there is a significant negative academic impact on suspended or expelled students and that data shows significant disproportionality affecting male students [Exh. A, ¶ 48];

- Statistical evidence also shows that since November 2010 approximately forty-eight male students were accused of sexual misconduct and all but two of those students have subsequently been found to have violated school rules and been punished. During that same period, only two female students were accused of misconduct. In one instance, the accuser was female; in the other, the accuser was a faculty member [Exh. A, ¶ 49];

- The Board is aware of gender disparities in its schools and in particular in its punishment of male students. Here, the Board was

aware that Female Student 1 was not investigated or sanctioned for her own sexual harassment of Male Student 1 for substantially similar conduct as what John Doe was accused [Exh. A, ¶ 50];

- Each of the actions and decisions by Hess were delegated to him by the Board [Exh. A, ¶ 9];

- [Hess] sought out two independent student witnesses on his own but, when those witnesses failed to inculpate Doe, failed to include their statements in his report [Exh. A, ¶ 10];

- [Hess] failed to interview students who were regularly near Doe and Female Student 1 during school hours, such as during lunchtime, who would have explained that Doe was not harassing Female Student 1, but rather the two were mutually and consensually flirtatious [Exh. A, ¶ 10];

- Four female students, who were friends of Female Student 1, colluded with each other and with Female Student 1 to harm Doe and see him removed from school. Several voluntarily sought out Hess to provide inaccurate statements [Exh. A, ¶ 11];

- Hess made up his mind that Doe had engaged in the conduct of which he had been accused before interviewing Doe and hearing his side of the story. This is evidenced by Hess stating that the only thing that would have changed his mind about suspending Doe was if Doe admitted to the accusations – in other words, the only way

5

- for Doe to avoid punishment would have been for him to admit to false and unsubstantiated accusations [Exh. A, ¶ 20];
- Hess also failed to contact and to work with the Title IX coordinator regarding this investigation despite it being required by the Board's policy that he do so [Exh. A, ¶ 22];
- Hess also failed to include [in the Detailed Incident Report] that he spoke with Female Student 3 twice. The first time she does not include any allegations related to Doe. The next day, her statement does include allegations against Doe. Despite this inconsistency, collusion was never investigated [Exh. A, ¶ 24];
- Knowing this, Hess failed to investigate this information as it relates to Doe. Indeed, Hess never asked Doe if Female Student 1 sent him any sexual messages [Exh. A, ¶ 26];
- Each of the actions and decisions by Eline were delegated to him by the Board [Exh. A, ¶ 28];
- Each of the actions and decisions by Forrest were delegated to her by the Board [Exh. A, ¶ 31];
- Per the Board's policy and practices, hearing officers rely on investigators (assistant principals) to conduct investigations. The hearing officers have no ability gather facts on their own or assess the complainant's or witnesses' credibility. Forrest relied completely on Hess's account of the facts as well as his credibility determination

6

in rendering her decision. The Board did the same. If the investigation is flawed, it will have a domino effect on both the hearing and appeal process. Here, Hess's flawed investigation caused both the hearing and the appeal to have an erroneous outcome [Exh. A, ¶ 40];

- Per the Board's own policies and practices, Eline, Forrest and the Board gave undue discretion and deference to Hess, which had detrimental effects on John Doe due to Hess's supremely flawed investigation and biases [Exh. A, ¶ 46]; and

- Each of the actions and decisions by Hess, Eline, and Forrest were ratified by the Board in its decision to uphold the decisions in the appeal [Exh. A, ¶ 51].

Many of the above facts also support Doe's due process claim. In addition to those facts, Doe also pleads (this list is not exhaustive of the changes made):

- Hess said during his only meeting with Doe that he can be seen laughing in the surveillance video. He included this in at least one disciplinary report. At the hearing, however, Hess admitted that Doe's back is facing the camera and therefore it is unclear whether he is laughing. This is evidence of his bias [Exh. A, 21];

- Doe appealed the outcome. His appeal was denied by the Board in a closed door meeting. The appeal process violated his due process

7

rights by failing to give him a meaningful opportunity to be heard [Exh. A, 45]; and

- Hess demonstrated his bias by not believing Doe and deciding to suspend him before he interviewed him in the investigation. He believed the female students based on their testimony alone without any documentary evidence, despite credibility issues with the witnesses. He did not give Doe a meaningful opportunity to respond and stated that the only way he would have believed him and not punished him was if he admitted to the allegations [Exh. A, 81].

Doe is also seeking to add a count pursuant to the Declaratory Judgment Act. 22 U.S.C. § 2201. That count does not add any substantive factual allegations; it simply adds an alternative vehicle for relief.

These additional facts and the inferences which can be plausibly drawn from the facts support Doe's allegations of constitutional and Title IX claims. There is no prejudice to Defendant; Doe did not act in bad faith; and the proposed Second Amended Complaint is not futile. For the foregoing reasons, Plaintiff requests that the Court grant leave for Plaintiff to file his Amended Complaint.

Dated: May 13, 2019

JOHN DOE
By Counsel

HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
(703) 888-1943
(703) 888-1930 (facsimile)

8

By: /s/ Jesse R. Binnall
Jesse R. Binnall
Lindsay R. McKasson
jbinnall@harveybinnall.com
lmckasson@harbeybinnall.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of May, 2019, I filed the foregoing using the Court's CM/ECF system, which will provide notice of the foregoing to all counsel of record. There are no *pro se* parties.

/s/ Jesse R. Binnall
Jesse R. Binnall
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
(703) 888-1943
(703) 888-1930 (facsimile)
jbinnall@harveybinnall.com

*Counsel for Plaintiff*