IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:19-cv-00065 (AJT/MSN) |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| Defendant. | ) | |

## **ANSWER TO SECOND AMENDED COMPLAINT**

Defendant Fairfax County School Board (the "School Board"), by counsel, answers the

allegations in the Second Amended Complaint as follows, without waiving its motion to dismiss

for failure to state a claim:

## **The Parties and Jurisdiction**

1.      Plaintiff John Doe ("Doe") was a student at Robinson Secondary School
("Robinson"), located in Fairfax County, Virginia. He is 18 years old.

Admitted.

2.      Defendant Fairfax County School Board (the "Board") is vested with the
authority to supervise the public schools of Fairfax County, Virginia.

Admitted.

3.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because
Plaintiff's claims arise under federal law – the United States Constitution, 28 U.S.C. § 1983 and
Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88.

Admitted.

## **The Facts**

4.      Doe is a high school senior. Until January 10, 2019, he was studying at
Robinson Secondary School. He has a 3.2 grade point average and was active on his school's

1

wrestling team. Through his academic and wrestling achievements, he was awarded admission and a scholarship at a prestigious university; he is currently set to matriculate in the autumn of 2019.

The first sentence is denied; as of the date of this Answer, Doe is scheduled to graduate on June 11, 2019 from Fairfax County Public Schools and will no longer be a high-school senior. In response to the second sentence, the School Board admits that Doe was enrolled at Robinson Secondary School for the 2018-19 academic year; on January 10, 2019, he was reassigned to Mountain View High School.  The time period referenced for his alleged GPA is unclear, so the School Board does not have sufficient information to admit or deny that allegation.  The third sentence is denied; while Doe had achievements as a wrestler in high-school, it appears that he obtained admission to his college based on material misrepresentations and omissions in his application about his prior disciplinary record, leading the college to revoke his acceptance.

5.     During the current 2018 to 2019 school year, Doe befriended a female student ("Female Student 1"), who was new to Robinson.

The School Board lacks information sufficient to form a belief about the truth of the claim that Doe "befriended" Female Student 1 but admits that she was new to Robinson that year.

6.     Doe and Female Student 1 had classes together and would see each other at school outside of class.  Doe flirted with Female Student 1, which included friendly conversations, putting his arm around her and playfully poking her in class. Female Student 1 neither rejected nor objected to these overtures. In fact, she would often seek out Doe's company and return his flirtations. For instance, when he would put his hand over her shoulder, she would affectionately lean into him. She also sent him a Snapchat in her bra and underwear.

The School Board admits that Doe and Female Student 1 had classes together and that Doe had contact with her at school both inside and outside of class.  The School Board lacks information sufficient to form a belief about the truth of the remaining allegations.

2

7.     On December 6, 2018, another male student ("Male Student 1") slapped Female Student 1 on her buttocks. Doe was present when this occurred, but video surveillance of the incident conclusively shows that Doe did not take any part in the slapping of Female Student 1. In fact, Doe was putting a backpack on Male Student 1 (who was recovering from an injury) when Male Student 1 slapped Female Student 1.

The first sentence is admitted.  In response to the second and third sentences, the School

Board admits that the video tape shows Male Student 1 slapping the buttocks of Female Student

1 after Doe assists Male Student 1 with his backpack.  The School Board lacks information

sufficient to form a belief about the truth of the statement that Doe was putting a backpack on

Male Student 1 on account of his recovering from an injury.  Any remaining allegations are

denied.

8.     After being assaulted by Male Student 1, Female Student 1 submitted a written statement to a school administrator, accusing Doe and Male Student 1 of sexual harassment. Female Student 1's allegations against Doe are false. An investigation that turned out to be seriously flawed was initiated by Travis Hess ("Hess"), an assistant principal at Robinson.

The first sentence is admitted.  The second sentence is denied.  In response to the third

sentence, the School Board admits that Hess, an assistant principal at Robinson, performed the

investigation but denies that the investigation was "seriously flawed."

9.    Each of the actions and decisions by Hess were delegated to him by the Board.

Denied, except that the School Board admits that, at the time of Doe's suspension, Hess

was acting within the scope of his authority as an Assistant Principal at Robinson.

10.    When Hess confronted Doe with the allegations, Doe denied harassing Female Student 1.  In his investigation of this matter, Hess [a] failed to conduct a complete investigation, [b] failed to ask witnesses whether they were coordinating their stories, [c] failed to ask Doe whether he had any witnesses who corroborated his account of the facts, [d] made up his mind to believe Female Student 1 over Doe before interviewing Doe, [e] sought out two independent student witnesses on his own but, when those witnesses failed to inculpate Doe, failed to include their statements in his report, [f] failed to interview students who were regularly near Doe and Female Student 1 during school hours, such as during lunchtime, who would have explained that Doe was not harassing Female Student 1, but rather the two were mutually and

consensually flirtatious, and [g] refused to conduct any investigation to determine whether Doe's denials were credible. Ultimately, Hess denied Doe any meaningful opportunity to respond to the allegations against him.

The first sentence is admitted.  As for the second sentence, the School Board denies subparts a, c, d, e, f, and g.  As to subpart b, although Hess did not ask the witnesses specifically if they were "coordinating their stories," his separate interviews and assessment of their demeanors satisfied him that they credibly corroborated Female Student 1's allegations.

11.     Four female students, who were friends of Female Student 1, colluded with each other and with Female Student 1 to harm Doe and see him removed from school. Several voluntarily sought out Hess to provide inaccurate statements.

Denied.

