**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| **JOHN DOE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.1:19-cv-65** |
| **FAIRFAX COUNTY SCHOOL BOARD,** | |
| **Defendant.** | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Jesse R. Binnall, VSB No. 79292
Lindsay R. McKasson, *pro hac vice*
Harvey & Binnall, PLLC
717 King Street – Suite 300
Alexandria, VA 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................ii

TABLE OF AUTHORITIES ....................................................................................................iii

INTRODUCTION ....................................................................................................................1

RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ("RSUF")....................2

ADDITIONAL DISPUTED MATERIAL FACTS .................................................................. 11

ARGUMENT........................................................................................................................ 15

    I.    The School Board Violated Doe's Title IX and Equal Protection Rights............................ 15

        a.    The Board reached an erroneous outcome when it punished Doe for sexual harassment 16

            1.    Faults in the investigation and hearing ................................................................ 17

            2.    Gender bias ......................................................................................................... 18

        b.    The Board selectively enforced its sexual harassment policy against Doe on the basis of sex ...................................................................................................................................... 20

            School officials knew of and ignored materially analogous behavior from Female Student 1, an appropriate comparator ........................................................................................ 21

        c.    The Board violated Doe's equal-protection rights .................................................. 23

    II.    Doe's Due Process Rights Were Disregarded As Shown by Bias, a Lack of Presumption of Innocence, and a Lack of Notice ......................................................................................... 23

        a.    The bias against Doe............................................................................................. 25

        b.    The Board's lack of an evidentiary standard or presumption of innocence......................... 26

        c.    Doe's lack of notice of Male Student 1's statement................................................. 27

        d.    Doe was not required to appeal the Board's decision to the circuit court .......................... 28

    III.    Doe is Entitled to a Judgment Against the School Board Because it Adopted Its Employees' Conduct and Because of the Board's Admissions to this Court................................... 29

        The Board made a binding judical admission before this Court that estoppes it from now challenging municipal liability .......................................................................................... 30

CONCLUSION..................................................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Biediger v. Quinnipiac Univ.*, 691 F.3d 85 (2d Cir. 2012) ................................................................. 27

*Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 827 n.2 (4th Cir. 1999) .................... 16

*Camero v. United States*, 375 F.2d 777, 781 (Ct. Cl. 1967) ............................................................. 25

*Columbia Univ.*, 831 F. 3d at 57-58 ............................................................................................ 19, 20

*Davison v. Rose*, 2017 U.S. Dist. LEXIS 121076 (E.D. Va. 2017) ................................................. 28

*Doe 2 v. Fairfax Cty. Sch. Bd.*, No. 1:18-cv-846, 2019 U.S. Dist. LEXIS 90084, at *16 (E.D. Va. 2019)
............................................................................................................................................ 1, 20, 28

*Doe v. Baum,* 903 F.3d 575, 586 (6th Cir. 2018) ........................................................................... 19

*Doe v. Columbia Univ.,* 831 F. 3d 46, 58 n. 11 (2d Cir. 2016) ....................................................... 19

*Doe v. Loh,* 767 Fed. Appx. 489 (4th Cir. 2019) ........................................................................... 16

*Doe v. Marymount University,* 297 F. Supp. 3d 573, 582 (E.D. Va. 2018) ................................... 16, 18

*Doe v. Miami University,* 882 F.3d 579, 589 (6th Cir. 2018) ............................... 16, 18, 19, 23, 25

*Doe v. Purdue,* No. 17-3565, Slip Op. at 25, 2019 U.S. App. LEXIS 19464, *33 (7th Cir. 2019). 16, 19

*Gibson v. Berryhill,* 411 U.S. 564, 578-79 (1972) ........................................................................ 25

*Goldberg v. Kelley,* 397 U.S. 254, 267 (1970) ............................................................................. 24

*Goss v. Lopez,* 419 U.S. 565, 577 (1975) .................................................................................... 24

*Goss,* 419 U.S. at 584 ................................................................................................................. 24

*Haywood v. Locke,* 387 Fed. Appx. 355, 359-60 (6th Cir. 2010) ................................................. 21

*Heyne v. Metro. Pub. Sch.,* 655 F.3d 556, 566 (6th Cir. 2011) .................................................... 24

*In re: Murchison,* 349 U.S. 133, 136 (1955) ............................................................................... 25

*Knick v. Twp. of Scott,* 139 S. Ct. 2162, 2167 (2019) ................................................................ 28

*Marshall v. Jericho, Inc.,* 446 U.S. 238, 242 (1980) .................................................................... 25

*Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) ........................................................................ 24

*McNeese v. Board of Ed. for Community Unit School Dist. 187,* 373 U. S. 668, 672 (1963) .................... 28

*Meyer v. Berkshire Life Ins. Co.,* 372 F.3d 261, 264 (4th Cir. 2004) ............................................ 30

*Minter v. Wells Fargo Bank, N.A.,* 762 F.3d 339, 347 (4th Cir. 2014) ...................................... 30, 31

*Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978) .................................... 29

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1980) .......................................... 29

*Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523-24 (4th Cir. 2000) ......................... 29

*S.C. Dep't of Mental Health*, 641 Fed. Appx 202, 210 (4th Cir. 2015) ............................. 20

*Sheppard v. Visitors of Va. State Univ.*, No. 3:18-cv-723, 2019 U.S. Dist. LEXIS 70661, 2019 WL
     1869856, at *4-5 (E.D. Va. 2019) ..................................................................... 20

*Stivers v. Pierce*, 71 F.3d 732 (9th Cir. 1995) ............................................................ 25

*Streno v. Shenandoah Univ.*, 278 F. Supp. 3d 924, 932 (W.D. Va. 2017)). ....................... 20

*United States v. Morrison*, 529 U.S. 598, 601, 120 S. Ct. 1740, 1745 (2000)..................... 16

*VIA Design Architects, PC v. US Dev. Co.*, 2014 U.S. Dist. LEXIS 156075, at *17 (E.D. Va. Nov. 4,
     2014)................................................................................................................. 30

*William Jefferson & Co v. Bd. of Assessment & Appeals No 3 for Orange County*, 695 F.3d 960, 966 (9th Cir.
     2012)................................................................................................................. 25

*Withrow v. Larkin*, 421 U.S. 35, 46, (1975) ............................................................... 25

*Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) ........................................... 16, 19, 20

**Statutes**

20 U.S.C. § 1681(a) ................................................................................................ 16

42 U.S.C. § 1983. ......................................................................................... 29, 30, 31

83 Fed. Reg. 61462, 61477 (2018) ........................................................................... 19

Va. Code Ann. § 22.1-87............................................................................... 28, 29

**Other Authorities**

Adrian Vermeule, *Deference and Due Process*. 129 Harv. L. Rev. 1890 (2016).................................. 27

## INTRODUCTION

Plaintiff John Doe ("Doe") is a high school graduate whose academic career was thrown into peril because of severe disciplinary actions taken against him by the Fairfax County School Board (the "Board"). After Doe was accused of sexual harassment, of which Doe maintains his innocence, the Board conducted an investigation and hearing peppered with procedural errors and gender bias. These errors include: a lack of a burden of proof, no presumption of innocence, bias and discrimination on the part of administrators, and the production of an additional witness statement after Doe's hearing. Even accepting the allegations against Doe as true, the Board's punishment of Doe was draconian – he was banned from his high school and sent to an alternative high school. A female student in Doe's situation was not even investigated for similar behavior.

This case may seem superficiously similar to the *Doe 2 v. Fairfax County School Board* case recently decided by another judge in this district. 2019 U.S. Dist. LEXIS 90084 (E.D. Va. 2019). There are important differences between the cases, however. The differences include: (1) Here, Plaintiff has specifically identified a similarly situated comparator for his Title IX and equal protection claims; (2) Plaintiff has identified different training material and statistics showing gender bias than was discussed in the *Doe 2* court's opinion; and (3) Plaintiff's due process arguments are different than those described in the *Doe 2* opinion, including claims of bias, burden of proof, and notice. Consequently, while Plaintiff does not agree with some of the conclusions reached in the *Doe 2* case, the two matters are easily distinguishable. The Board's motion should be denied and this case should proceed to trial.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS[1] ("RSUF")

3.      Disputed. Plaintiff and Male Student 1 were standing with Female Student 1 and Female Student 3 as well as many other students as showcased in the still photograph from the security camera footage and confirmed by Hess who states "there's students everywhere." Defendant's Ex. 1, DX 107; Ex. 1, Hess Dep. at 128:7-129:12. The locker bay is a place where students gathered to be social in the sub school. Ex. 2, FS2 Dep. at 51:15-22.

