IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-65 (AJT/MSN) |
| ) | |
| FAIRFAX COUNTY SCHOOL BOARD, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Doe claims that Defendant Fairfax County School Board (the "School Board") violated his constitutional rights by concluding that he had sexually harassed a classmate and, based on that determination, suspending him and then reassigning him to an alternative high school. Presently pending is Defendant's Motion for Summary Judgment [Doc. No. 73] as to Plaintiff's remaining claims for violations of Title IX (Count I), and the Fourteenth Amendment's Due Process (Count III) and Equal Protection (Count IV) Clauses.[1] The Court held a hearing on the Motion on September 6, 2019, following which it took the Motion under advisement. For the following reasons, the Motion is GRANTED and this action is DISMISSED.

### I. Background

Unless otherwise noted, the following facts are undisputed:

In December 2018, Plaintiff was a high school senior attending Robinson Secondary School ("Robinson") in Fairfax County, Virginia. Defendant's Statement of Undisputed Material Facts ("SUF") ¶¶ 1-2. On December 6, 2018, Robinson Assistant Principal Travis Hess was

---

[1] The Court previously dismissed Plaintiff's First Amendment (Count II) and declaratory judgment (Count V) claims. *See* [Doc. No. 68].

1

informed by a female student ("Female Student 1") that she had been sexually harassed by Plaintiff and another male student ("Male Student 1"). SUF ¶ 4. Female Student 1's harassment complaint was precipitated by an interaction with Plaintiff and Male Student 1 that same day, where Male Student 1 slapped her on the buttocks while Plaintiff was present. *See* SUF ¶¶ 3-4. Female Student 1 told Hess that Plaintiff and Male Student 1 had been sexually harassing her for about a month prior to this incident, and provided a written statement saying the same. SUF ¶ 4. Female Student 1 was accompanied by a friend ("Female Student 2"), who also provided a written statement saying that Plaintiff had made repeated sexual comments to Female Student 1 despite being told to stop. *See* SUF ¶ 4; Def's. Ex. 1, DX 125.

Hess initiated an investigation in response to Student A's harassment complaint. As part of his investigation, Hess retrieved security camera footage of the December 6, 2018 incident. SUF ¶ 5. He also continued to speak with various witnesses, including Female Student 1, Male Student 1, and Female Students 3 and 4, who all confirmed the alleged harassment, including the December 6, 2018 incident and other harassing conduct referenced in Female Student 1's complaint. *See* SUF ¶¶ 6-13. Each time Female Student 1 was interviewed, she stated that Plaintiff had engaged in unwanted sexual conduct towards even though she had repeatedly told him to stop. *See* SUF ¶¶ 4, 7, 12. Hess also spoke with Female Student 5, who said she had never heard Plaintiff say anything sexually inappropriate. SUF ¶ 10. A few days later, Female Student 5 spoke to Hess a second time, and admitted that she had, in fact, heard Plaintiff make sexual comments about Female Student 1. SUF ¶ 22.

On the morning of Monday, December 10, 2018, Hess and the Plaintiff participated in a telephone conference with the Plaintiff's parents during which Hess advised Plaintiff and his parents of the allegations against him. SUF ¶ 14. Plaintiff denied that he had sexually harassed

2

Female Student 1 and voluntarily provided a written statement to Hess in which he reiterated that he had not harassed Female Student 1, though he had "told her ... she's attractive & that [he] would hook up with her," "flirted with her," "put [his] arm around her," "and poked her in class." SUF ¶¶ 14-15. That same day, based on Hess's investigation and his resulting determination that the allegations against Plaintiff were credible and Plaintiff's denials were not, Plaintiff was suspended for 10 days for violating the school's sexual harassment policy[2] and the matter was referred to the Division Superintendent for consideration of further discipline. SUF ¶¶ 16-17. Hess informed Plaintiff's mother that he was being suspended, and Robinson Principal Matthew Eline drafted a letter to Plaintiff's parents informing them of the suspension and of the need to schedule a disciplinary hearing, which was emailed to them on December 11, 2018. SUF ¶¶ 17-18. Hess also prepared a Detailed Incident Report supporting the referral to the Hearings Office, which was submitted to the Hearings Office on December 11, 2018.[3] SUF ¶¶ 19-20.