12.     Hess interviewed one of the female witnesses on December 7, 2018. During that interview, the female witness (Female Student 5) provided Hess with exculpatory evidence about Doe. Hess did not ask this witness to write a statement nor did he report the exculpatory information when he prepared his written Detailed Incident Report, as described below. Female Student 5 later changed her story and told Hess that she initially lied about the exculpatory evidence and proceeded to give false inculpatory testimony against Doe. Hess then invited her to write a written statement. Hess did not properly investigate why this student changed her story or whether other students or individuals pressured her to do so. He did not even ask her if anyone else had discussed with her whether she should change her statement. Hess was purposefully seeking evidence that was inculpatory and ignored exculpatory evidence.

In response to paragraph 12, the School Board admits that Female Student 5 initially told Hess on or about December 7, 2018 that she had not observed Doe say anything sexually inappropriate; that Hess did not include that report in his Detailed Incident Report submitted on December 10, 2018; that Female Student 5 subsequently returned to Hess on December 12, 2018 to report that she had previously been untruthful because she was friends with Doe and did not want him to get in trouble; and that she voluntarily gave a written statement describing Doe's harassing conduct towards Female Student 1.  Hess did not specifically ask Female Student 5 if anyone had coerced or pressured her to change her story because her account, demeanor, and contrition on December 12 were credible.  The remaining allegations are denied.

4

13.     Additionally, another female witness, Female Student 3, contradicted the inculpatory statement she made to Hess in text messages sent to another student, which exculpated Doe. This female witness is a student assistant in Hess's office. She told others that she wanted Doe kicked out of school.

The School Board lacks information sufficient to form a belief about the truth of the first and third sentences.  In response to the second sentence, the School Board admits that Female Student 3 had performed tasks as a student assistant in the Assistant Principal's office but denies the implication that it conferred any power or influence.

14.     All but one of the female student witnesses were not requested to participate in the investigation by Hess; rather, they voluntarily showed up in Hess's office to provide witness statements. Despite this curious behavior, Hess did not investigate whether the students coordinated their stories with each other or others against Doe, even though Doe accused them of such collusion.

The first sentence is denied.  As for the second sentence, the School Board admits that Hess did not ask the witnesses specifically if they had "coordinated their stories," but his separate interviews of them and his credibility assessments satisfied him that they credibly corroborated Female Student 1's allegations.  Any remaining allegations are denied.

15.     Hess also interviewed John Doe's English teacher and another male witness. Both stated that they had never seen John Doe sexually harass Female Student 1. Hess chose not to include this exculpatory evidence in his Detailed Incident Report.

In response to the first and second sentences, the School Board admits that Hess spoke to one of Doe's English teachers, and that she had not personally observed Doe engage in inappropriate conduct towards Female Student 1, although she had observed Doe being very forward with other female classmates.  Doe's other English teacher submitted a Student Progress Report on December 11, 2018, in which she stated that Doe needed a lot of redirection regarding his interactions with other students, specifically a female student.  Hess also interviewed a male student who said that, although he had not personally observed Doe say anything inappropriate

5

to Female Student 1, it would not surprise him because of Doe's general attitude.  In response to

the third sentence, the School Board denies that those reports were "exculpatory" of Doe but

admits that Hess did not include them in his Detailed Incident Report.

16.     The parties to the dispute disagreed as to the material facts, making the
credibility of the various witnesses essential to resolving the dispute of whether Doe sexually
harassed or inappropriately touched Female Student 1.

In response to paragraph 16, the School Board admits that Doe disagreed with all of the

other witnesses—Female Students 1-5 and Male Student 1—about whether Doe had sexually

harassed Female Student 1.  Hess assessed all of those witnesses' credibility, finding those

witnesses credible and Doe not credible.  Those credibility assessments were central to his

conclusion that Doe should be suspended.  Any remaining allegations are denied.

17.     Hess believed that Doe was more of a threat due to gender stereotypes,
specifically because he is a large male and his accuser is a smaller female as is confirmed in his
declaration to the Court.

Denied.

18.     Hess decided not to believe Doe before even questioning him. As such, he
decided to suspend Doe during his first and only interview with Doe during the investigation.
The interview did not last long and at its conclusion, Hess told Doe that he was suspended and told
his mom to come pick him up from school.

Denied, except that the School Board admits that Hess determined at the conclusion of

his interviewing Doe on December 10, 2018 that he was recommending Doe for suspension by

the principal, and that Doe's mother should arrange to pick him up from school.

19.     While still in shock over the sexual harassment allegations, Hess briefly
questioned Doe and then suspended him on the spot. Hess has admitted that the only way he would
have believed Doe was if Doe admitted the allegations against him.

Denied, except that the School Board admits that Hess determined at the conclusion of

his interviewing Doe on December 10, 2018 that he was recommending Doe for suspension by

the principal.

20.     Hess made up his mind that Doe had engaged in the conduct of which he had been accused before interviewing Doe and hearing his side of the story. This is evidenced by Hess stating that the only thing that would have changed his mind about suspending Doe was if Doe admitted to the accusations – in other words, the only way for Doe to avoid punishment would have been for him to admit to false and unsubstantiated accusations.

Denied.

21.     Hess said during his only meeting with Doe that he can be seen laughing in the surveillance video. He included this in at least one disciplinary report. At the hearing, however, Hess admitted that Doe's back is facing the camera and therefore it is unclear whether he is laughing. This is evidence of his bias.

The School Board admits that Hess believed that Doe was laughing following the

slapping incident.  While the video of the incident has no sound, Hess reasonably inferred from

the conduct of Doe and Male Student 1, and from Hess's witness interviews, that the two were

laughing after the slapping incident.  The remaining allegations are denied.