4.      Undisputed that is what they reported, but disputed as to the underlying facts. Female Student 2's only sexual allegation relating to Doe is that she heard him say to Female Student 1 in person "tryna fuck?" Defendant's Ex. 1, DX 125. This is contradicted by her deposition testimony in which she states that when she saw Female Student 1 and Doe together, she could not hear what they were saying. Ex. 2, FS2 Dep. at 31:15-18. She further testified that the only thing she witnessed was an out-of-school Snapchat that did not state "tryna fuck." *Id.* at 148:2-12, 149:17-150:7. Doe has repeatedly denied that he ever sexually harassed Female Student 1. Stip. #14[2]; Defendant's Ex. 1, DX 24.; Ex. 3, Pl. Dep. at 175:17-176:1. Hess admits that initially his "sole focus" was Male Student 1. Ex. 1, Hess Dep. at 127:1-128:1.

7.      Disputed. Defendant cites the Detailed Incident Report, which was written by Hess, but does not cite Female Student 1's written statement in which many of these facts are excluded. Stip. #19; Defendant's Ex. 1, DX 113. Hess took a limited number of notes and therefore it is unclear just how he would remember these additional facts. Ex. 1, Hess Dep. at 133:19-134:2; Ex. 4, DX 17. Also, Doe

---

[1] Doe does not dispute Defendant's SUF nos. 1-2, 5-6, 14, 17-18, 20-21, 23-26, 28-42, 44-45, and 47. For the Court's convenience, Plaintiff compiled Defendant's Undisputed Material Facts, Plaintiff's Response, and Plaintiff's Additional Material Facts into one list. *See* Plaintiff's Exhibit 21.
[2] The Parties' joint Stipulation of Undisputed Material Facts was filed on June 19, 2019, ECF No. 58 ("Stip. #").

has repeatedly denied that he ever sexually harassed Female Student 1. Stip. #14; Defendant's Ex. 1, DX 24; Ex. 3, Pl. Dep. at 175:17-176:1.

8.      Undisputed that Female Student 3 reported as such, but disputed as to the underlying facts. This statement was contradicted by her own deposition testimony. Ex. 5, FS3 Dep. at 57:20-58:6. At the time of her deposition, she had no specific memory of Doe saying the "bed" comment. *Id.* at 75:22-76:14. Doe has repeatedly denied that he ever sexually harassed Female Student 1 and was never even asked about harassing Female Student 3. Stip. #14; Defendant's Ex. 1, DX 24; Ex. 3, Pl. Dep. at 175:17-176:1. Also, Female Student 3 testified that she believed Doe was joking and that what he allegedly said did not upset her. Ex. 5, FS3 Dep. at 55:5-17, 101:15-22. Female Student 3 also texted her friend "Haydon didn't do anything to Hannah." Ex. 6, DX 101 at E004.

9.      Undisputed as to what Female Student 4 reported, but disputed as to the underlying facts. Doe has repeatedly denied that he ever sexually harassed Female Student 1. Stip. #14; Defendant's Ex. 1, DX 24; Ex. 3, Pl. Dep. at 175:17-176:1. Further, Female Student 4 voluntarily, albeit at the behest of Female Student 1, went to Hess' office to report about the alleged incidents. Ex. 7, FS4 Dep. at 63:12-65:11, 66:2-13. Female Student 4 testified that Female Student 1 has asked her to speak to Hess about Doe and to "take my side." *Id.* at 63:19-65:8. Hess did not ask or investigate why another student would volunteer to come to his office. Ex. 1, Hess Dep. at 166:12-167:20. Nor did he investigate whether there was a coordinated effort between the witnesses. *Id.*; Ex. 5, FS3 Dep. at 52:1-53:6. Additionally, Female Student 4 testified that she never personally witnessed Doe touching Female Student 1, contradicting the statement given to Hess. Ex. 7, FS4 Dep. at 120:14-16. There is a question as to whether Female Student 4 actually witnessed any of the alleged statements by Doe or was just told about them by Female Student 1. Ex. 7, FS4 Dep. at 65:2-8.

10.     Disputed. Female Student 5 did not admit to not being forthright with Mr. Hess. Defendant's citation states: "[Hess] asked me why I didn't tell him about Plaintiff the first time we talked, and I

told him I was just nervous and I wanted it to be as short as possible so I could be done talking to

Hess" and "I was nervous when [Hess] called me in because I didn't know what I was being called in

for, **and I wanted to get all the information out as much as I could.** So I tried to make it as short

as possible with him." Ex. 8, FS5 Dep. at 52:15-21, 87:18-88:3 [emphasis added].

11.      Undisputed as to what Male Student 1 reported, but disputed as to the underlying facts. Doe

denied having stated the "between us" comment. Defendant's Ex. 1, DX 113 at JDOE_0003420; Ex.

1, Hess Dep. at 195:7-13.

12.      Undisputed as to what Female Student 1 reported, but disputed as to the underlying facts.

Doe has repeatedly denied that he ever sexually harassed Female Student 1. Stip. #14; Defendant's

Ex. 1, DX 24; Ex. 3, Pl. Dep. at 175:17-176:1.

13.      Disputed. It is unclear what Male Student 1 was describing as threatening and it was not

clarified in his deposition (the exact quotation is "but I understand now looking back, how those

exchanged [sic.] would be perceived as threatening."). Defendant's Ex. 1, DX 149. It is undisputed as to

to what Male Student 1 reported, but disputed as to the underlying facts. Doe denied having stated

the "between us" comment. Defendant's Ex. 1, DX 113 at JDOE_0003420; Ex. 1, Hess Dep. at 195:7-

13. Moreover, although this statement was provided to the school on December 9, 2018 and was

relied upon by the hearing officer, it was not provided to John Doe until January 3, 2019, well after

the hearing on December 21, 2018. Stip. #30; Defendant's Ex. 1, DX 37 at JDOE_0002878 ("[t]he

hearing officer cannot discount the unequivocal statements made by…the other boy involved."). Hess

chose not to include Male Student 1's statement in the hearing packet to Doe. Ex. 1, Hess Dep. at

231:11-232:19.

15.      Disputed that Doe had a meaningful opportunity to respond as indicated by the facts set

forward in this memorandum in opposition, including but not limited to he did not know the identities

of Female Students 2, 4, and 5 and did not have Male Student 1's statement before or during the

hearing. He was given the statement weeks later. Stip. #26; Stip. #30; Ex. 1, Hess Dep. at 231:11-232:19.

16.     Disputed. Defendant's citation does not mention the credibility of the other students. Defendant's Ex. 3, Hess Dep. at 198:3-200:9.

19.     Undisputed that Hess prepared the Detailed Incident Report ("DIR"). Disputed as to the underlying facts of the DIR as showcased by the evidence offered in support of this memorandum in opposition. Further, Hess failed to report exculpatory facts that he knew at the time of drafting the report, such as:

> a. When Female Student 5 reported to Hess that she had not witnessed sexual harassment by Doe (i.e. exculpatory information), he did not ask her to write to a statement; however, when she came back to him days later and provided inculpatory evidence, he asked her to write a statement. Ex. 8, FS5 Dep. at 60:1-15; Stip. #22; Defendant's Ex. 1, DX 123; Ex. 1, Hess Dep. at 204:13-21. Hess' explanation for why he did not have Female Student 5 write a statement, even though what she said to him was inconsistent with what Female Student 1 reported was "I could survey 500 kids that would say they never heard [Doe] say anything inappropriate. That doesn't mean it never happened." *Id.* Seemingly this implies that Hess made up his mind that Doe was guilty before even speaking with Doe and that Hess never attempted to find other exculpatory information.

> b. Hess interviewed a male student from Female Student 1 and Doe's English class. This student reported that he had never heard Doe say anything inappropriate to Female Student 1. Ex. 1, Hess Dep. at 204:22-205:21. This was not included in the Detailed Incident Report. Defendant's Ex. 1, DX 113.