On December 21, 2018 at 10:00 a.m., Plaintiff, his parents, Hess, and Eline participated in a disciplinary hearing conducted by Lisa Forrest, a hearing officer for the Division Superintendent. SUF ¶ 27. In advance of the hearing, Plaintiff and his parents received a letter from the head of the Division Superintendent's Hearings Office about the hearing as well as a Discipline Packet, which included copies of the Detailed Incident Report, Eline's December 10, 2018 letter to Plaintiff's parents, and the written statements of Plaintiff and Female Students 1, 2,

---

[2] The school's sexual harassment policy is set forth in the student Rights & Responsibilities Handbook (the "Handbook"), which the Plaintiff and his mother received at the beginning of the 2018-2019 school year. SUF ¶¶ 44-45. The Handbook defines sexual harassment to include "unwelcome sexual advances, regardless of sexual orientation; requests for sexual favors; and other inappropriate verbal, electronic, or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment." Def.'s Ex. 17 at 16, 23.

[3] As Plaintiff notes, there are some facts pertaining to Hess's investigation that he did not reference in the Detailed Incident Report. Response to Statement of Undisputed Facts ("RSUF") ¶ 19. Defendant explains that these facts were not included because the report was not intended to be a "description of the investigation" or a "summary of witness statements," but was instead intended to be a "clear and concise summary of the findings of the investigation" and an "explanation of why the student was referred" to the Hearings Office. See Def.'s Ex. 5 at 27.

3, 4, and 5 with their names redacted. SUF ¶¶ 23-26. Plaintiff acknowledged at the outset of the hearing that he was being accused of sexual harassment. SUF ¶ 27. Plaintiff was not permitted to question his accusers or the witnesses against him, but he and his parents were given an opportunity to present his case, including by submitting statements of two character witnesses. SUF ¶ 27. Forrest questioned Hess at the hearing about the possibility of witness collusion, and Hess answered that he had interviewed all witnesses separately, except for Female Student 2, who he interviewed with Female Student 1, and found them to be credible. SUF ¶ 58. At the conclusion of the hearing, Forrest confirmed Plaintiff's suspension and extended it until she issued a written decision, which she said would be during the next ten school days. SUF ¶ 28. Forrest's written decision was issued on January 10, 2019, explaining her finding that Plaintiff had committed a serious offense in violation of Defendant's sexual harassment policy and would be reassigned for the remainder of his senior year to Mountain View High School ("Mountain View"), an alternative educational setting. *See* SUF ¶ 31.

Plaintiff appealed Forrest's decision to the Fairfax County School Board, which considered the appeal during a February 7, 2019 meeting, at the conclusion of which it voted to confirm the disciplinary decision and rationale of the Hearings Office. SUF ¶¶ 32, 38. Plaintiff and his parents did not seek review of the School Board's decision in Fairfax County Circuit Court under Virginia Code § 22.1-87. SUF ¶ 39. Plaintiff, who graduated from Mountain View on June 11, 2019, is no longer an FCPS student. SUF ¶¶ 41-42. Plaintiff had been conditionally admitted to a college on December 14, 2018, but his conditional admission was subsequently withdrawn by letter dated May 28, 2019. SUF ¶¶ 42-43.

On January 16, 2019, Plaintiff filed his original Complaint [Doc. No. 1], which alleged that Defendant's handling of the sexual harassment allegations against him violated his rights

4

under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and also alleged claims under 42 U.S.C. § 1983 ("Section 1983") for violations of his rights under the First Amendment and the Fourteenth Amendment's Due Process Clause. On January 23, 2019, the Court denied Plaintiff's motion for a temporary restraining order seeking his restoration to Robinson and its wrestling team, finding that Plaintiff had failed to demonstrate a likelihood of success with respect to any of his three claims. [Doc. No. 15]. Plaintiff subsequently filed an Amended Complaint [Doc. No. 22], which added a Section 1983 claim for violations of his rights under the Fourteenth Amendment's Equal Protection Clause to the claims asserted in the original Complaint. On May 23, 2019, Plaintiff filed a Second Amended Complaint [Doc. No. 53], which expanded on the allegations in the previously-filed complaints and added a declaratory judgment claim. By Order dated June 28, 2019 [Doc. No. 68], the Court dismissed Plaintiff's First Amendment and declaratory judgment claims.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48.

A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. The nonmoving party "cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 331 (4th Cir. 1998) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (internal quotations omitted)).