22.     Hess also failed to contact and to work with the Title IX coordinator regarding this investigation despite it being required by the Board's policy that he do so.

Denied as phrased.  The School Board admits that Hess did not contact the system-wide

Title IX coordinator; but Principal Eline and his delegated assistant—here the Assistant

Principal—were tasked with investigating such student-on-student harassment.

23.     In addition to his suspension, Doe was further penalized by being referred to the Board's hearing office for an adjudication of the complaint against him. In doing so, Hess drafted a Detailed Incident Report on or about December 10, 2019. That report summarized his investigation, but only included the inculpatory evidence that was collected against Doe. Hess purposefully failed to include exculpatory evidence that he learned during the investigation, including that one of the female witnesses denied seeing Doe sexually harassing or acting inappropriate with Female Student 1, and failed to mention that he chose not to interview witnesses that would have provided exculpatory evidence.

In response to the first sentence, the School Board admits that Principal Eline referred

Doe's case to the Division Superintendent for review by the Division Superintendent's hearing

officer but denies that doing so "further penalized" Doe.  The second sentence is admitted.  In

response to the third sentence, the School Board admits that the Detailed Incident Report

summarized Hess's investigation but denies Doe's characterization of what constitutes

exculpatory evidence and denies that Hess intended to exclude exculpatory evidence.  The fourth

sentence is denied.

24.     Hess also failed to include that he spoke with Female Student 3 twice. The first time
she does not include any allegations related to Doe. The next day, her statement does include
allegations against Doe. Despite this inconsistency, collusion was never investigated.

Denied.  Both written statements by Female Student 3 were included in the disciplinary

packet compiled by Hess, and they were not inconsistent.

25.     It was discovered during the investigation into Doe and Male Student 1 that
Female Student 1 sent Male Student 1 salacious messages by phone and otherwise. Her
messages requested sexual favors and described Female Student 1's sexual ability and her
capacity to sexually please Male Student 1 quickly. Female Student 1 admitted sending such a
message. Nevertheless, Hess decided not to punish Female Student 1 or even investigate Female
Student 1 for sending the message, even though her actions violated the school's sexual
harassment policy.  If Female Student 1 were a male, she would have been investigated and
punished for that behavior, as can be seen by the unsubstantiated accusation that Doe sent a
similar message to Female Student 1.

The first three sentences are denied.  With regard to the fourth sentence, the School

Board states that no one complained about any alleged sexually suggestive conduct attributed to

Female Student 1, nor was it apparent whether any such conduct occurred at school; accordingly,

Hess had no reason to investigate or discipline Female Student 1 for that alleged misconduct.

The fifth sentence is denied.

26.     Knowing this, Hess failed to investigate this information as it relates to Doe's
relationship with Female Student 1. Indeed, Hess never asked Doe if Female Student 1 sent him
any sexual messages.

Denied as phrased.  No one mentioned or complained to Hess about any sexually

suggestive conduct by Female Student 1 at the time such conduct supposedly occurred, nor was

it apparent whether any such conduct occurred at school; accordingly, Hess had no reason to

investigate Female Student 1 for that alleged conduct.  The School Board admits that Hess did

not specifically ask Doe on December 10, 2018, whether Doe had received any sexually

suggestive messages from Female Student 1, but nothing prevented Doe from so informing Hess

if that allegation were true.

27.     Robinson Principal Matthew Eline ("Eline") drafted a letter informing Doe's
parents (at the time, Doe was still a minor) of the suspension and providing notice of the charges
(but not the specific allegations) against Doe. The letter was dated December 10, 2018, but not
mailed until December 18, 2018, as shown by the postmark. It was not received until December
20, 2018, the day before the scheduled hearing.

In response to the first sentence, the School Board admits that Eline sent Doe's parents a

letter dated December 10, 2018, that Eline believes that the letter was placed in the mailbox on

that date, that Doe was then still a minor, and that the letter informed them, among other things,

that Doe was "suspended from school for ten school day(s) and referred to the Division

Superintendent, who will determine whether it is appropriate to impose additional disciplinary

consequences, which could include one or more of the following: a long-term suspension, a

reassignment, or a recommendation to the School Board for expulsion.  This action was

necessary because [Doe] sexually harassed a student which is in violation of Fairfax County

Public Schools (FCPS) Regulation 2601 P, Student Rights and Responsibilities, and in

accordance with § 22.1-277 of the Code of Virginia."  Even before that letter was sent, Doe and

his parents knew that the charges were based on Doe's sexually harassing Female Student 1, and

verbal notice was also provided of the suspension.  Regarding the remaining allegations, the

School Board lacks information sufficient to form a belief about the date that the mailed letter

was postmarked.  In any case, Doe's parents were provided an electronic copy of the letter on

December 11 and a paper copy of the letter on December 13, 2018.  Any remaining allegations

are denied.

28.     Each of the actions and decisions by Eline were delegated to him by the Board.

Denied, except that the School Board admits that, at the time of Doe's suspension, Eline

was acting within the scope of his authority as the Principal of Robinson.

29.     The hearing commenced on December 21, 2018 at 10:00 a.m. and, as a result, the
notice provided Doe with an inadequate opportunity to prepare for the hearing (just a single day
after they received the notice).

The School Board admits that the hearing occurred on December 21, 2018, at 10 a.m. but

denies the remaining allegations.

30.     The hearing was conducted by Lisa Forrest ("Forrest"), a hearing officer for the
division superintendent. Forrest was biased against Doe from the beginning. For instance, she
referred to Female Student 1 as the "victim" before she heard any evidence of whether Doe
had done anything that could be construed as sexual harassment.