> c. Hess interviewed the teacher of the class Female Student 1 and Doe had together (English). She reported that she never saw Doe say anything inappropriate to Female Student 1. Ex. 1,

5

Hess Dep. at 207:15-17. This was not included in the Detailed Incident Report. Defendant's Ex. 1, DX 113.

d. Female Student 4 testified that another unidentified female student gave a statement to Hess the same day that she gave her statement after Female Student 1 requested that they provide a statement. Ex. 7, FS4 Dep. at 66:22-68:7, 91:13-92:1. This statement was not included in the DIR, and was not mentioned by Hess in his deposition. Defendant's Ex. 1, DX 113.

22.     Undisputed as to what Female Student 5 reported, but disputed as to the underlying facts. Female Student 5 could not positively remember whether she heard Doe say the "collection" comment to her, whether she overheard it, or whether Female Student 1 was present when he allegedly stated that comment. Ex. 8, FS5 Dep. at 56:6-57:8. Moreover, John Doe has repeatedly denied that he ever sexually harassed Female Student 1. Stip. #14; Defendant's Ex. 1, DX 24; Ex. 3, Pl. Dep. at 175:17-176:1. Just as Female Student 4 was asked by Female Student 1 to make a statement, Female Student 5 was also pressured to make an exculpatory statement regarding Doe. Ex. 9, DX 158-160; Ex. 10, DX 108 at H007-12. After Female Student 5 gave a statement to Hess, she testified that Female Student 1 gave her a Snickers bar. Ex. 8, FS5 Dep. at 49:16-51:10. She further testified that Female Student 1 had never done anything like that before and she was "kind of surprised." *Id.* When Female Student 5 spoke with Hess the second time, he did not ask her if she had discussed the situation with anyone else or if anyone had pressured her to come see him. *Id.* at 52:22-53:6.

27.     Disputed. John Doe was not given a meaningful opportunity to respond because he did not know the identities of Female Students 2, 4, and 5 and did not have Male Student 1's statement before or during the hearing. He was given the statement weeks later. Stip. #26; Stip. #30; Ex. 1, Hess Dep. at 231:11-232:19.

43.     Undisputed as to what VMI's director of admissions testified, but disputed as to the underlying facts. An email sent on April 29, 2019 indicates that VMI withdrew its offer due to the sexual

harassment finding. Ex. 11, DX 141 ("I think we are placing ourselves in a vulnerable spot if we allow him to matriculate given the circumstances he is in now. He denies the charges, but I do not see how we can turn around and say that FF county was wrong in their decision therefore we are allowing him to enroll at VMI.").

46.     Undisputed as to what they testified, but disputed as to the underlying facts as showcased by the disputed facts set forward in this memorandum in opposition, including but not limited to John Doe has repeatedly denied that he ever sexually harassed Female Student 1. Stip. #14; Defendant's Ex. 1, DX 24; Ex. 3, Pl. Dep. at 175:17-176:1; Ex. 1, Hess Dep. at 195:7-17, 200:5-6 ("[f]or [Plaintiff] to deny every single one of those accusations to me gave him no credibility.").

48.     Undisputed. Per the Board's own policies and practices, administrators are supposed to investigate sexual advances despite whether a student perceives themselves as a victim. Ex. 12, DX 9 at JDOE_0001805, 1810-1812. Moreover, the SR&R dictates an objective test for prohibited conduct that focuses on the "environment." Defendant's Ex. 17 at 16. Female Student 1's actions toward Male Student 1 (sending him a photograph in her bra and shorts, sending him a video of sexually eating a KitKat bar, and sending him a message regarding making him orgasm in three seconds) are objectively offensive. Hess testified that he did not investigate Female Student 1 because Male Student 1 did not report it and was not offended by the statement. Ex. 1, Hess Dep. at 158:9-163:5.

49.     Disputed. Relating to Forrest, John Doe testified "I know [that Forrest was biased against me because I am male] based on her actions and demeanor with me, I know that -- and I know that she discussed things with Hess and Eline before our meeting, that she had already made up her mind before she even spoke to me, just like [Hess]." Ex. 3, Pl. Dep. at 98:10-22. Eline displayed his bias by stating to Forrest before the hearing: "both the parents sometimes could be aggressive." Ex. 13, Eline Dep. at 100:3-13. Hess displayed his bias by believing the account of Female Student 1 as opposed to Doe's account and further testifying that he would have believed Doe only if Doe admitted to saying

some of the statements Female Student 1 alleged he had said. Ex. 1, Hess Dep. at 198:10-200:9. Additionally, Plaintiff was given a limiting instruction from his counsel not to answer regarding anything he knew from communications with his lawyer. Defendant's Ex. 6, Pl.'s Dep. at 94:19-22, 98:13-16, 99:6-7.

50.     Disputed. Doe's mother was only asked about bias, not gender bias. Defendant's Ex. 15, Mother's Dep. at 298:10-14.

51.     Disputed. When asked about evidence relating to Hess' gender bias, Doe testified "I know that he didn't give me a fair shot at explaining my side of the story. I know that he took plenty of time to investigate [Female Student 1's] side of the story and listened to her support group and automatically assumed me guilty. And I know that he did not ever ask me a question in regards to my side of the story or my opinion." Ex. 3, Pl. Dep. at 91:22-92:10. Additionally, Plaintiff was given a limiting instruction from his counsel not to answer as to anything he knew from communications with his lawyer. Defendant's Ex. 6, Pl.'s Dep. at 92:19-22. Undisputed that Hess' declaration for the TRO hearing stated "John Doe is a large male wrestler, significantly taller and heavier than female students 1 and 3." Defendant's Ex. 6, Pl's Dep. at 221:10-18.

52.     Undisputed that they testified as such, but disputed as to the underlying facts. Hess was biased against Doe based on gender (or in the alternative, for the Due Process claim, was just biased against Doe) as showcased by the facts in this memorandum in opposition.

53.     Undisputed that they testified as such, but disputed as to the underlying facts. Hess, Eline, and Forrest were biased against Doe based on gender (or in the alternative, for the Due Process claim, were just biased against Doe) as showcased by the facts in this memorandum in opposition.

54.     Undisputed that they testified as such, but disputed as to the underlying facts. Defendant was influenced by external factors such as fear of OCR investigations, the #MeToo movement, and the threat of legal liability as revealed by a training slide referencing the #MeToo movement and the threat

of legal liability as important issues when dealing with Title IX Incidents. Ex. 12, DX 9 at JDOE_0001805, 1810-1812.

55.     Undisputed; however, this packet was incomplete as it did not include Male Student 1's Statement. Stip. #30; Ex. 1, Hess Dep. at 231:11-232:19.

56.     Disputed. Hess, Eline, and Forrest's accounts of the discussion during the break are inconsistent. Hess testified "There may have been words exchanged…Smalltalk." Ex. 1, Hess Dep. at 214:19-215:9. Forrest testified "I don't recall any conversation." Ex. 14, Forrest Dep. at 131:18-132:14. Eline testified that he did not remember, but his "guess would be yes [that a conversation occurred]." Ex. 13, Eline Dep. at 100:22-101:10. When asked if he remembered what was said he stated "Not really" and that he did not know one way or another if it was about this case. *Id.* Moreover, Eline also testified that he spoke to Forrest before the hearing, stating that "both the parents sometimes could be aggressive." Ex. 13, Eline Dep. at 100:3-7. Forrest testified that she did not remember having a conversation with any Robinson employee before the hearing. Ex. 14, Forrest Dep. at 109:1-5.