### III. Analysis

#### A. Title IX (Count I) and Equal Protection (Count IV) Claims

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause "guarantees equal laws, not equal results." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979). Based on that proposition, within the context of a gender-based discrimination claim, government action whose effects burden one sex more than another does not violate the Equal Protection Clause absent a showing of intentional or purposeful discrimination. *Id.* at 274. Accordingly, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is

similarly situated *and that the unequal treatment was the result of intentional or purposeful discrimination.*" *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (emphasis added).

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Title IX's prohibition is enforceable through an implied private right of action, and as such, 'is understood to bar the imposition of [educational institution] discipline where gender is a motivating factor in the decision to discipline.'" *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 581-82 (E.D. Va. 2018) (Ellis, J.) (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016)).[4] Like the Equal Protection Clause, Title IX does not permit a claim based on "disparate impact." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 731-32 (E.D. Va. 2015) (Ellis, J.).

Courts have recognized two theories that could support an Equal Protection or Title IX claim in student-discipline cases: a "selective enforcement" theory and an "erroneous outcome" theory. *See Doe 2 v. Fairfax Cty. Sch. Bd.*, 384 F. Supp. 3d 598, 606-07 (E.D. Va. 2019) (Brinkema, J.) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)), *appeal docketed*, No. 19-1702 (4th Cir. July 2, 2019); *Sheppard v. Visitors of Va. State Univ.*, 2019 WL 1869856, *4 (E.D. Va. Apr. 25, 2019) (Hudson, J.). "[U]nder the 'erroneous outcome' theory, a plaintiff can claim that he or she is innocent and was 'wrongly found to have committed an offense,'" while "under the 'selective enforcement' theory, 'regardless of the student's guilt or innocence,' a plaintiff can argue that 'the severity of the penalty and/or the decision to initiate the proceeding

---

[4] "[T]he Fourth Circuit has not yet addressed the applicability of Title IX in the context of student disciplinary proceedings." *Marymount*, 297 F. Supp. 3d at 582. However, courts in this district "have done so and have permitted students . . . to challenge [school] disciplinary actions" under Title IX based on a variety of legal theories. *Id.*

7

was affected by the student's gender.'" *Doe 2*, 384 F. Supp. 3d at 606-07 (quoting *Yusuf*, 35 F.3d at 715).

### A. Selective Enforcement

The Fourth Circuit has not yet addressed whether *Yusuf* requires a comparator to sustain a selective enforcement claim, but the Court in other cases in this district has held that it does. *Id.* at 608-09 (citing *Sheppard*, 2019 WL 1869856, at *4–5 (dismissing a selective enforcement claim brought by a male student for failure to allege that similarly situated female students who engaged in the same conduct were treated more favorably)). Thus, to support a Title IX or equal protection[5] claim under the selective enforcement theory, a "male plaintiff 'must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the [school].'" *Id.* at 608 (quoting *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 931 (S.D. Iowa 2018)); *see Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016). For their circumstances to be considered "sufficiently similar," two individuals "*must have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it." *Sheppard*, 2019 WL 1869856, at *5 (internal citation and quotation marks omitted) (emphasis in original). Where an accused student seeks to use their accuser as a comparator, the two can be compared to show selective enforcement "only if they both initiate or attempt to initiate a complaint against each other." *Doe 2*, F. Supp. 3d at 608 (citing *Rossley*, 342 F. Supp. 3d at 931).

Here, the only female comparator Plaintiff identifies in support of his selective enforcement claims is Female Student 1, his accuser, who was not investigated or disciplined for

---

[5] *Doe 2* dealt solely with a Title IX claim, but the necessity of identifying a comparator applies equally with regard to equal protection claims. *See Willoughby v. Virginia*, 2017 WL 4171973, at *5 (E.D. Va. Sept. 20, 2017) (Lauck, J.).