The School Board admits the first sentence but denies the second.  As for the third

sentence, the School Board admits that Forrest referred to Female Student 1 as a "victim," as did

Doe's parents.  The remaining allegations are denied.

31.     Each of the actions and decisions by Forrest were delegated to her by the
Board.

Denied, except that the School Board admits that, at the time of Doe's suspension,

Forrest was acting within the scope of her authority as a hearing officer for the Division

Superintendent.

32.     Forrest found the witnesses against Doe to be credible without hearing their
testimony. Indeed, none of the witnesses against Doe even attended the hearing. Instead,
Forrest decided the credibility of all witnesses, including Doe, based only on the testimony of
Eline and Hess.

Denied as phrased.  The School Board admits that Female Students 1-5 and Male

Student 1 did not attend Doe's disciplinary hearing on December 21, 2018, and that Forrest

considered and relied on, among other things: (1) Hess and Eline's verbal statements at the

hearing; (2) Hess's assessments with regard to the credibility of the witnesses, whose written

10

statements were also included in the materials considered; (3) the written statement of Male

Student 1, who admitted his own misconduct in slapping Female Student 1's buttocks and who

attributed to Doe specific verbal sexual harassment of Female Student 1; (4) her finding that Doe

lacked credibility based on his own statements at the hearing; and (5) all of the other evidence

presented at the hearing.  The remaining allegations are denied.

33.     At the hearing, neither Doe nor anyone on his behalf was able to question his
accusers or the witnesses against him as they were not allowed to be present per the Board's
policy.

The School Board admits that Female Students 1-5 and Male Student 1 did not attend

Doe's administrative hearing on December 21, 2018, and that it is customary in such hearings

that the accuser and the witnesses are not present to be cross-examined by the accused or his

representatives.  Doe and his parents never asked to question Eline or Hess and never expressed

a desire to do so.  Based on their comments, however, Forrest asked follow-up questions of Hess,

thereby enabling Doe and his parents to explore and test his account.  The remaining allegations

are denied.

34.     Hess gave a second-hand account of the statements of the witnesses against
Doe. He represented that these witnesses were credible, even though at least one witness had
admitted to lying during the investigation.

Denied as phrased.  Hess himself interviewed Doe, Female Students 1-5, and Male

Student 1; so Hess's testimony was not a "second-hand account."  Those student witnesses'

written statements were also included in the disciplinary packet and were provided to Doe's

father on December 13.  The School Board admits that Hess found the witnesses' statements

credible.  The change in story by Female Student 5 did not help Doe's position but only further

incriminated him.

11

35.     Moreover, when Hess testified that a female student came to him and claimed to have lied, Forrest never questioned why Hess found her credible or whether Hess had investigated whether others had pressured the witness to change her testimony, even though Forrest knew that Doe claimed that the female students had colluded with each other to get Doe kicked out of school.

Denied as phrased.  Hess explained at the hearing on December 21, 2018 why he found

the student witnesses' accounts to be credible and he responded to the suggestion of collusion by

explaining that he had interviewed the witnesses separately, except for Female Student 2, who

accompanied Female Student 1 when she first reported the harassment.  Moreover, neither Doe

nor his parents presented any evidence at the December 21, 2018 hearing to support any

collusion accusation.

36.     During the hearing, which was recorded, Doe and his parents were instructed to leave the hearing room on a recess. After they left, Forrest turned off the recording device and communicated with Hess and Eline for an indeterminate amount of time.

The School Board admits that the hearing was recorded; that there was a break in the

hearing during which Forrest left to retrieve a laptop computer on which to play the video of the

locker-bay incident; and that during the break, Doe and his parents were asked to wait in the

waiting room.  There was no discussion about the case during that break.  Any remaining

allegations in paragraph 36 are denied.

37.     During investigations and hearings, accused students are not told identities of witnesses, making it impossible for them to give a meaningful response to the allegations against them.

Denied as phrased.  Doe knew the names, at the very least, of Female Students 1 and 3

and Male Student 1.  Accused students typically know the names of their accuser and often know

the names of corroborating witnesses.  Disclosing the names of corroborating student witnesses

whose identities are not already known to the accused student would deter such witnesses from

12

coming forward to report misconduct.  This does not make it "impossible" for the accused

student "to give a meaningful response to the allegations against them."

38.     The hearing was governed by the Board's Student Rights and Responsibilities
handbook ("SR&R") and should have also been governed by the Board's duties under the United
States and Virginia Constitutions and other relevant statutes, including Title IX of the Education
Amendments of 1972. The hearing procedures are attached as Exhibit 1.

Paragraph 38 states a legal conclusion to which no response is required.  To the extent a

response is required, the School Board admits that it seeks to comply with the SR&R as well as

with State and federal law.  Exhibit 1 is not a complete copy of the SR&R.

39.     The SR&R is woefully inadequate because (a) it does not provide for a
presumption of innocence; (b) it does not provide a hearing officer with any standard of review
for deciding whether or not a student violated the student code of conduct; (c) it does not
provide any meaningful opportunity for a hearing officer to decide whether the witnesses
against an accused student are credible; (d) it does not provide accused students with an adequate
opportunity to challenge the evidence against them; (e) it has no method of allowing accused
students to question the witnesses against them, either directly or indirectly; (f) it defines sexual
harassment vaguely and inconsistently with the law, see Exhibit 2; and (g) it defines improper
touching vaguely and is enforced in such a way as to make it inconsistently and
disproportionally enforced against male students, see Exhibit 3.