57.     Undisputed as to what they testified, but disputed as to the underlying facts. Hess admitted in the hearing that he could not see him laughing in the video. Ex. 15, DX 27 at 44:22-45:2. In his deposition, he testified he believed Doe was laughing. Ex. 1, Hess Dep. at 229:5-6. This is evidence of bias. Doe testified that sometimes he laughs or turns "really red" when he is "in uncomfortable situations." Defendant's Ex. 6, Pl.'s Dep. at 144:15-19. Doe further testified that when he told Forrest that he did not remember if he laughed or not, it was true. Ex. 3, Pl.'s Dep. at 144:20-145:5. Therefore, Doe does not remember if he laughed or not, but if he did, it was because he was uncomfortable. He clearly stated for the record that he was uncomfortable Male Student 1's slapping of Female Student 1. *Id.* at 145:21-146:5. Further, there was no evidence that he laughed. Hess admits during the disciplinary hearing that he could not see Doe laughing on camera because Doe is facing away from

the camera. Ex. 15, DX 27 at 44:21-45:6. When asked by Hess if he laughed, he stated he did not recall laughing. Defendant's Ex. 1, DX 113 at JDOE_0003419.

58.     Undisputed as to what they testified, but disputed as to the underlying facts. Hess failed to interview Female Student 2 separately (undisputed). Stip. #4. Female Student 2, while having never spoken to Doe, made a statement on behalf of Female Student 1. Ex. 2, FS2 Dep. at 144:2-3; Defendant's Ex. 1, DX 125. Further, as stated above, Female Student 1 repeatedly texted Female Student 5 to make a statement to Hess, and, when Female Student 5 made a statement, Female Student 1 seemingly rewarded her with a Snickers bar. Ex. 8, FS5 Dep. at 47:16-21, 49:16-51:10; Ex. 9, DX 158-160; Ex. 10, DX 108 at H007-12.

59.     Undisputed as to what they testified, but disputed as to the underlying facts. In addition to asking Female Students 4 and 5 to make a statement and rewarding Female Student 5 for doing so, a sleepover occurred on December 7, the day after the alleged incident with Female Student 1 and Female Student 2. Ex. 2, FS2 Dep. at 142:21-143:1. Female Student 1 admitted to socializing with Female Student 2 for a few hours on December 7, 2018. Ex. 16, FS1 Dep. at 70:15-17. Female Student 4 also testified regarding hanging out the night of (or soon after) the slapping incident wherein Female Student 1 asked her to make a statement. Ex. 7, FS4 Dep. at 66:2-13.

60.     Undisputed as to what Hess and Forrest testified, but disputed as to the underlying facts. Hess testified that "if [Plaintiff] would have said something to the effect that he had said some things and perhaps they were inappropriate but he didn't know that it was being received incorrectly, something to that extent, I think I would have been more inclined to believe him and would have continued my investigation further." Ex. 1, Hess Dep. at 198:10-20. Further, Hess testified "[f]or [Plaintiff] to deny every single one of those accusations to me gave him no credibility, and that's why I made my decision in that moment that he should be suspended and referred to the Hearings Office." Ex. 1, Hess Dep. at 200:5-9. Thus, the only way Hess would have believed Doe was if he had admitted to the alleged

harassment. Additionally, because there is no opportunity for Forrest to do any investigation, she was completely reliant on Hess to make a credibility assessment - "I relied on the administrator who investigated the incident, who interviewed the student. I wouldn't be able to determine their credibility. That's a determination that I ask school staff." Ex. 14, Forrest Dep. at 51:2-13. Likewise, Eline relied on Hess to make a credibility determination of the student witnesses. Ex. 13, Eline Dep. at 16:3-11 (assistant principals perform investigations and then report to Eline). Moreover, as Hess and Forrest confirm, the SR&R contains no "presumption of innocence" or standard of proof by a "preponderance of evidence." Ex. 1, Hess Dep. at 104:1-9 (responding to a question asking where he has heard about the preponderance of evidence standard, he testifies "I have no idea. Trainings because I haven't heard it from colleagues."); Ex. 14, Forrest Dep. at 97:8-20 ("[s]o if you're looking for a written policy that states preponderance of the evidence is our standard, you're not going to find a written policy.").

## ADDITIONAL DISPUTED MATERIAL FACTS

A.     At the time of his investigation into the allegations against Doe, Hess had only been an assistant principal for two years. Ex. 1, Hess Dep. at 7:12-17.

B.     Hess testified that there is no direct training on how to conduct investigations, but he has "experienced some training/guidance." Ex. 1, Hess Dep. at 28:21-30:3. Hess remembers seeing a presentation referring to Title IX, #MeToo, and legal ramifications of Title IX investigations at a training held on July 24. *Id.* at 55:14-56:9; Ex. 12, DX 9, JDOE_0001805, 1810-1812. Moreover, the head of the Division Superintendent's Hearings Office testified that they used to provide more training to assistant principal's (investigators), but again due to staffing issues, they have curtailed the training in the last two years (the same period in which Hess became an assistant principal/investigator). Ex. 17, Scanlan Dep. at 35:11-36:11.

C.     Hess investigated one other Title IX allegation before the allegations against Doe. Ex. 1, Hess Dep. at 122:11-19, 124:14-16.

D.     The hearing office failed to establish a burden or standard of proof or a presumption of innocence. Ex. 17, Scanlan Dep. at 28:17-29:22. It is left to the hearing officers' discretion. *Id.* Additionally, there used to be a practice of utilizing two hearing officers to come to a consensus regarding a student's culpability. *Id.* at 11:9-12:8. That practice changed due to "staffing issue." *Id.* In Doe's hearing, only one hearing officer was appointed. *Id.;* Stip. #27.

E.     Female Student 1 testified that it is normal for students at Robinson to talk about sex at school. Ex. 16, FS1 Dep. at 82:20-85:2. Female Students 4 and 5 concurred. Ex. 7, FS4 Dep. at 31:5-21; Ex. 8, FS5 Dep. at 58:13-59:9. Female Student 4 also said that Female Student 1 would talk about sexual topics, including sexual things she would do with her ex-boyfriend. Ex. 7, FS4 Dep. at 34:16-35:22.

F.     Hess made up his mind about Doe's harassment of Female Student 1 before he spoke with Doe and before doing any meaningful investigation. On December 6th when Female Student 1 met with Hess, Hess called Female Student 1's mother and stated, prior to even talking with Doe or any of the witnesses besides Female Students 1 and 2, that Doe was harassing Female Student 1. Ex. 16, FS1 Dep. at 46:9-22. During his meeting with Female Student 1 and her parents (on December 7, 2018), and prior to speaking with Doe, Hess said that he believed Female Student 1. Ex. 16, FS1 Dep. at 49:10-20. Female Student 1's father pressured Hess to remove Doe and Male Student 1 from school. Ex. 1, Hess Dep at 176:12-177:4. After the male students were indeed removed, Hess contacted Female Student 1's father to notify him. *Id.*

G.     Female Students 2 and 4 testified that they were close to Hess and Female Student 3 worked in his office. Ex. 2, FS2 Dep. at 43:12-44:13; Ex. 7, FS4 Dep. at 100:7-8; Ex. 5, FS3 Dep. at 39:18-40:9, 41:1-3.

H.      Female Student 3's first statement did not inculpate Doe. Stip. #6; Defendant's Ex. 1, DX 102. Hess did not take notes during his first interview with Female Student 3. Ex. 1, Hess Dep. at 148:8-18.

I.      Further, Female Student 3 testified that she did not remember Doe saying that he wanted to engage in any sexual acts with Female Student 1. Ex. 5, FS3 Dep. at 58:1-14. She provided a second statement which inculpated Doe. Stip. #8; Defendant's Ex. 1, DX 103. Female Student 3 had motive for getting Doe kicked out of school. Female Student 3's boyfriend was jealous of her relationship with Doe. Ex. 5, FS3 Dep. at 93-97, 106-107, 130-131; Ex. 20, DX 105. The jealousy was causing problems in their relationship. *Id.* Female Student 3 even texted Doe beseeching him not to tell anyone on his wrestling team that they had hung out the night before so as to avoid any issues with her boyfriend. *Id.*

J.      Female Student 4 testified that Female Student 1 told her to tell Male Student want that she could make him orgasm in five seconds. Ex. 7, FS4 Dep. at 13:7-21. Female Student 2 testified that Female Student 1 sent that message to Male Student 1 directly through Snapchat. Ex. 2, FS2 Dep. at 57:3-58:13, 118:12-22. Female Student 1 saved the orgasm Snapchat on her phone. *Id.* at 58:10-59:2. The orgasm Snapchat was sent at the end of November 2018. *Id.* at 60:5-11. The school, including Hess, knew about this because Female Student 1 reported it to Hess during her initial meeting with him. The school chose not to investigate. Ex. 2, FS2 Dep. at 68:2-17. Ex. 1, Hess Dep. at 156:14-157:10. This comment was not included in the Detailed Incident Report. Defendant's Ex. 1, DX 113.