8

sending sexually suggestive messages to Male Student 1. Plaintiff argues that this conduct was "materially analogous" to the conduct he was punished for because it was violative of Defendant's sexual harassment policy, which prohibits "unwelcome sexual advances, regardless of sexual orientation; requests for sexual favors; and other inappropriate verbal, electronic, or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment." [Doc. No. 84 at 25-27]. But it is undisputed that unlike Female Student 1, who complained to school administrators about Plaintiff's repeated sexual advances towards her, which she and several witnesses characterized as unwelcome, *see* SUF at ¶¶ 4, 6-13, Male Student 1 welcomed Female Student 1's sexually suggestive messages and neither he nor anyone else complained about them to school officials, *id.* at ¶ 48. For these reasons, Female Student 1 is not an appropriate comparator, and Plaintiff's selective enforcement claims under Title IX and the Fourteenth Amendment's equal protection clause fail as a matter of law. *See Doe 2*, F. Supp. 3d at 609 n.6 (finding that the plaintiff's accuser was not an appropriate comparator even though she and the plaintiff had both touched each other because the plaintiff "never made any complaints against" the accuser); *Rossley*, 342 F. Supp. 3d at 933 (holding that an accused student and an accuser can be compared to show selective enforcement only if they both initiate or attempt to initiate a complaint against each other).

### B. Erroneous Outcome

In order to make out an erroneous outcome claim under Title IX or the Equal Protection Clause, a plaintiff, "in addition to claiming innocence," must "have evidence in the record (1) sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) establishing a particularized causal connection between the flawed outcome and gender bias." *Doe 2*, 384 F. Supp. 3d at 607 (citing *Doe v. Miami Univ.*, 882 F.3d 579, 592

9

(6th Cir. 2018)). Here, Plaintiff claims that he is innocent of sexually harassing Female Student 1, though he admits to some extent the substance of their interactions as described by Female Student 1 and other witnesses – specifically, that he had "told her . . . she's attractive & that [he] would hook up with her," "flirted with her," "put [his] arm around her," "and poked her in class." SUF ¶¶ 14-15. Even crediting Plaintiff's claims of innocence, he cannot satisfy either of the other two elements of the erroneous outcome inquiry.

"The first element [of the erroneous outcome inquiry] can be satisfied by (1) pointing to procedural flaws in the investigatory and adjudicative process, (2) identifying inconsistencies or errors in the findings, or (3) challenging the overall sufficiency and reliability of the evidence." *Doe 2*, 384 F. Supp. 3d at 607 (citing *Marymount*, 297 F. Supp. 3d at 584). Plaintiff claims that Hess's investigation, which was relied upon by the decisionmakers who first suspended and then reassigned Plaintiff, was flawed because it (1) included only inculpatory evidence while ignoring exculpatory evidence; (2) did not address the possibility of collusion between Female Student 1 and the other witnesses; and (3) was biased because Hess had already pre-judged Plaintiff's culpability before completing the investigation. *See* [Doc. No. 84 at 21-22]. Plaintiff also claims that the adjudicative process was flawed because it did not include a presumption of innocence or burden of proof, and Eline and Forrest had a conversation before the disciplinary hearing, during which Eline informed Forrest that the Plaintiff's parents could sometimes be aggressive. *Id.* at 22.

None of these claimed flaws in the investigatory and adjudicative processes are sufficient to call into question the accuracy of the outcome of the disciplinary proceeding at issue. First, with regard to Hess's investigation, the record indicates that Hess did not credit the one piece of "exculpatory" evidence Plaintiff points to – Female Student 5's initial statement that she had

never heard Plaintiff say anything sexually inappropriate – because, just a few days later, Female Student 5 spoke to Hess again and admitted that she had, in fact, heard Plaintiff make sexual comments about Female Student 1. SUF ¶ 22. The only other testimony in the record that supports Plaintiff's claims of innocence are his own statements, which Hess determined were outweighed by the other evidence in the record – specifically, testimony from Female Student 1 and five other witnesses, including Plaintiff's friend, Male Student 1, suggesting that Plaintiff had sexually harassed Female Student 1.[6] Second, there is no evidence in the record that suggests interactions between the witnesses that should have caused Hess to specifically question the witnesses as to whether any collusion had taken place. As part of his investigation, Hess interviewed every witness except Female Student 2 separately and found their accounts to be credible, and there is no evidence in the record that suggests that this conclusion was inaccurate.[7] *See id.* ¶ 58. Third, the record also contains no evidence suggesting that Hess prejudged the Plaintiff's guilt. Plaintiff points to Hess's statement to Female Student 1 that he "believed" her when she initially reported the harassment, but the record makes clear that Hess then proceeded to investigate Female Student 1's complaint and did not in fact make a determination as to Plaintiff's guilt or innocence until he had spoken to all of the witnesses and to the Plaintiff himself. *See* Def.'s Ex. 3 at 198:6-200:9.