The School Board denies the allegations in paragraph 39, except that the School Board

admits that the SR&R does not specifically state that accused students are "presumed innocent"

and does not specify a "standard of review" akin to what is required in a court of law.

40.     Per the Board's policy and practices, hearing officers rely on investigators
(assistant principals) to conduct investigations. The hearing officers have no ability gather facts
on their own or assess the complainant's or witnesses' credibility.  Forrest relied completely on
Hess's account of the facts as well as his credibility determination in rendering her decision. The
Board did the same. If the investigation is flawed, it will have a domino effect on both the
hearing and appeal process. Here, Hess's flawed investigation caused both the hearing and the
appeal to have an erroneous outcome.

In response to the allegations in the first and second sentences, the School Board admits

that the Division Superintendent's hearing officers do not conduct their own independent factual

investigation; rather, they consider the evidence obtained through investigations conducted by

school administrators, who are often assistant principals.  Hearing officers consider school

administrators' credibility assessments with regard to witnesses who do not testify at a

disciplinary hearing.  The third sentence is denied.  Forrest considered and relied on, among

other things: (1) Hess and Eline's statements about the incident and Hess's findings from his

investigation; (2) Hess's assessments with regard to the credibility of the witnesses, whose

written statements were also included in the materials she considered; (3) the written statement

of Male Student 1, who admitted his own misconduct in slapping Female Student 1's buttocks,

and who attributed to Doe specific verbal sexual harassment of Female Student 1; (4) on Doe's

lack of credibility, based on his live testimony; and (5) all of the other information presented at

the hearing.  The fourth sentence is denied, except that the School Board admits that it relied on

all of the information presented to it on the written appeal by the parents.  The fifth sentence

contains a hypothetical question that cannot be answered in the abstract.  The sixth sentence is

denied.  Any remaining allegations are denied.

    41.    On January 10, 2019, Forrest sent Doe's parents a letter explaining that she
found that Doe had violated the SR&R and that he would be reassigned to Mountain View High
School ("Mountain View") for the remainder of his senior year. Mountain View is an alternative
educational setting and offers substantially fewer educational and extra-curricular opportunities
for Doe. For instance, it does not offer the physics class in which Doe was enrolled. The college
acceptance rate for students at Mountain View is substantially less than the college acceptance
rate for students at other schools.

    The first sentence is admitted.  In response to the second and third sentences, the School

Board denies that Mountain View provides inadequate academic opportunities for students

assigned there but admits that certain of the classes and extra-curricular offerings at Robinson are

not offered at Mountain View.  For classes that are not offered at Mountain View, students may

dually enroll in both Mountain View and the FCPS Online Campus, or Virtual Virginia.  For

instance, the Physics 1 class referenced is offered through both the FCPS Online Campus and

14

Virtual Virginia.  Virtual Virginia also offers AP Physics 1 and 2.  The fourth sentence poses a

comparison that cannot be answered because it fails to identify, among other things, the "other

schools" referenced and the category of persons who apply to college.  Any remaining

allegations are denied.

42.     In her decision, Forrest discounted Doe's testimony without cause and failed to
properly consider the evidence he offered at the hearing.

Denied.

43.     Forrest ordered that Doe be enrolled at Mountain View as a probationary student
for the remainder of his senior year. Consequently, he will not be able to be involved in sports
activities, including wrestling. Due to his inability to wrestle, attending the alternative school,
and having this mark on his transcript, Doe may lose his college scholarship and perhaps even
his college admission. Doe will also not be able to attend graduation activities.

The first sentence is admitted.  In response to the second sentence, the School Board

admits that Doe could not be on FCPS property, attend FCPS-sponsored activities, or attend

Virginia High School League-sponsored activities, in which an FCPS team or one or more FCPS

students are participants, without specific prior written permission of the Hearings Office.  The

third sentence is denied.  It appears that Doe obtained admission to his college based on material

misrepresentations and omissions in his application about his prior disciplinary record, leading

the college to revoke his acceptance.  The fourth sentence is denied as phrased.  While Doe is not

eligible to attend graduation activities at Robinson, he is at Mountain View on June 11, 2019.

Any remaining allegations are denied.

44.     Forrest's decision that Doe sexually harassed Female Student 1 will substantially
interfere with any further college applications by Doe. While many colleges and universities no
longer ask a student if he or she has been convicted of a crime when deciding admissions,
they often still ask about instances of student discipline, the existence of which dramatically
decreases chances of acceptance.

The School Board lacks information sufficient to form a belief about the truth of the

allegations in paragraph 44.

45.     Doe appealed the outcome. His appeal was denied by the Board in a closed door
meeting. The appeal process violated his due process rights by failing to give him a meaningful
opportunity to be heard.

In response to the first and second sentences, the School Board admits that Doe appealed

the Hearing Officer's determination to the School Board, that the School Board considered the

written appeal in closed session, and that the Board voted to deny the appeal and affirm the

disciplinary recommendation in open session.  The third sentence is denied.

46.     Per the Board's own policies and practices, Eline, Forrest and the Board gave
undue discretion and deference to Hess, which had detrimental effects on John Doe due to
Hess's supremely flawed investigation and biases.

Denied.

47.     The Board's training materials, which were provided to Hess and others, focus on
administrators being conscientious of OCR and potential OCR and legal liabilities should they
fail to investigate. The training materials state that the Board is under significant scrutiny due to
increased media coverage of Title IX issues, the #METOO movement, state and federal lawsuits,
and the impact of social media.