K.      Female Student 5 testified that Doe and Female Student 1 were "very flirtatious towards each other" and that [Female Student 1] was flirting with [Doe] and had -- she liked him in a way." Ex. 8, FS5 Dep. at 13:1-19. Female Student 2 also testified that Female Student 1 flirted with Male Student 1 and Doe. Ex. 2, FS2 Dep. at 54:19-55:12. The flirting stopped in early December 2018 (the slapping incident was December 6, 2018). Ex. 2, FS2 Dep. at 55:20-56:5.

L.      Female Student 5 testified that in English class, her Doe, and Female Student 1 would all speak about sex. Ex. 8, FS5 Dep. at 26:16-27:2. Specifically, Female Student 1 discussed in English the sexual activities that she would do with her ex-boyfriend. *Id.* at 27:11-20.

M.      When asked about what Doe said sexually about Female Student 1, the only thing that Female Student 5 could remember that he allegedly said was "the more she says no, the more she makes me want to do it." Ex. 8, FS5 Dep. at 30:4-6; 32:3-5.

N.      Female Student 5 testified that one day at lunch in school "Female Student 1 was eating a Kit Kat, and Female Student 1 said, "Snapchat this to [Male Student 1]," and she was just sucking on the KitKat, trying to make it sexual, and Female Student 4 sent it to Male Student 1. Ex. 8, FS5 Dep. at 32:9-19.

O.      Female Student 5 testified that Female Student 1 asked Doe to stop, but that she did not witness her actually saying this to Doe; she only knew about it because Female Student 1 told her that she made the request. Ex. 8, FS5 Dep. at 30:20-32:5. She then stated she could not remember one way or another. *Id.* This is contrary to her written statement. Defendant's Ex. 1, DX 123.

P.      According to Defendant's SR&R "Sexual Harassment…includes…requests for sexual favors." Defendant's Ex. 17 at 16. Female Student 1 communicated to Male Student 1 that she could make him orgasm quickly. Ex. 2, FS2 Dep. at 16:12-22:15; Ex. 7, FS4 Dep. at 13:7-21. The whole school was talking about the conversation in the same timeframe that the allegations against Male Student 1 and Doe arose. Ex. 2, FS2 Dep. at 16:12-19:15. Additionally, Female Student 1 asked Female Student 4, during lunch at school, to take a video of herself licking a KitKat and to send the video to Male Student 1. Ex. 7, FS4 Dep. at 86:13-87:14. Female Student 1 admitted to sending Snapchats of herself in a "shorts and a bra." Ex. 16, FS1 Dep. at 90:19-91:4. Female Student 5 also testified that Female Student 4 told her that Female Student 1 would send Snapchats of herself in a state of undress to Male Student 1. Ex. 8, FS5 Dep. at 62:3-20. During her deposition, Female Student 1, however,

denied saying directly or indirectly to Male Student 1 that she could make him orgasm in three seconds and claimed it was a misunderstanding. Ex. 16, FS1 91:5-93:5. Her credibility is in question.

Q.      Female Student 5 testified that female students talk about sexual topics at school and that "it is definitely common for, like, other females to talk about -- talk to males about sexual experiences and things they have done." Ex. 8, FS5 Dep. at 58:16-59:9. She continued "that's [j]ust how we are in high school...the atmosphere and how students -- how students like having the opposite sex's attention." *Id.* Female Student 4 corroborated that people at school generally would talk about sexual topics. Ex. 7, FS4 Dep. at 31:5-10. Female Student 4 further stated Female Student 1 and Female Student 2 would talk to her about sexual topics. Ex. 7, FS4 Dep. at 34:16-35:22, 42:1-13.

R.      The Board's severe punishment of Doe was very hard on Female Student 1. Ex. 2, FS2 Dep. at 32:22-40:1, 101:22-102:18.

S.      Statistical evidence shows that since November 2010, approximately forty-eight male students were accused of sexual misconduct and all but two of those students have subsequently been found to have violated school rules and been punished. During that same period, only two female students were found responsible for sexual misconduct and in neither of those instances were the accusers male students. Ex. 18, DX 163. Additionally, "data for students who have been suspended or recommended for expulsion in FCPS demonstrates that there is a significant negative academic impact on these students. In addition, data indicates significant disproportionality with males…[who were] suspended at rates much higher than represented in the overall population." Ex. 19, JDOE_0000491.

## ARGUMENT

## I.      The School Board Violated Doe's Title IX and Equal Protection Rights

The School Board discriminated against Doe because of his sex. Specifically, the Board used procedures that stacked the deck against Doe, because he is a male, in such a way that he could not and did not receive a fair hearing. Moreover, that Doe was punished at all, and certainly the degree to

which he was punished, was because he is a male. A similarly situated female was not even investigated for similar conduct.

Doe's claims under Title IX and the Equal Protection Clause of the Fourteenth Amendment are based upon the selective enforcement and erroneous outcome theories recognized by several courts. These theories were initially adopted in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) and are followed by a number of other courts. *See, e.g., Doe v. Miami University,* 882 F.3d 579, 589 (6th Cir. 2018); *Doe v. Marymount University,* 297 F. Supp. 3d 573, 582 (E.D. Va. 2018). The Seventh Circuit recently adopted a separate and simpler test based upon the text of Title IX itself: whether a school discriminated against a student "on the basis of sex." *Doe v. Purdue,* No. 17-3565, Slip Op. at 25, 2019 U.S. App. LEXIS 19464, *33 (7th Cir. 2019) (quoting from 20 U.S.C. § 1681(a)). The Fourth Circuit has not yet directly addressed its favored approach.[3] Regardless, Doe's claims pass either test.

### a. The Board reached an erroneous outcome when it punished Doe for sexual harassment

Under the *Yusuf* erroneous outcome theory, Doe must show evidence casting doubt on the accuracy of the disciplinary action against him and show that gender bias was a motivating factor for the erroneous finding. 35 F.3d at 715. Doe has a number of avenues to attack the accuracy of the proceedings, such as showing procedural flaws in the investigatory and adjudicative processes, showing inconsistencies in the decision, and challenging the reliability of the evidence, *e.g.* the failure of a school official to investigate or report exculpatory material. *Marymount,* 297 F. Supp. 3d at 584.

---

[3] In *Doe v. Loh,* 767 Fed. Appx. 489 (4th Cir. 2019), the Fourth Circuit affirmed the dismissal of a Title IX action and noted that the district court applied *Yusuf* test. That court did not, however, adopt the multiple theories approach, but simply held that the plaintiff had not sufficiently plead that appellees were motivated by gender bias, which is also consistent with the *Purdue* test. Likewise, an *en banc* panel of the Fourth Circuit adopted a district court's Title IX analysis that, while citing to *Yusuf,* did not mention or apply the various Title IX theories from the Second Circuit case. *Brzonkala v. Va. Polytechnic Inst. & State Univ.,* 169 F.3d 820, 827 n.2 (4th Cir. 1999) (*aff'd* on other grounds, *United States v. Morrison,* 529 U.S. 598, 601, 120 S. Ct. 1740, 1745 (2000)).

Although some deficiencies may appear insignificant in isolation, taken together they may show that the process used against Doe was flawed. *Id.*

### 1.    *Faults in the investigation and hearing*

Here, Doe maintains his innocence, Ex. 3, Pl. Dep. at 175:17-176:1 and has pointed to a number of procedural deficiencies in his disciplinary proceedings. The disciplinary actions started when Female Student 1 made her complaint to Hess. Hess, only two-years into his job, was the only person to ever interview witnesses and evaluate their credibility. He failed to make even the most elementary inquiries of the witnesses against Doe and failed to give Doe a fair chance to make his case.