Nor do any of the claimed flaws with the adjudicative process cast doubt on the outcome of the disciplinary proceeding. There is no evidence in the record that suggests that an explicit presumption of innocence or burden of proof, neither of which courts have required in the high

---

[6] All six of these witnesses affirmed the truth of their statements to Hess during the investigation when subpoenaed and deposed by the Plaintiff in connection with this action. SUF ¶ 46.

[7] Plaintiff suggests that Female Student 1 induced Female Student 5 to make a statement implicating him to Hess by "seemingly rewarding her with a Snickers bar." [Doc. No. 84 at 10]. But without more, this is insufficient to suggest collusion between the witnesses, particularly in light of Female Student 5's testimony that she told the truth, was never asked to lie, and never coordinated stories with anyone, testimony which is consistent with the testimony of all of the other witnesses. Def.'s Ex. 12 at 86:1-17, 92:19-93:10.

11

school disciplinary context, would have led to a different outcome here. Hess stated that he believed that there was, in fact, a "preponderance of evidence" that Plaintiff had sexually harassed Female Student 1, and Forrest similarly expressed that she was "very confident" from the evidence that the Plaintiff engaged in the conduct for which he was disciplined. SUF ¶ 60. Nor is there any evidence that suggests that the outcome of the hearing was influenced by Eline's statement to Forrest prior to the hearing that Plaintiff's parents could sometimes be aggressive. In sum, Plaintiff has failed to produce sufficient evidence to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding, and he therefore cannot make out an erroneous outcome claim.

Even were the Plaintiff able to satisfy the first element of the erroneous outcome inquiry, he cannot satisfy the second element because he has not established a particularized causal connection between the claimed erroneous outcome and gender bias. Plaintiff offers no evidence of statements made by any relevant decisionmaker – Hess, Eline, Forrest, or the School Board itself – exhibiting anti-male bias. Nor has he identified any evidence of a pattern of decision-making tending to show that male students were disciplined more harshly than comparably situated female students. Plaintiff points to the fact that almost all of the sexual-harassment cases appealed to the School Board since November 2010 have involved male-student aggressors, but courts have rejected this kind of statistical evidence as sufficient to establish intentional gender discrimination. *See Doe v. Trustees of Boston Coll.*, 892 F.3d 67, 92 (1st Cir. 2018) (finding that Boston College did not violate Title IX simply because "only male students [had] been accused of sexual assault" during the previous 10-year period); *see also Doe v. Oberlin Coll.*, 2019 WL 1439115 (N.D. Ohio Mar. 31, 2019), *appeal docketed*, No. 19-3342 (6th Cir. Apr. 17, 2019) ("In support of his claim of gender bias, Plaintiff also alleges that, 'the *vast majority* of the Oberlin

students . . . accused of sexual misconduct are men.' This by itself is not indicative of discrimination or bias against men."); *Rossley*, 342 F. Supp. 3d at 929 ("Courts have declined to infer a gender-based motive on the part of [school] officials from the disparity in gender among those who are accused of sexual assault, noting that schools are not responsible for which students choose to report sexual misconduct.").

Plaintiff also suggests that three PowerPoint slides that the school system used in Hess's Title IX training are evidence of hypervigilance in Title IX enforcement resulting in gender bias. *See* Pls.' Ex. 12. These slides mention the "#MeToo Movement" and the accompanying media attention, and state that Title IX enforcement is important and sexual harassment is illegal. *Id.* They go on to state that the "[f]ailure to respond promptly, thoroughly and impartially" to sexual harassment allegations could result in adverse consequences like loss of trust, reputational harm and more federal complaints and private lawsuits, and that schools should therefore "[i]nterrupt discrimination, remedy its effects and prevent recurrence." *Id.* These slides contain prudent advice for school officials tasked with handling sexual harassment allegations, and nothing in them suggests that school officials should enforce the school's Title IX obligations discriminatorily against male students. And even accepting Plaintiff's claim that these slides promote "hypervigilance" in Title IX enforcement, they make no mention at all of gender and would, at best, "reflect a bias against people accused of sexual harassment and in favor of victims and indicate nothing about gender discrimination." *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996). Courts have widely held that vigilance in enforcing Title IX, even when it results in bias in favor of victims and against those accused of misconduct, is not evidence of anti-male bias. *See, e.g., Cummins*, 662 F. App'x at 453; *Doe v. N. Mich. Univ.*, 2019 WL 2269721, *8 (W.D. Mich. May 28, 2019); *Doe v. Rider Univ.*, 2018 WL 466225, at