In response to the allegations in paragraph 47, the School Board states that any training

materials—none of which are specified here—speak for themselves.  The School Board admits

that training materials encourage administrators to be conscientious in investigating allegations

of sexual misconduct and remind them of the importance of the responsibility.  The School

Board denies that training materials coerce or pressure administrators to determine that innocent

students have committed a violation of the SR&R.  And the decision-making by Hess, Eline, and

Forrest was in no way affected by alleged pressures such as the ones to which Doe alludes.  Any

remaining allegations are denied.

48.     Board material also evidence that the Board knows that there is a significant negative academic impact on suspended or expelled students and that data shows significant disproportionality affecting male students.

Because paragraph 48 does not identify the "material" on which it is based, the School

Board lacks information sufficient to form a belief about the truth of the allegation.

49.     Statistical evidence also shows that since November 2010 approximately forty-eight male students were accused of sexual misconduct and all but two of those students have subsequently been found to have violated school rules and been punished. During that same period, only two female students were accused of misconduct. In one instance, the accuser was female; in the other, the accuser was a faculty member.

Because paragraph 49 does not identify the "[s]tatistical evidence" on which it is based,

the School Board lacks information sufficient to form a belief about the truth of the alleged

statistical evidence.  Any remaining allegations are denied.

50.     The Board is aware of gender disparities in its schools and in particular in its punishment of male students. Here, the Board was aware that Female Student 1 was not investigated or sanctioned for her own sexual harassment of Male Student 1 for substantially similar conduct as what John Doe was accused.

Denied as phrased.  The School Board admits that, in the disciplinary cases to come

before the Board, more boys than girls have been accused by other students of sexual

harassment.  The School Board denies that that differential reflects bias against boys.  Female

Student 1 also was not accused by any student of unwanted sexual overtures or sexual

harassment; her conduct, therefore, was not "similar" to Doe's.

51.     Each of the actions and decisions by Hess, Eline, and Forrest were ratified by the Board in its decision to uphold the decisions in the appeal.

Denied as phrased.  The School Board voted to deny the school reassignment appeal by

Doe and to confirm the disciplinary decision of the Division Superintendent.  Although there is

no evidence that any aspect of the decision-making by Hess, Eline, and Forrest was based on any

improper or unconstitutional motive, the School Board's decision did not ratify any such aspect.

17

52.     Defendant has caused and is causing irreparable damage to Doe's reputation, education, and future learning opportunities.

Denied.

## COUNT I
### (Violation of Title IX)

53.     Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

The School Board likewise incorporates its answers to the previous paragraphs.

54.     Defendant receives federal funding.

Admitted.

55.     Because it receives federal funding, Defendant is subject to the requirements of Title IX of the Education Amendments of 1972, as codified in 20 U.S.C. § 1681, et seq., ("Title IX").

Paragraph 55 states a legal conclusion to which no response is required.

56.     Title IX prohibits discrimination in the education setting based on a student's gender. Unlawful gender discrimination also occurs when a high school disciplines a student based on improper assumptions about gender roles.

The provisions of Title IX speak for themselves and paragraph 56 states a legal

conclusion to which no response is required.

57.     Defendant treated Doe differently due to his gender when he was punished for sexual harassment.

Denied.

58.     Hess, Defendant's agent, treated Doe differently and more harshly because he was a male. Hess also believed that Doe was more of a threat due to gender stereotypes, specifically because he is a large male and his accuser is a smaller female. That Hess differentiates between parties because of their gender is further evidence of his bias and his use of gender stereotypes when investigating this and other matters.

Denied.

18

59.     Male students in Fairfax County Public Schools are treated disproportionately harsher for accusations of sexual harassment, improper touching, or other sexual misconduct as compared to female students.

Denied.

60.     For instance, if a male student and female student are both engaged in mutual sexual contact or touching on school grounds, it is common for the male student to be punished and for the female student not to be punished, based on gender.

Denied.

61.     Likewise, when male and female students touch each other in flirtatious but non-sexual ways, it is common that a male student will be punished but that a female student will not be punished. Here, Doe was punished for alleged sexual harassment, but Female Student 1 was not punished, or even investigated, for sending sexual statements to Male Student 1. The alleged behavior by Doe and the admitted behavior by Female Student 1 was the same. The only material difference is gender.

Denied, except that the School Board admits that no punishment was imposed on Female

Student 1, who was not accused of sexual harassment.

62.     An elected member of the Board has commented that male students are not treated fairly in disciplinary proceedings involving allegations of a sexual nature that are adjudicated by Board employees.

The School Board lacks information sufficient to form a belief about the truth of this

allegation.  In any case, the prior statement of a single Board member is inadmissible.

63.     Additionally, statistical evidence shows that only two female students have ever been sent to the hearings office for sexual misconduct since 2010. That there was not one instance sent to the hearings office of female student to male student sexual misconduct is further evidence that females and males are treated differently by the Board.

Because paragraph 63 does not identify the "statistical evidence" on which it is based, the

School Board lacks information sufficient to form a belief about the truth of the alleged

statistical evidence.  Any remaining allegations are also denied.

64.     The statistical evidence referred to in the training materials also shows that there is significant disproportionality with males suspended at much higher rates than represented in the overall population.

19

Because paragraph 64 does not identify the "statistical evidence" on which it is based, the

School Board lacks information sufficient to form a belief about the truth of this allegation.  Any

remaining allegations are also denied.

65.    In this case, Doe was treated more harshly and punished because he was a
male student; a female student that had been accused of the same offenses to which Doe was
accused would not have been punished.

Denied.