In investigating Female Student 1's allegations, Hess only asked for students to make written statements if they had inculpatory evidence against Doe. RSUF 19. Students who made exculpatory statements, were effectively ignored. For instance, when Female Student 5 initially went to Hess to provide a statement that did not inculpate Doe, Hess took little notice of her statement and sent her on her way. RSUF 19(a). When she came back the next week, however, to change her story, Hess asked her to write a statement and failed to so much as inquire as to whether anyone had pressured her to change her story (they had). *Id.* Female Student 1 had repeatedly texted Female Student 5, encouraging her to amend her statement. RSUF 58. After she did so, Female Student 1 rewarded her with a Snickers bar. *Id.* Hess never even inquired as to why witnesses were coming to him directly or if there was any coordinated effort. RSUF 9.

Hess also met with Female Student 1's parents before interviewing Doe. At that meeting, it was clear that his mind was made up; he told the parents that Doe was harassing Female Student 1 and that he believed her, before even hearing Doe's account or interviewing most of the witnesses in the case. AMF F. They pressured Hess to remove Doe and Male Student 1 from the school. AMF F.

When Hess did interview Doe, he admittedly had already made up his mind that the student was culpable for charges against him. Indeed, he testified that the only way he would have believed Doe would have been if he would have admitted some fault. RSUF 60.

When Doe was brought before the Hearings Office, his process was determined without a presumption of innocence and without any burden of proof, even the preponderance of the evidence standard, despite the fact that such a standard is mandated by the United States Department of Education in Title IX proceedings ("2017 Guidance").[4] In deciding whether to suspend Doe and refer him to the Hearings Office, Eline did not investigate the allegations. Instead, he relied upon Hess's credibility determinations. RSUF 60.

The hearing itself was flawed as well. Indeed, immediately before it began, Eline had an *ex parte* conversation with Forrest and notified her that both parents sometimes could be aggressive. RSUF 56.

### 2.   *Gender bias*

Gender bias can be shown in a number of ways, including statements by members of a disciplinary tribunal or school officials and patterns of decision making that tend to show the influence of gender. *Miami University,* 882 F.3d at 593; *see also Marymount,* 297 F. Supp. 3d at 585 (statistical evidence can show gender bias). Consequently, while the Board is correct that Title IX does not permit

---

[4]   Available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf (last accessed Aug. 13, 2019) at 5. Previously, OCR required the preponderance of the evidence standard in a 2011 *Dear Colleague Letter* ("2011 DCL"), Department of Education Office for Civil Rights. Apr. 2011. Available at:
https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf (last accessed Aug. 13, 2019). That letter was rescinded in 2017 and schools could choose between clear and convincing and preponderance of the evidence as interim guidance, pending the adoption of new regulations after forthcoming rule making. Those proposed regulations are currently undergoing a notice and comment period. 83 Fed. Reg. 61462, 61477 (2018). Like the 2017 interim guidance, the proposed regulations allow for either standard. While this applies to the Title IX count directly, it is also persuasive to show the requirement of a burden of persuasion as a matter of due process.

a disparate treatment claim, Def.'s Br. Summ. J. at 15, statistical evidence can show causation of gender being a motivating factor in the erroneous finding. *See, e.g., Yusuf,* 35 F.3d at 715-16 ("The allegation that males invariably lose when charged with sexual harassment at Vassar provides a verifiable casual connection similar to the use of statistical evidence in an employment case").  A defendant is not excused because any "discriminatory motivation does not come from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action." *Doe v. Columbia Univ.,* 831 F. 3d 46, 58 n. 11 (2d Cir. 2016).

The evidence of sex based discrimination is compelling. As previously discussed, Hess acted with remarkable bias when investigating Doe; bias that was on the basis of sex.

While Hess received little direct training on conducting investigations (the Board had curtailed investigation training in recent years) the training he did receive was infused with bias. For instance, he was instructed that because of the current "climate," Fairfax County Public Schools was under significant "[s]ignificant [s]crutiny." Training slides discussed the #Metoo movement, increased media attention, increases in lawsuits, fear of action by the Department of Education, and the impact of social media. RSUF 54, AMF B. Indeed, the slides specifically reference a prior action by the Office of Civil Rights against the district on a Title IX case.[5] The point was clear, to avoid financial loss or public criticism, favor the female accuser.

The culture of sex-based discrimination by the Board's schools is borne out in the statistics. Since November 2010 at least forty-eight male students were accused of sexual harassment or misconduct and all but two of them were found to have violated school rules and punished. During

---

[5] That one training slide mentions that investigations should be impartial is of little moment. The overall message of the slides shows clear bias in favor of female accusers, as was the case in *Columbia Univ.,* 831 F. 3d at 57-58, *Miami University,* 882 F.3d at 594, *Doe v. Baum,* 903 F.3d 575, 586 (6th Cir. 2018), and *Purdue,* 2019 U.S. App. LEXIS at 36.

that same period only two female students were found responsible for sexual misconduct or harassment; in each case their accuser was *not* a male student. AMF U. Moreover, there is a significant negative academic impact on students accused of a Title IX offense, which the Board knows significantly and disproportionally affect males. AMF S.

While the Board wishes to avoid liability by focusing on the self-serving testimony of employees, the training materials and statistics show that it has specifically fallen prey to the national pressures described in Doe's Second Amendment Complaint ¶ 67. When a recipient of federal educational funds "adopts, even temporarily, a policy of bias favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, [it] has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex." *Columbia Univ.,* 831 F.3d at 58 n. 11.

### b. The Board selectively enforced its sexual harassment policy against Doe on the basis of sex

Under the *Yusuf* approach, Doe must show that regardless of whether or not he was innocent of the charges against him, the severity of the penalty or the decision to instigate disciplinary proceedings was affected by gender. *Yusuf,* 35 F.3d at 715. In deciding whether enforcement is discriminatory, the Court may look to the Board's actions towards a female student who is similar in all material respects.[6] *S.C. Dep't of Mental Health*, 641 Fed. Appx 202, 210 (4th Cir. 2015) (applying Title VII). The comparator need not be identical match but more is needed than that they both were part of the same institution at the same time. *See Haywood v. Locke,* 387 Fed. Appx. 355, 359-60 (6th Cir.

---

[6] The Fourth Circuit has not held that a comparator, *i.e.* a similarly situated female student who was treated more favorably by the school, is necessary to succeed in a selective enforcement claim, but several district courts have applied such a requirement. *See Doe 2 v. Fairfax Cty. Sch. Bd.*, No. 1:18-cv-846, 2019 U.S. Dist. LEXIS 90084, at *16 (E.D. Va. 2019) (appeal pending) (*citing, e.g., Sheppard v. Visitors of Va. State Univ.*, No. 3:18-cv-723, 2019 U.S. Dist. LEXIS 70661, 2019 WL 1869856, at *4-5 (E.D. Va. 2019); *Streno v. Shenandoah Univ.*, 278 F. Supp. 3d 924, 932 (W.D. Va. 2017)).

2010) (applying Title VII). Doe's discipline was affected by sex, as previously discussed, and a similarly situated female student was treated more favorably.

> *School officials knew of and ignored materially analogous behavior from Female Student 1, an appropriate comparator*

Students in Fairfax County school are subject to the sexual harassment policy in the Student Rights and Responsibilities handbook ("SR&R"), adopted by the Board. That policy states that sexual harassment includes:

> unwelcome sexual advances, regardless of sexual orientation; requests for sexual favors; and other inappropriate verbal, electronic, or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment.

Def. Ex. 17 at 16, AMF P.

Female Student 1 requested sexual favors from Male Student 1. Moreover, she used words that, verbally and electronically, created an objectively offensive environment for her classmates. Though Hess was aware of her words, she was never disciplined. Indeed, she was not even investigated.

At a school event and on school premises, witnesses say that Female Student 1 directed Female Student 4 to tell Male Student 1 that she could quickly make him orgasm. AMF P. Later, again while at school, she directed her classmates to video her suggestively licking and eating a chocolate bar; she then sent the video to Male Student 1 by Snapchat. *Id.* She also admitted to sending a Snapchat of herself in a bra and shorts to Male Student 1.

School officials knew about the first instance; indeed, Female Student 1 admitted to Hess that she had caused the orgasm message to be sent to Male Student 1. Hess also testified that he was aware of suggestive electronic messages sent by Female Student 1 to Male Student 1. Even though these

were clearly requests for sexual favors and objectively offensive, Hess declined to investigate or discipline Female Student 1. RSUF 48

The Board disputes that Female Student 1 is an appropriate comparator because the messages to Male Student 1 were not unwelcome. Def.'s Br. Summ. J. at 17. In doing so, it ignores the plain language of their own sexual harassment policy and attempts to use judicial gloss to add a requirement that the sexually explicit communication be unwelcome.