*10 (D.N.J. 2018); *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 955 (N.D. Ill. 2017), *aff'd*, No. 18-1869, 2019 WL 3796000 (7th Cir. Aug. 13, 2019); *Ruff v. Bd. Regents of Univ. of N.M.*, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017). Accordingly, Plaintiff cannot satisfy either the erroneous outcome or selective enforcement inquiries, and Defendant is entitled to summary judgment as to Counts I and IV.

**B. Due Process Claim (Count III)**

In denying Plaintiff's request for a TRO, the Court noted that the issue before the Court with regard to Plaintiff's due process claim is not whether the process used by the school system is the best or most effective system for ferreting out the truth of allegations, or one that sufficiently approximates the process one would receive in a federal or state court, or one that the Court would devise were it tasked with doing so. Nor is it the Court's job to consider the sufficiency of the evidence against Plaintiff, or whether it would have reached the same conclusions or imposed the same discipline. Rather, the sole issue before the Court "is whether the process used in this case deprived the plaintiff of the due process he is constitutionally entitled to receive as a high school student facing disciplinary actions." [Doc. No. 21 at 8:5-17]

The Due Process Clause applies in public school settings to protect students who are subject to expulsion or suspension from public school "for more than a trivial period." *Goss v. Lopez*, 419 U.S. 565, 576 (1975). At minimum, "students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Id.* at 579. "For a suspension of ten days or less, due process requires that a student receive oral or written notice of the charges against him and an opportunity to present his story." *Doe 2*, 384 F. Supp. 3d at 611. "[N]o court has yet prescribed a precise procedural paradigm that is required when a student is removed from a particular school; however, the

Virginia Supreme Court has held that so long as the student, his parents, and counsel knew the reasons why the student had been suspended, were able to participate during the hearing, and were notified of their right to appeal, the student's due process rights were not abridged when he was expelled post-hearing."[8] *Id.* at 612 (citing *Wood v. Henry Cnty. Pub. Sch.*, 255 Va. 85, 92, (1998)) (internal quotation marks and citation omitted). Due process does not require the opportunity to cross-examine the accuser or witnesses, as the Fourth Circuit "has not found 'a basis in the law' for 'importing' the right to cross-examination 'into the academic context.'" *Doe 2*, 384 F. Supp. 3d at 612 (quoting *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005) (per curiam)).[9]

Here, the undisputed facts demonstrate that Plaintiff received all of the process due to him with regard to both his initial suspension and his eventual reassignment to an alternative school. Prior to the Plaintiff's initial suspension, Hess informed the Plaintiff and his parents of the allegations against him and the Plaintiff voluntarily provided a written statement in which he denied the charges. SUF ¶¶ 14-15. Plaintiff and his parents were subsequently informed of and participated in a disciplinary hearing conducted by a hearing officer for the Division Superintendent, where they had the opportunity to present Plaintiff's case in response to the sexual harassment charge, including by submitting statements of two character witnesses. *Id.* ¶ 27. After the hearing officer issued a written decision explaining her finding that Plaintiff had committed a serious offense in violation of Defendant's sexual harassment policy and would be

---

[8] Unlike expulsion, transfer to an alternative program does not "constitute a denial of access to public education, 'not even temporarily,' because the student remain[s] in a public school, albeit an 'alternative' one." *Doe 2*, 382 F. Supp. 3d at 612 (quoting *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997)). It follows that a student is therefore entitled to less process pre-transfer than they would be entitled to pre-expulsion.
[9] Even the Sixth Circuit, which has held that due process requires cross-examination in a university disciplinary proceeding where the proceeding hinges on a question of credibility, *Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018), has rejected that requirement at the high school level. *See Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 924–26 (6th Cir. 1988).

reassigned to Mountain View, Plaintiff appealed that decision to the School Board, which upheld the hearing officer's decision after allowing Plaintiff to submit written statements on his behalf. *Id.* ¶¶ 32, 38. Plaintiff also had the option to appeal the School Board's determination in Fairfax County Circuit Court under Virginia Code § 22.1-87 but opted to bring this suit in federal court instead of pursuing that option.[10] *Id.* ¶ 39. In light of these undisputed facts, which clearly establish that Plaintiff was afforded the notice and opportunity to be heard which are required for due process, Plaintiff's claimed deficiencies in the School Board's procedures – namely, the Handbook's lack of an explicit presumption of innocence or minimum burden of proof and the fact that he was not provided with a copy of one witness's statement until after the hearing – do not rise to the level of a denial of due process.