66.    Female students in secondary schools operated by Defendant regularly touch,
poke, and grab male students in flirtatious and sexual ways, but they are essentially never charged
by school officials for committing sexual harassment when they do so. Likewise, female students
often make sexual comments and engage in sexual touching towards male students in secondary
schools operated by Defendant. Again, these female students are essentially never charged by
school officials for committing sexual harassment when they do so. The Board's administrators
charged with investigating instances of sexual harassment know about the behavior of the female
students but choose to ignore it because of gender. Instead, the sexual harassment policy is
purposefully and intentionally enforced almost exclusively against male students.

Denied as phrased.  The School Board lacks information sufficient to form a belief about

the truth of the allegations of the frequency by which female students comment to, or touch, male

students in the manner alleged.  The School Board denies that there is gender bias in

administration of discipline for students who engage in unwanted sexual touching or sexual

harassment.

67.    Moreover, Defendant acted in the shadow of (1) Office of Civil Rights ("OCR")
investigations into how schools handle allegations of sexual assault; and, (2) innumerable reports
covered in the national media that suggest the pervasive nature of sexual assault committed by
male students on campuses throughout the nation. As a reaction to the scrutiny of these OCR
investigations and national stories, and in order to be perceived as aggressively addressing the
perceptions that sexual assault against female students is rampant on campuses, many schools,
like the Fairfax County Public Schools, treat male students accused of sexual misconduct by
female students more aggressively than it otherwise would, and more aggressively than it would
treat similar complaints made by male students against female students. Indeed, the OCR
pressure, "#METOO" movement, legal liability, and additional scrutiny is covered in training
materials, which puts pressure on the Board's administrators, including Hess, Eline, and Forrest,
to investigate and punish male students who may be wrongfully accused of sexual misconduct.

The School Board denies the first sentence to the extent the "in the shadow" characterization suggests that Doe was disciplined other than on the merits of whether he sexually harassed Female Student 1.  The School Board lacks information sufficient to form a belief about the truth of the "innumerable reports" alleged.  The second sentence is denied, except that the School Board lacks information sufficient to form a belief about the truth of the allegations concerning other school systems.  In response to the third sentence, the School Board admits that some training materials refer to OCR, the #MeToo movement, potential legal liability, and public scrutiny, but it denies that Doe was disciplined other than on the substantiated merits of whether he sexually harassed Female Student 1.  Any remaining allegations are denied.

68.    Defendant refused to believe Doe because he is male but would have believed a female student in the same situation.

Denied.

69.    Doe's punishment was disproportionately severe because he was a male. Males in secondary schools operated by the Board are purposefully and intentionally punished disproportionately harsher than females for the same conduct. Indeed, female students are almost never punished at all for conduct that is materially indistinguishable from the conduct of which Doe has been accused. This is confirmed by statistical documentation provided by the Board.

Denied.

70.    Defendant's disciplinary procedures are flawed and do not provide for a fair and reliable outcome. Male students at schools governed by Defendant are more likely to be disciplined than female students for the same offense, which is also confirmed by the Board's documentation.

Denied.

71.    Here, Doe was incorrectly found responsible for violating the SR&R because he was a male student and because Defendant's policies, practices, and procedures wrongly disfavor male students, like Doe.

Denied.

21

72.     Specifically, the sexual harassment policy is vaguely and broadly worded in such a way that it provides Board employees with discretion to enforce it almost exclusively against male students. The Board ignores conduct perpetrated by female students that is substantially and materially identical. Plaintiff believes there have been no instances of a female being punished for sexual harassment for at least the last five years in a secondary school operated by the Board.

The School Board lacks information sufficient to form a belief about the truth of what

Plaintiff "believes."  The remaining allegations are denied.

## COUNT II
### (Violation of Doe's Freedom of Speech rights pursuant to 42 U.S.C. § 1983)

73.     Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

The School Board likewise incorporates its answers to the previous paragraphs.

74.     The First Amendment to the United States Constitution states that "Congress shall make no law . . . abridging freedom of speech."

Admitted.

75.     The First Amendment protections to speech apply in a high school setting.

Admitted.

76.     Defendant violated Doe's First and Fourteenth Amendment rights by punishing him pursuant to a harassment policy and an improper touching policy that is unconstitutionally vague and overly broad because it prohibits conduct that creates an "offensive environment."

Denied.

## COUNT III
### (Violation of Fourteenth Amendment Due Process rights pursuant to 42 U.S.C. § 1983)

77.     Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

The School Board likewise incorporates its answers to the previous paragraphs.

78.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

Admitted.

22

79.    Public school students have a property and liberty interest in their education.

Paragraph 79 calls for a legal conclusion to which no response is required.

80.    Defendant denied Doe's due process rights when it suspended him for ten days without properly notifying him of the allegations against him and without a proper hearing, conducted a biased and incomplete investigation, and held a hearing without proper notice or due process protections.

Denied.

81.    Hess demonstrated his bias by not believing Doe and deciding to suspend him before he interviewed him in the investigation. He believed the female students based on their testimony alone without any documentary evidence, despite credibility issues with the witnesses. He did not give Doe a meaningful opportunity to respond and stated that the only way he would have believed him and not punished him was if he admitted to the allegations.

Denied.

82.    Defendant denied Doe's due process rights when it imposed sanctions on him without considering the exculpatory evidence that he provided.

Denied.

83.    Forrest demonstrated her bias when she discounted Doe's statements without any evidence, failed to ask questions about the credibility of a witness who had admitted to lying in the investigation, and engaged in an ex parte conference with Hess and Eline in a recess during the hearing. As a result of Forrest's bias, Doe never received a fair hearing.