The sexual harassment policy, however, is broader than the Board now wishes it to be: any requests for sexual favors are prohibited, welcome or otherwise. Indeed, the allegations against Doe were that he requested sexual favors from Female Student 1. For the purposes of the sexual favors clause of the sexual harassment policy, whether or not the request is welcome or offensive is immaterial.

Likewise, the final clause in the policy prohibits inappropriate verbal, electronic, or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment. Nowhere in that clause does it require that a complainant subjectively feel offended or that advances be unwelcomed. Instead, it focuses on the "environment" created by the words or behavior.

Here, Female Student 1 had *another* student convey a sexual message to Male Student 1 *at school*. She had other students video her *at school* ostensibly simulating a sex act on a candy bar before she sent the message to Male Student 1. Her words and actions were objectively offensive and affected the school environment. School officials were aware of at least some of her acts and chose not to act or further investigate.

If the Board wanted to require that for a student to be disciplined for sexual harassment, a request for sexual favors or other sexual communication or conduct be unwelcome or subjectively

offensive to the complainant it could have done so. Instead it chose a broader definition and punished Doe for alleged behavior that was materially analogous to the admitted behavior of Female Student 1.

The result here was that the Board approved a draconian punishment for Doe. He was kicked out of his school. He will have to disclose the finding to future schools and employers and he lost his college admission. Female Student 1 will not have to live with those consequences, even though she was similarly situated. Not only was she never punished, she was never even investigated.

### c.  The Board violated Doe's equal-protection rights

To succeed on his equal-protection claim, Doe must show that his comparator, Female Student 1, was treated more favorably than him without any rational basis for the treatment. *Miami Univ.,* 882 F.3d at 585.  As previously discussed, Female Student 1 was treated preferably to him when the Board decided not to apply the sexual harassment policy to her actions. There was no reasonable basis for them to do so, and the Board suggests none it its brief. Consequently, for the same reason that summary judgment should be denied as to the selective enforcement claim, it should also be denied as to the equal-protection claim.

## II.  Doe's Due Process Rights Were Disregarded As Shown by Bias, a Lack of Presumption of Innocence, and a Lack of Notice

Doe's due process claim is primarily based on three failings by the Board: (1) the system failure of its procedures that resulted in the bias in Doe's proceedings; (2) the Board failure to adopt an evidentiary standard or even presume Doe was innocent; and (3) that the Hearing Office partially based its decision on a statement by Male Student 1, which was not provided to Doe before his hearing.[7]

---

[7] Doe continues to believe that he was also denied the right to some form of cross-examination and to know the identities of his accusers so that he might show why they would be biased against him. Nonetheless, those issues have already been briefed in detail and Doe will not further repeat his arguments here. *See* Dkt. Nos. 5, 33.

Public school students subject to disciplinary actions are entitled to due process. *Goss v. Lopez,* 419 U.S. 565, 577 (1975). At a minimum, schools must provide notice and a hearing before a short suspension of ten days or less. *Id.* at 579. More severe discipline requires more due process protections. *Id.* The factors considered in determining whether an individual has received the process they are due are (1) the private rights affected by the official action; (2) the risk of an erroneous depravation of those rights because of procedural flaws; (3) the probable value of additional or substitute procedural safeguards, and (4) any governmental interests at play, such as fiscal and administrative burdens. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

The test is flexible, but certain procedural safeguards are cornerstones to any fair proceeding. "The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *Goldberg v. Kelley,* 397 U.S. 254, 267 (1970); *see also, Heyne v. Metro. Pub. Sch.,* 655 F.3d 556, 566 (6th Cir. 2011) (stating that a fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner). Here, Doe received neither.

Additionally, *Goss* makes clear that notice and an opportunity to provide a meaningful response are the *minimum procedures* required for short suspensions of ten days or less and that *more formal procedures may be required for greater sanctions. Goss*, 419 U.S. at 584 (emphasis added). Here, Doe was removed from his high school during his last semester of school (second semester of senior year) and placed into an alternative behavioral school. This is a much more severe sanction of a short suspension of ten days or less. More formal procedures were owed.

The Board repeatedly claims that any due process failings were immaterial because of the evidence against Doe. It is wrong. The discovery in this case showed a number of witness inconsistencies and biases. Those inconsistencies should be resolved at trial not on summary judgment.

### a. The bias against Doe

The Board engaged in a number of biased and ex parte acts that tainted the proceedings and robbed Doe of his due process rights. Due process requires a fair hearing before a fair tribunal, with the absence of actual bias against a party. *See In re: Murchison*, 349 U.S. 133, 136 (1955). The law endeavors "to prevent even the probability of unfairness." *Id.* The requirement of neutrality has been jealously guarded by the Supreme Court. *See Marshall v. Jericho, Inc.*, 446 U.S. 238, 242 (1980). This requirement applies to administrative tribunals, and courts. See *Stivers v. Pierce*, 71 F.3d 732 (9th Cir. 1995) (*citing Withrow v. Larkin*, 421 U.S. 35, 46, (1975) and *Gibson v. Berryhill*, 411 U.S. 564, 578-79 (1972). The Department of Education requires "impartial investigation of [sexual misconduct] complaints." 2017 Guidance at 3.

"Unconstitutional bias may be shown through evidence that the adjudicator "had it 'in' for the party for reasons unrelated to the officer's view of the law." *Stivers*, 71 F.3d at 744; see also *Miami Univ.*, 882 F.3d at 579 (holding that a disciplined student stated a cause of action for violation of his due process rights when allegations showed that one of three hearing officers was biased based on comments made in a hearing that showed she prejudged the evidence against the accused). *Ex parte* communications between a party and the fact finder are among the most serious of incursions into the fairness protected by due process. *See William Jefferson & Co v. Bd. of Assessment & Appeals No 3 for Orange County*, 695 F.3d 960, 966 (9th Cir. 2012) (citing *Camero v. United States*, 375 F.2d 777, 781 (Ct. Cl. 1967)).

"In attempting to make out a claim of unconstitutional bias, a plaintiff must overcome a presumption of honesty and integrity on the part of decision makers. He must show that the adjudicator has prejudged, or reasonably appears to have prejudged, an issue." *Stivers*, 71 F.3d at 744 (internal citations and quotations omitted). Plaintiffs can demonstrate due process violations due to

25

bias either by showing actual bias or that the decision maker's interest in the result caused an appearance of partiality. *Id.* Here, Doe can show both.

As previously discussed, Hess made the credibility determinations that determined Doe's fate. That he decided Doe was guilty before so much as hearing Doe's side of the story, is itself dispositive of bias. AMF F. Moreover, he only asked students to make written reports if they provided an inculpatory oral statement, RSUF 19, he failed to report exculpatory evidence, *id.*, he failed to investigate whether witnesses were coordinating their stories or even ask them why they would come to him voluntarily, RSUF 19, he even failed to even investigate Female Student 1's vulgar behavior. RSUF 48. The Board cannot say that such bias was cured by the later acts of Eline, Forrest, or the Board itself, as each declined to do their own investigation and instead relied upon Hess' finding. Hess' bias infected the entire process and resulted in Doe never having a meaningful opportunity to be heard.

### b. The Board's lack of an evidentiary standard or presumption of innocence

The SR&R fails to presume an accused student innocent and fails to hold a school official or hearing officer to a minimum burden of proof, such as preponderance of the evidence. Def. Ex. 17, DX 58; RSUF 60. The *Mathews* balancing test weighs heavily in favor of finding that an accused student is entitled to a presumption of innocence and a set burden of proof before his hearing. *See* 424 U.S. at 335.

The private right at issue is substantial, the student's right to continue with his education in such a way that allows him to obtain the educational and career goals that will largely affect his entire future and livelihood. Without a clear delineation of a standard that must be met before the Board rescinds or amends the student's access to education, there is a hefty chance that the student will be

wrongly deprived of the private right. Indeed, the lack of a standard and simply requiring that the administrator feels comfortable with the decision encourages arbitrary decision-making.