Nor does the evidence in the record support Plaintiff's claim that his due process rights were violated because the Defendant's adjudication process was not fair and unbiased. "Unconstitutional bias may be shown through evidence that the adjudicator "had it 'in' for the party for reasons unrelated to the officer's view of the law." *Stivers v. Pierce*, 71 F.3d 732, 744 (9th Cir. 1995). In order to make a showing of unconstitutional bias, "a plaintiff must overcome a presumption of honesty and integrity on the part of decision-makers" and show that the "adjudicator has prejudged, or reasonably appears to have prejudged, an issue." *Id.* (internal citations and quotation marks omitted). Overcoming this presumption requires "a strong showing of bad faith or improper behavior." *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 177-78 (4th Cir. 2015) (citation and quotation marks

---

[10] Defendant asks the Court to find that a plaintiff cannot bring a procedural due process claim arising out of school discipline when he did not exhaust the procedures available to him to have the School Board's determination reviewed, specifically appeals within the state court system pursuant to Virginia Code § 22.1-87. *See* [Doc. No. 74 at 32-35]. Because the Court finds that Defendant is otherwise entitled to judgment as a matter of law as to each of Plaintiff's claims, it does not reach that question.

omitted). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are not sufficient to overcome this presumption and establish bias. *Id.* at 178 (internal quotation marks and citations omitted). On the other hand, a showing that a decisionmaker has "a pecuniary interest in the outcome" or was the "target of [prior] personal abuse or criticism" of the party before him is sufficient to overcome the presumption and establish bias. *See id.*

Here, there is no evidence that suggests that Hess, Eline, Forrest, or anyone else involved in the process of adjudicating the claims against the Plaintiff acted improperly or in bad faith, or otherwise "had it in" for the Plaintiff. Far from having the kind of negative relationship with Plaintiff that could establish bias, the evidence in the record indicates that Hess had a close relationship with the Plaintiff – he wrote one of his college recommendation letters, Defs.' Ex. 3 at 199:6-8, and the Plaintiff's father said that his son "absolutely adores that guy," Defs.' Ex. 1, at DX 72, at 64:2. Plaintiff suggests that Hess prejudged his guilt and conducted a flawed investigation because he told Female Student 1 that he "believed" her when she initially reported the harassment, but as referenced previously, the record makes clear that Hess proceeded to investigate Female Student 1's complaint and did not make a determination as to Plaintiff's guilt or innocence until he had spoken to all of the witnesses and to the Plaintiff himself. *See* Def.'s Ex. 3 at 198:6-200:9. As evidence of bias on the part of Eline and Forrest, Plaintiff points to a single statement from Eline to Forrest at the outset of the disciplinary hearing noting that Plaintiff's parents "sometimes could be aggressive." [Doc. No. 84 at 22]. But this evidence is clearly the type of evidence that the Fourth Circuit has found to be insufficient to establish bias, *viz.*, "expressions of impatience, dissatisfaction, annoyance, and even anger, that [is] within the bounds of what imperfect men and women . . . sometimes display." *Prof'l Massage*, 781 F.3d at

178. Plaintiff's procedural due process claim therefore fails as a matter of law, and the Defendant is entitled to summary judgment as to Count III.

## IV. Conclusion

Because there are no genuine disputes of material fact and the Defendant is entitled to judgment as a matter of law as to each of Plaintiff's three remaining claims, it is hereby

ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 73] be, and the same hereby is, GRANTED; and it is further

ORDERED that this action be, and the same hereby is, DISMISSED.

The Clerk is directed to forward copies of this Order to all counsel of record and to enter judgment in accordance with this Order pursuant to Fed. R. Civ. P. 58.

/s/
Anthony J. Trenga
United States District Judge

September 11, 2019
Alexandria, Virginia