Denied.

84.    Defendant's disciplinary policies in the SR&R violate due process on their face for numerous reasons, including the following:

    a.    Students accused of offenses are not presumed innocent;

    b.    Hearing officers do not have a standard of proof that they must meet (such as preponderance of the evidence or clear and convincing evidence) before punishing a student for violating school rules;

    c.    Accused students are not given an opportunity to cross-examine their accusers or the witnesses against them, either directly or indirectly;

    d.    The hearing officer does not hear the accusations against an accused student directly from a witness in a live hearing. Instead a school administrator, who presents the case against the accused student, provides a summary of the evidence against the student and

vouches for the credibility of the accusers. Consequently, the hearing officer only has the ability to test the credibility of the accused and not the accusers; and

e.      Accused students are not told identities of witnesses, making it impossible for them to give a meaningful response to the allegations against them.

Denied, except that the School Board admits that the SR&R does not specifically state

that accused students are "presumed innocent" and does not specify a "standard of review" akin

to what is required in a court of law.

85.     As a result of these due process violations, Doe was suspended and then reassigned to an alternative learning center as a probationary student.

Denied, except the School Board admits that Doe was suspended and reassigned to

Mountain View High School.

## COUNT IV
### (Violation of Fourteenth Amendment Equal Protection rights pursuant to 42 U.S.C. § 1983)

86.     Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

The School Board likewise incorporates its answers to the previous paragraphs.

87.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

Admitted.

88.     As previously explained, the Board treated Doe differently and more severely because he is a male. Specifically, Board employees investigated and punished Doe for sexual harassment when female students who engage in activity that is materially indistinguishable from the activity of which Doe was accused are not investigated or punished.

Denied.

89.     The Board knows and has credible evidence that female students engage in behavior that violates its broad and vague sexual harassment policy. Specifically, it knows and has credible evidence that female students make sexually suggestive comments to other students (including language that is foul and vulgar) and touch other students in sexually suggestive ways. The Board and its employees, however, have purposefully and intentionally chosen to almost exclusively punish male students, including Doe, for such behavior, even though such

alleged behavior is materially indistinguishable from behavior it has chosen to ignore from female students. Here, Hess, Forrest, Eline and the Board chose to punish Doe for sexual harassment, while ignoring materially indistinguishable evidence of Female Student 1's conduct as previously discussed.

Denied.

90.   The Board chose to investigate and punish Doe for sexual harassment. It purposefully and intentionally ignored, however, acts that are materially indistinguishable from those alleged against Doe when such acts were committed by similarly situated female students. The Board does not have any reasonable reason to differentiate between males and females when engaging in such gender-based discrimination. Consequently, it has violated Doe's rights to equal protection of the law.

Denied, except that the School Board admits that it voted to deny the school reassignment

appeal by Doe and to confirm the disciplinary decision of the Division Superintendent.

## COUNT V
### (Declaratory Judgment pursuant to 28 U.S.C. § 2201)

91.   Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

The School Board likewise incorporates its answers to the previous paragraphs.

92.   As previously explained in Count I and elsewhere in this complaint, the Board violated John Doe's rights under Title IX of the Educational Amendments of 1972 [a] when he was punished more severely than a similarly situated female student because of his gender and [b] when the Board and its employees inaccurately found that Doe violated school rules, using a process that had significant deficiencies, because of his gender.

Denied.

93.   As previously explained in Count II and elsewhere in this complaint, Doe's rights were violated Board when Doe was punished under an sexual harassment policy that was unconstitutionally vague and over broad, in violation of his rights under the First and Fourteenth Amendments.

Denied.

94.   As previously explained in Count III and elsewhere in this complaint, Doe's due process rights were violated by the Board when it punished him under the SR&R, which had insufficient procedural safeguards to satisfy the Fourteenth Amendment's due process requirements and when the process used was tainted by bias.

Denied.

95.     As previously explained in Count IV and elsewhere in this complaint, Doe's equal protection rights were violated when Doe was treated differently and more severely because of his gender.

Denied.

***

For its additional responses to the Second Amended Complaint, the School Board pleads as follows:

96.     For any response above in which the School Board states that it lacks information sufficient to form a belief about the truth of the allegation, the allegation is denied pursuant to Federal Rule of Civil Procedure 8(b)(5).  The School Board denies any remaining allegations in the Second Amended Complaint that are not specifically admitted above.

97.     Each count of the Second Amended Complaint fails to state a claim on which relief can be granted.

98.     Plaintiff's due process claims are barred because he failed to appeal the School Board's disciplinary decision to the circuit court in accordance with Virginia Code § 22.1-87.

99.     To the extent that Plaintiff suffered any damages, he failed to mitigate them.

WHEREFORE, the School Board denies any liability to Doe and denies that he is entitled to any relief.  The School Board requests that judgment be entered in its favor and that it be awarded all costs, fees, and expenses, as well as any other relief the Court deems fair and just.

DATED:  June 6, 2019

Respectfully submitted,

FAIRFAX COUNTY SCHOOL BOARD

By:    /s/ Stuart A. Raphael    
Stuart A. Raphael (VSB No. 30380)
Sona Rewari (VSB No. 47327)
2200 Pennsylvania Avenue, NW
Washington DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
sraphael@HuntonAK.com
srewari@HuntonAK.com

*Counsel for Defendant Fairfax County
School Board*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2019, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send a notification of such filing (NEF) to

counsel of record for all Parties.

    /s/ Stuart A. Raphael    
Stuart A. Raphael (VSB No. 30380)

27