Adding the additional safeguard here would discourage arbitrary decision-making by giving a lay person, an easily understood benchmark. Jurors, for instance, are commonly instructed that on issues of preponderance of the evidence, they must find the disputed fact by the greater weight of the evidence. Finally, there is little to no governmental burden by imposing such a burden: schools and other administrative bodies commonly use the preponderance of the evidence standard.

The *Mathews* test is flexible and situation dependent. Consequently, the Court should look to the Title IX instructions from the Department of Education as persuasive when determining whether, in the educational context, a student is entitled to a minimum evidentiary standard. *See Biediger v. Quinnipiac Univ.*, 691 F.3d 85 (2d Cir. 2012) (deferring to the Department of Education in interpreting Title IX); *see also* Adrian Vermeule, *Deference and Due Process*. 129 Harv. L. Rev. 1890 (2016).  That the Department of Education requires at least a preponderance of the evidence standard in Title IX proceedings, 2017 Guidance at 5, should be instructive in weighing the factors of the *Mathews* test in determining whether the Board was required to adopt such a standard on procedural due process grounds.

### c.  Doe's lack of notice of Male Student 1's statement

The Board agrees that Doe was entitled to notice and an opportunity to be heard. As he has previously described, he did not know the identity of many of the witnesses against him, which would have allowed him to provide impeachment evidence going to their bias and credibility. RSUF 15. More specifically, even at the hearing, he did not have the lengthy and self-serving statement written by Male Student 1. RSUF 13. Forrest did have this statement at the hearing and relied upon it in her decision letter. RSUF 14. While some of the information in that letter was reported in the DIR, specifically that Male Student 1 accused Doe of making a lude comment about Female Student 1, most of it was not.

Doe was not given a redacted version of the statement until January 3, 2019, almost two-weeks after his hearing. That Doe was not provided with this statement until after the hearing made it impossible for his to rebut the evidence in the letter or show the student's bias.

### d.  Doe was not required to appeal the Board's decision to the circuit court

The Board claims that Doe's 42 U.S.C. § 1983 claims were not ripe unless and until the State failed to provide due process, including an appeal of the Board's decision to the circuit court, pursuant to Va. Code Ann. § 22.1-87. Not so.

As an initial matter, should Doe have made such an appeal, then he would have been left with a federal right without a remedy. The Board has argued (and continues to argue on appeal) that an appeal under § 22.1-87 is preclusive of a § 1983 lawsuit in other litigation. *See Doe 2,* 2019 U.S. Dist. LEXIS 90084, *5-10, (the Board maintains this position on cross-appeal, *See Doe 2 v. Fairfax County School Board,* Case No. 19-1717 (4th Cir. 2019)). Moreover, this Court has previously held that a proceeding under § 22.1-87 was a civil proceeding and covered by Virginia's res judicata statute. *Davison v. Rose,* 2017 U.S. Dist. LEXIS 121076 (E.D. Va. 2017).

The Supreme Court recently addressed a similar situation in a takings case. It held that the "Civil Rights Act of 1871, after all, guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials, and the settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) (internal citations omitted). The Court also pointed out that "the general rule is that plaintiffs may bring constitutional claims under §1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available." *Id.* at 2172-73. Citing *McNeese v. Board of Ed. for Community Unit School Dist. 187*, 373 U. S. 668, 672 (1963), the *Knick* Court further observed that it would defeat the purpose of §1983 "if we held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court." *Id.* at 2173.

Just as importantly, § 22.1-87 does not provide Doe with an appropriate remedy here. That statute considers the appeal on the record developed by the Board and without discovery. It also has a heightened burden: Doe would have been required to show that the Board exceeded its authority, abused its discretion, or acted arbitrarily or capriciously. *Id.* Doe's claims arise from discrimination and bias, which were developed outside of the record and using the discovery process available to plaintiffs in civil rights lawsuits. Doe would not have been able to meet such a high standard without such tools. Indeed, it is noteworthy that the Board was unable to point to a single successful action brought by a student under § 22.1-87. Virginia has a perfectly good court system, but Doe desired, and was entitled to, a federal forum for this federal dispute.

### III. Doe is Entitled to a Judgment Against the School Board Because it Adopted Its Employees' Conduct and Because of the Board's Admissions to this Court

*Monell* and it progeny support Doe's analysis that he is owed § 1983 constitutional damages for the harm inflicted on him by the Board. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). *Monell* held that:

> although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited *pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.*

*Monell*, 436 U.S. at 690-91 (emphasis added); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1980); *City of St. Louis Park v. Praprotik*, 485 U.S. 112, 127 (1988); *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523-24 (4th Cir. 2000). The Board's policies of relying on its agents for its investigations and hearings for student misconduct makes it liable because the Board is aware of the due process violations and condones it by affirming the Hearings Office findings nearly all of the time. Ex. 18, DX 163. Additionally, the Board was on notice and indeed participated in the due process violations. It

wrote and ratified the SR&R which dictates the policies and procedures. Hess, Eline, and Forrest all acted within the authority given to them by the Board. The Board's liability is based upon a "system failure" not merely "because it employs tortfeasor." *Monell*, 436 U.S. at 658. The violations are the "official policy" and/or "so permanent and well settled as to constitute a 'custom or usage'" of the Board. Because this case is not solely based on principles of *respondeat superior*, his claims survive.

### The Board made a binding judical admission before this Court that estoppes it from now challenging municipal liability

A "judicial admission is a representation that is 'conclusive to the case.'" *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004). Judicial admissions include "intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish [a] waived conclusion of law. *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014). "In addition to the controlling precedent recognizing that both stipulations and assertions in a pleading generally constitute judicial admissions, the Fourth Circuit reiterated in *Minter* that even a lawyer's oral statements before the Court can constitute binding judicial admissions if they are 'deliberate, clear, and unambiguous.'" *VIA Design Architects, PC v. US Dev. Co.*, 2014 U.S. Dist. LEXIS 156075, at *17 (E.D. Va. Nov. 4, 2014) (quoting *Minter*, 762 F.3d at 347). Here, the Board's attorney stated in Court that municipal liability will not be at issue. Based on that judicial admission, the Board cannot now argue for lack of municipal liability.

On June 28, 2019, counsel for the Board and for Doe argued the Board's motion to dismiss before this Court. Counsel for Doe argued that the declaratory judgment claim should not be dismissed because of the Board's likely municipal liability arguments under § 1983. June 28, 2019 Hearing Tx. at 12:15-14:13. Counsel for the Board responded to that argument by stating that "[counsel for Doe] made some reference about how the fact that the municipal liability makes a difference here, I don't understand that. School boards don't have qualified immunity under – in

Section 1983 cases because municipalities are liable without the offensive qualified immunity. *Id.* at 15:21-16:5. The Court subsequently dismissed the declaratory judgment claim. *Id.* at 18:10-19. The Board's representation regarding municipal liability was "deliberate, clear, and unambiguous" as required by *Minter.* 762 F.3d at 347. Due to the Board's judicial admission that municipal liability would not be at issue in this matter, the Board is estopped from arguing that Counts III and IV should be dismissed due to lack of municipal liability. Those Counts should remain.

## CONCLUSION

For the foregoing reasons, the Board's motion for summary judgment should be denied.

Dated: August 13, 2019                                    Respectfully submitted,


                                                    By: /s/ Jesse R. Binnall
                                                        Jesse R. Binnall, VSB No. 79292
                                                        Lindsay R. McKasson, *pro hac vice*
                                                        Harvey & Binnall, PLLC
                                                        717 King Street – Suite 300
                                                        Alexandria, VA 22314
                                                        Telephone: (703) 888-1943
                                                        Facsimile: (703) 888-1930
                                                        jbinnall@harveybinnall.com
                                                        lmckasson@harveybinnall.com
                                                        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2019, I filed the foregoing using the

Court's CM/ECF system, which will provide notice of the foregoing to all counsel of

record.

By: /s/ Jesse R. Binnall
Jesse R. Binnall, VSB No. 79292
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA  22314
Tel: (703) 888-1943
Fax: (703) 888-1930

*Counsel for Plaintiff*